

305 Madison Avenue
New York, NY 10165
T: 212-922-1080
F: 212-949-8255

Wayne E. Gosnell
Partner
gosnell@clayro.com

September 29, 2020

Judge Richard M. Berman
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

                RE:    *United States v. Robert Hadden*, 20 Cr. 468 (RMB)

Dear Judge Berman:

      We are temporary counsel to Robert Hadden in the above-referenced matter. We write regarding certain inquiries made by the Court during the September 25, 2020 telephone conference in this matter.

      <u>First</u>, we write to respond to this Court's stated desire to publicly docket in this case certain documents from a prior prosecution of Mr. Hadden in New York State court (the NYS matter), some of which are not public.[1] As discussed below, this Court's proposed course of action will bring about additional adverse pretrial publicity for Mr. Hadden and violate his Sixth Amendment right to a fair trial by an impartial jury. In addition, one of the documents this Court proposes to publicly file was filed under seal in the state court because it would reveal defense strategies. Mr. Hadden relied upon the NYS court's determination that filing that document under seal was proper. His ability to defend himself in this case—which involves identical allegations as the NYS matter and, perhaps, the same alleged victims—would be compromised if he were required to provide federal prosecutors with that document.

---

[1] Specifically, this Court has proposed filing the following documents from the NYS matter: (1) a Risk Assessment Instrument (the "RAI"), (2) the Plea Agreement, (3) an Email between the New York County District Attorney's Office and Mr. Hadden's attorney's regarding the Plea Agreement (the "Email"), (4) filings made in connection with the People's *Molineux* application, and (5) the Indictment. To our knowledge, the RAI, Plea Agreement, and Email are not publicly available in the NYS matter. The filings regarding the People's *Molineux* application are public with the exception of an *ex parte* affirmation by Isabelle Kirshner made in support of Mr. Hadden's cross-motion for severance. The Indictment was publicly filed in the NYS matter.

Second, we write to respond to this Court's request for information regarding: whether the New York County District Attorney's Office informed alleged victims about the plea negotiations, plea, and sentencing in the NYS matter; (ii) how Mr. Hadden came to be adjudicated a Level 1 sex offender (iii) the obligations imposed upon an individual who is adjudicated a Level 1 sex offender compared to those obligations imposed upon an individual who is adjudicated a Level 2 sex offender; and (iv) the time period of the conditional discharge imposed by the NYS court.

## I. Filing Documents from the NYS Matter on this Court's Docket Violates Mr. Hadden's Sixth Amendment Right to an Impartial Jury

This Court has indicated that it intends to publicly file on the docket in this case documents from the NYS matter—some of which were never publicly filed—because "public disclosure is the best disinfectant." (Transcript dated September 25, 2020 at 11.) This begs the question: disinfectant for what malady?[2] Since at least 2014 when he was arrested on an indictment in the NYS matter, Mr. Hadden has been the subject of widespread media attention regarding these allegations which have been exacerbated by press conferences, toll free "complaint numbers" created by prosecutors and plaintiff's lawyers, and the like.

The consequence of this Court's proposed action is simple: there will be additional media stories further disseminating unproven allegations that cast Mr. Hadden in a bad light, all of which will affect Mr. Hadden's ability under the Sixth Amendment to be tried by impartial jurors. To be sure, the press can (and has) exercised its First Amendment right to publish stories critical of Mr. Hadden and others based upon documents that have been publicly available in the NYS matter. But this Court should not encourage additional news stories by docketing anew those documents or publicly docketing documents that are not currently public. *See Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 609 (2d Cir. 1988) ("When the exercise of free press rights actually tramples upon Sixth Amendment rights, the former must nonetheless yield to the latter." (citing *Pennekamp v. Florida*, 328 U.S. 331, 347 (1946).) It is impossible to know today what the extent of the prejudice Mr. Hadden will suffer by this Court's proposed actions; the only thing that is certain is that prejudice will occur. In short, it will already be a Herculean task to identify jurors who have not prejudged Mr. Hadden. Docketing these files will only make that task more difficult and the prejudice Mr. Hadden will suffer as a result is entirely avoidable and within this Court's control to stop.

Lastly, we pause to address this Court's statement that there is a "great public interest in these documents" and its decision to link Mr. Hadden's case with the case of Jeffrey Epstein. (Tr. at 8.) As to the public interest in these documents, most of them (and nearly all of the information contained within them) are already public. If someone wants to get them, they can already do so. Respectfully, it is not this Court's job to serve as a repository of files from the New York State

---

[2] This Court's intended action also poses the following problem: where does it end? Will Mr. Hadden be asked to supply the court will all correspondence relating to his plea negotiations, discovery disputes, or motions in the NYS matter? What about discovery? If documents relating to Mr. Hadden's plea are of "great public concern" then doesn't the same "public concern" govern all of the documents in the case, including grand jury testimony?

courts.  As to linking any "controversy" related to the unrelated case of Jeffrey Epstein, such a comment by this Court is extremely unfairly prejudicial to Mr. Hadden.  The prevailing sentiment is that Mr. Epstein received special treatment in New York state court and escaped justice by taking his own life.  Some of the alleged victims here have raised similar concerns.  We are concerned that this Court's comments could be seen as endorsing that sentiment.  This court should not feed into such sentiment, especially when it can work to Mr. Hadden's detriment.  While there may be a forum where alleged improprieties in Mr. Hadden's NYS matter could be addressed (a disciplinary proceeding for the prosecutor who intentionally hid exculpatory information and lied to the court comes to mind), this case is not that forum.

> A.  The Risk Assessment Instrument, Plea Agreement, and Email

Without waiving our objections as set forth above, we note that the information contained in the RAI was repeated during Mr. Hadden's sentencing proceeding in the NYS matter, a transcript of which is already public.  However, the Plea Agreement and Email are also non-public.  The non-public nature of those documents is based upon the practices of the New York County District Attorney's Office.  We leave it to that office to explain its practices and why, in addition to our arguments set forth above, those documents should remain non-public.

> B.  The People's *Molineux* Application

This Court has also indicated that it intends to publicly file on the docket in this case documents relating to the People's *Molineux* application in the NYS matter.  In connection with that application, the following documents were filed publicly:

1. On February 2, 2015, the People filed an Affirmation in Support of the People's Application for an Order Permitting Admission of Evidence of Prior Bad Acts and Uncharged Crimes of the Defendant (the "*Molineux* motion").
2. On June 5, 2015, the People filed a letter of clarification and amendment to its *Molineux* motion.
3. On October 9, 2015, Mr. Hadden's counsel filed a response to the People's *Molineux* motion, along with a cross-motion for severance.

The matter was resolved before further motion practice or a decision by the court.  We rely on our argument above as to why these documents should not be filed on the docket in this case.

In addition to these public filings, Mr. Hadden's counsel also filed an *ex parte* Affirmation of Isabelle Kirshner in Support of Defendant Robert Hadden's Cross-Motion for Severance as part of his response.  In so doing, Ms. Kirshner relied upon Criminal Procedure Law Section 200.20(3)(b) which permits a defendant to make a showing on a severance motion by way of an *ex parte* affirmation that is reviewed by the court *in camera*.  Such affirmations are sealed because they necessarily discuss the facts surrounding why "a defendant has both important testimony to

give concerning one count and a genuine need to refrain from testifying on [an]other." CPL § 200.20(3)(b).[3]

## II.     Responses to This Court's Requests for Information

This Court has request that we provide information about several topics related to the NYS matter. Our response is set forth below.

### A. The NYS Plea and Sentencing Proceedings

This Court has requested that we provide information about the sentence imposed upon Mr. Hadden in the NYS matter. On February 23, 2016, Mr. Hadden pled guilty to one felony count of third-degree criminal sexual act and one misdemeanor count of forcible touching pursuant to a plea agreement with the New York County District Attorney's Office. As noted during the plea proceeding, the plea agreement indicates that Mr. Hadden would "not be prosecuted for any similar crimes which are known to the District Attorney's office" as of the date of his plea. This included alleged victims who were included in the NYS Indictment, alleged victims who were part of the prosecution's *Molineux* motion, and at least one additional alleged victim known to the District Attorney's Office prior to Mr. Hadden's plea. Mr. Hadden was promised that his sentence would, in relevant part, include a conditional discharge[4] and a promise by the court to adjudicate him a Level 1 sex offender. The court then adjourned Mr. Hadden's case until April 5, 2016 for sentencing so that a pre-sentence report could be prepared by the Probation Department.

Prior to Mr. Hadden's sentencing, the court contacted the parties to inform them that the agreed-upon sentence of a conditional discharge on the felony count is not an authorized sentence pursuant to Penal Law § 60.13 and 70.80 (which permits a sentence of probation but not a conditional discharge for a felony sex offense). The parties conferred with the court about this issue and, as set forth in the sentencing transcript, resolved to move forward with sentencing by modifying Mr. Hadden's sentence on the felony count to a sentence of time served for the period of imprisonment Mr. Hadden served at the time of his arrest on the NYS Indictment. Mr. Hadden was also sentenced to a one-year conditional discharge on the misdemeanor count. He served that sentence without incident.

---

[3] In federal court, parties are permitted to make similar *ex parte* applications that remain under seal. *See, e.g.*, Fed. R. Crim. Pro. 17(b) (*ex parte* application for subpoena); 47 (permitting *ex parte* motions and supporting affidavits); 49 (excluding service of *ex parte* motions).

[4] A conditional discharge may be imposed by a sentencing court if the court, "having regard to the nature and circumstances of the offense and to the history, character, and condition of the defendant, is of the opinion that neither the public interest nor the ends of justice would be served by a sentence of imprisonment and that probation supervision is not appropriate." Penal Law § 65.05(1)(a). A defendant who is sentenced to a conditional discharge is subject to any conditions imposed upon him by the court for a period of three years on a felony or one year on a misdemeanor. Penal Law §§ 65.05(2) and (3).

### B. Mr. Hadden's Sex Offender Adjudication

A person convicted of a sex offense may be assigned one of three Sex Offender Registration Act ("SORA") risk levels which correspond to the relative risk of the person reoffending: low (Level 1), moderate (Level 2), and high (Level 3). The purpose of SORA is not punishment. Rather, it seeks to address a defendant's risk of reoffense and the harm that would be inflicted by a reoffense. Here, the NYS court adjudicated Mr. Hadden a Level 1 sex offender after a SORA hearing at his sentencing.

Although there is no set procedure for how to conduct a SORA hearing, the SORA hearing that took place here is somewhat analogous to the calculation of Sentencing Guidelines in federal court. The first step is to calculate a total risk score, which is based upon specific factors associated with a defendant and his alleged conduct and history that must be proven by clear and convincing evidence. The total risk score corresponds to a presumptive SORA level. The next step is motions for departures—a prosecutor may seek an upward departure based on aggravating factors and a defendant may seek a downward one for mitigating factors. *See People v. Wyatt*, 89 A.D.3d 112, 121 (2d Dept. 2011) ("[A]n appropriate aggravating factor is one which tends to establish a higher likelihood of reoffense or danger to the community, and an appropriate mitigating factor is one which tends to establish a lower likelihood of reoffense or danger to the community than the presumptive risk level calculated on the RAI."); *see also People v. Gillotti*, 23 N.Y.3d 841, 861 (2014) (setting out the steps courts must follow for departure motions). After considering the presumptive SORA level and any departure motions, the Court will determine which SORA level is appropriate for the defendant.

In Mr. Hadden's case, the parties discussed with the Court Mr. Hadden's SORA level before his plea. Following that discussion but before his plea, the court told Mr. Hadden:

> You are going to be found a Level 1 SORA offender after a conference that I had with your lawyer and the District Attorney's Office, and the reason why I reduced this to a Level 1 rather than a Level 2 was because these alleged crimes were committed in your professional capacity for which you will be surrendering your license and will not be permitted to practice medicine in the future.

(Plea Transcript dated February 23, 2016 at 9.)

At Mr. Hadden's sentencing, the court adjudicated Mr. Hadden a Level 1 SORA offender and made specific findings about why it did so. First, the court was informed again of the total risk score and presumptive SORA level. (Sentencing Transcript dated March 29, 2016 at 9.) Next, the Court heard Mr. Hadden's downward departure motion which included the following factors that were not adequately taken into account by the initial SORA calculation: (1) a probationary sentence was not necessary (which worked to Mr. Hadden's detriment for SORA calculations), (2) Mr. Hadden could not reoffend because he was giving up his medical license, and (3) there had not been any incident of alleged criminality after the accusation made against Mr. Hadden on June

29, 2012.[5] (Sentencing Transcript at 10.[6]) Mr. Hadden later registered, as required, with law enforcement in New Jersey where he was also adjudicated a Level 1 SORA offender.[7]

Below is a table containing the general information about SORA registry requirements in New York and New Jersey.

| General Information About SORA Registry Requirements | | | | | | |
|---|---|---|---|---|---|---|
| | Risk of Reoffense | Registration Period | Publicly Searchable / Community Notification | Mail Registration | In Person Registration | Additional Restrictions |
| Level 1[8] | Low | 20 years | No | Annually | 3 years (with new photograph) | |
| Level 2 | Moderate | Life | Yes | Annually | 3 years (with new photograph) | |
| Level 3 | High | life | Yes | Annually | 90 days (annually for new photograph) | Restrictions on residency and use of internet |

C. <u>Whether the New York County District Attorney's Office Informed Alleged Victims About the Plea Negotiations, Plea, and Sentencing in the NYS Matter</u>

The court also requested information about whether the New York County District Attorney's Office informed alleged victims about the plea negotiations, plea, and sentencing in the NYS matter. We are not, at this time, privy to the communications between the New York County District Attorney's Office and any alleged victim or her counsel.[9]

---

[5] The alleged victim for this incident publicly disclosed her name in the NYS matter at sentencing, in at least one civil lawsuit against Mr. Hadden, and at Mr. Hadden's arraignment in this matter.

[6] As Ms. Kirshner noted in earlier proceedings, the New York County District Attorney's Office *Brady* violation related to allegations by a person who claimed to have been victimized *after* Mr. Hadden was "unarrested" in June 2012. The prosecutor's concession at sentencing speaks loudly on that issue.

[7] Undersigned counsel was not part of that process and is only aware of the result.

[8] These are the general rules for Level 1 SORA Offenders. Special rules apply to those offenders who have been designated a sexual predator, a sexually violent offender, or a predicate sex offender, none of which apply here.

[9] We sought all such communications in the NYS matter, but the prosecutors refused to provide them. The case was resolved before any motion relating to those communications was decided.

For the reasons set forth above, we respectfully submit that docketing of materials from the New York State matter violates Mr. Hadden's Sixth Amendment right to an impartial jury and that the docketing of the *ex parte* Affirmation of Isabelle Kirshner would deprive him of due process and reveal his defense strategies.

Respectfully submitted,

Wayne E. Gosnell, Jr.
Isabelle Kirshner
Clayman & Rosenberg LLP
305 Madison Avenue, Suite 650
New York, New York 10165
*Counsel for Robert Hadden*

by ECF:   Jessica Lonergan
          Maureen Comey
          Lara Pomerantz