

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 1, 2020

**By Email and ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: **United States v. Robert Hadden**,
      20 Cr. 468 (RMB)

Dear Judge Berman:

  The Government writes to update the Court about the status of the defendant's bail conditions in advance of the conference scheduled for October 2, 2020. Since the parties last appeared before the Court, two-cosigners have signed the bond on behalf of the defendant, the Pretrial Services Department conducted a urine test of the defendant, and the Government has received a signed copy of the mortgage for the defendant's home. The Government expects to receive an appraisal report for the defendant's home next week. As such, the Government does not believe a conference is necessary to address the defendant's bail conditions.

  The Government further respectfully writes in response to the defendant's September 29, 2020 request (the "Request") that certain documents associated with the prior prosecution of the defendant by the District Attorney's Office for New York County ("DANY") not be docketed publicly in the instant case. (Dkt. No. 12). As set forth in the Request, the Court has proposed publicly filing the following documents from the DANY prosecution: (1) a Risk Assessment Instrument (the "RAI"); (2) the plea agreement; (3) an email between a DANY representative and defense counsel regarding the plea agreement (the "Email"); (4) filings made in connection with DANY's *Molineux* application; (5) the indictment; (6) the transcript of the February 23, 2016 change of plea proceeding; and (7) the transcript of the March 29, 2016 sentencing proceeding.[1] Like the defendant, the Government does not believe that the RAI, the plea agreement, and the Email are currently publicly available in connection with the DANY matter. The remaining items have previously been made public, with the exception of an *ex parte* affirmation by defense counsel made in support of the defendant's cross-motion for severance.

  As set forth in greater detail below, to the extent the Court relied on the publicly available documents from the prior DANY proceedings in making a judicial determination in the instant

---

[1] The Request did not list or address the two transcripts listed as items (6) and (7) above.

case, the Government does not object to the docketing of those documents in this case. As to the non-public documents, because they do not appear to have been relied upon in any judicial decision in this case, the Government respectfully submits that those materials are not judicial documents subject to public docketing at this time.

**Legal Standard**

It is well established that "[t]he public has a common law presumptive right of access to judicial documents." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004); *United States v. Amodeo*, 44 F.3d 141, 145-46 (2d Cir. 1995) ("*Amodeo I*"). "[T]he weight to be given to the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). "'An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

In examining whether there is a common law right of access to documents submitted to a court—and thus whether sealing is permissible—courts undertake a three-part inquiry. First, a court must determine whether the record or document in question is a "judicial document," *i.e.*, relevant to the performance of the judicial function and useful in the judicial process, such that a presumption of access attaches. Second, if a document is indeed a "judicial document," the court must determine the weight to be accorded the presumption of access. Finally, after determining the weight of the presumption of access, the court must balance any countervailing factors against the presumption. *Amodeo II*, 71 F.3d at 1050-51.

Some documents "directly affect an adjudication" and play a significant role in "determining litigants' substantive rights"; these warrant the strongest presumption of public access. *Id.*; *see also Joy*, 692 F.2d 880 (report submitted to court as principal basis for summary judgment motion entitled to strong presumption of access); *United States v. Myers* (*In re Application of Nat'l Broad. Co.*), 635 F.2d 945, 952 (2d Cir. 1980) (strong presumption of access applies to videotape evidence introduced at trial). Other documents "play only a negligible role in the performance of Article III duties," such as documents passed between parties in discovery, and thus are entitled to a "presumption [that] is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050. Where documents fall in the middle of this continuum, courts must determine the weight of the presumption through the exercise of judgment. *Id.*

Finally, upon determining the weight to be given to the presumption of access to a particular "judicial document," the court must balance any countervailing factors against the presumption. *Id.* at 1050-51. Factors to be considered vary, but may include the privacy interests of those who resist disclosure, and the danger of impairing law enforcement or judicial efficiency. *Id.* at 1050. The weight to be accorded an assertion of a right of privacy depends upon the degree to which the subject matter is traditionally considered private, and the nature and degree of injury that would result from release of the information to the public. *Id.* at 1051.

**Discussion**

Because the Government submits that different treatment is warranted for the public and non-public documents, the Government addresses the two categories in turn:

With respect to the documents that were made public as part of the DANY prosecution—the indictment, the two court transcripts, and the *Molineux* motion papers (with the exception of the defendant's *ex parte* affirmation) (collectively, the "Public Documents")—to the extent that the Court relied on the Public Documents in the instant case in its determinations regarding the conditions of the defendant's bail (and can thus determine that they constitute "judicial documents"), the Government does not object to their public docketing in the instant matter. In particular, under such circumstances, First Amendment interests would seem to weigh in favor of their public docketing. *See Amodeo I*, 44 F.3d at 145-46; *Amodeo II*, 71 F.3d at 1049. Moreover, so long as victim identities remain anonymized, the risk of prejudice, if any, to third parties, including the defendant, is minimal given that these documents are, as noted, already public.

By contrast, the remaining documents, which were *not* made public as part of the DANY prosecution—the RAI, the plea agreement, the Email, and the defendant's *ex parte* filing (collectively, the "Non-Public Documents")—do not appear to be judicial documents in this case. There is no indication that the Court has relied on any of the Non-Public Documents in the proceedings in the instant case to date. Nor have the parties relied upon these Non-Public Documents in arguments made to date in this case. In particular, with respect to the plea agreement, the defendant has not argued that the plea agreement was relevant to the bail determination or that it precludes or has any other impact on the instant prosecution. Nor has he indicated that he plans to file any motion with respect to the plea agreement.[2] Similarly, the Government has not argued that the state plea agreement or the RAI was relevant to the defendant's bail determination or any other issue currently pending in this case. As such, it appears that there is no basis in the record for a finding that these constitute the sort of "judicial documents" as to which a presumption of public filing would attach. Given the defendant's concerns about potential prejudice that may result from the docketing of the Non-Public Documents, and those documents' minimal relevance to the issues currently before the Court, the Government respectfully submits that there is not a basis to file those materials on the public docket in this case at this time.

---

[2] Of course, should the defendant make such a motion, or otherwise make the Non-Public Documents relevant to the issues before the Court, the calculus with respect to their public docketing would change.

Finally, the Government is cognizant of the Court's request for information from DANY regarding DANY's prior prosecution of the defendant, and the Government is endeavoring to obtain information to address the Court's remaining questions. With respect to the issue of victim notification in the DANY case, the Government notes that it is not aware of a state equivalent to the federal Crime Victims' Rights Act, 18 U.S.C. § 3771. Additionally, the Government is aware that the March 29, 2016 sentencing transcript from the DANY prosecution reveals that at least one victim was present and spoke in connection with sentencing and that the Assistant District Attorney spoke on behalf of other victims.

       Respectfully submitted,

       AUDREY STRAUSS
       Acting United States Attorney

  by: __s/_____
       Maurene Comey
       Jessica Lonergan
       Lara Pomerantz
       Assistant United States Attorneys
       (212) 637-2324 / 1038 / 2343

cc:    Isabelle Kirshner, Esq. (by email and ECF)
       Wayne Gosnell, Esq. (by email and ECF)