```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK - CRIMINAL TERM - PART 41
 2   - - - - - - - - - - - - - - - - - - - -x
     THE PEOPLE OF THE STATE OF NEW YORK       :
 3                                             :
                                               :
 4        -against-                            :  INDICTMENT No.:
                                               :  2044/2014
 5                                             :
     ROBERT HADDEN,                            :  Proceeding
 6                                             :
                       Defendant.              :
 7   - - - - - - - - - - - - - - - - - - - -x

 8                       100 Centre Street
                         New York, New York 10013
 9
                         March 29, 2016
10   B E F O R E:

11        THE HONORABLE RONALD A. ZWEIBEL, J.S.C.

12   A P P E A R A N C E S:

13   FOR THE PEOPLE:

14
     OFFICE OF CYRUS R. VANCE, JR.
15   District Attorney New York County
     One Hogan Place
16   New York, New York 10013

17   BY:  LAURA MILLENDORF, ESQ.
     BY:  AMANDA GOUN, ESQ.
18   BY:  JENNIFER GAFFNEY, ESQ.

19
     FOR THE DEFENDANT:
20
     CLAYMAN & ROSENBERG, LLP
21   Attorney for the Defendant
     305 Madison Avenue
22   New York, New York  10017

23   BY: ISABELLE A. KIRSHNER, ESQ.
             AND
24   BY: WAYNE GOSNELL, ESQ.

25

                         Ivelisse Rodriguez,
```

Clerk's office is respectfully requested to docket and file this transcript.

SO ORDERED:
Date: 10/21/2020
Richard M. Berman, U.S.D.J.

1           THE CLERK:  Calling calendar number five,
2   Robert Hadden, indictment number 2044/2014.
3           MS. KIRSHNER:  Clayman and Rosenberg by
4   Isabelle Kirshner and Wayne Gosnell.
5           MS. MILLENDORF:  Laura Millendorf.  Amanda Goun
6   and Jennifer Gaffney for the People.
7           THE COURT:  Are both sides ready for sentence?
8           MS. MILLENDORF:  Yes.
9           MS. KIRSHNER:  Yes, your Honor.
10          THE CLERK:  Robert Hadden, you are before the
11  Court for sentencing following your conviction by plea to
12  one count of criminal sexual act in the third degree and
13  one count of forcible touching.
14          Prior to sentencing, the Court will give you, your
15  attorney and the assistant district attorney an
16  opportunity to address the Court with matters relevant to
17  sentencing.  People?
18          MS. MILLENDORF:  Your Honor, we did have one
19  victim who wished to address the Court today.  May I call
20  her up now?
21          THE COURT:  Sure.
22          MS. MILLENDORF:  Where would you like her to be?
23          THE COURT:  She could either step at the rail or
24  step up to your bench.
25          THE COURT:  Can I ask counsel to step up?

*Ivelisse Rodriguez, Senior Court Reporter*

1     (Whereupon, an off-the-record discussion was held
2  at the bench.)
3     MS. KANYOK:  Your Honor, my name is Laura Kanyok.
4     THE COURT:  Try to speak into that microphone.
5     MS. KANYOK:  Hi, your Honor.  My name is
6  Laura Kanyok.  I'm a professional dancer of 20 years.
7  I've always dealt with injuries as an athlete, and I've
8  had numerous physicians in my life because of that, and
9  I've developed an insurmountable trust with most of them.
10     I never thought that doctors were infallible, but
11  I always hoped that I'd chosen the most educated and
12  experienced ones to tend to my needs.  I thought I'd done
13  that when I interviewed Dr. Hadden for my pregnancy care.
14     Having my first and only child was an experience
15  that I've always dreamt of.  The only focus that I had
16  for nine and a half months was the care and well-being
17  and the health of my daughter.  I knew the sex of her
18  very early on.  So going for doctors appointments with
19  Dr. Hadden, the first thing and only thing on my mind
20  that whole entire day was hearing her heartbeat.  Nothing
21  else seemed to be in my vision at that moment.
22     Somewhere during the second half of my pregnancy,
23  I felt something strange during an appointment.  A
24  wetness between my legs that wasn't normal during a
25  vaginal exam.  With a larger than normal belly and things

1   happening to my body that I'd never experienced, I
2   chucked it up that I must be crazy, because how could
3   this happen with such a solid physician with Columbia
4   University.
5        I delivered healthy daughter on ▢▢▢▢, and
6   on June 29, 2012, I went for my post-partum appointment
7   with Dr. Hadden.  I had no belly.  I had no fetal
8   worries.  My daughter was healthy, and he had done a full
9   vaginal exam with a nurse practitioner in the room.  I
10  had a clear bill of health.
11       We started talking about my birth control from
12  then on in, and it was then, after the nurse left, that
13  he asked to go for a second vaginal exam, and I
14  completely went into a state of shock, because I kind of
15  knew maybe what was about to happen, hoping that that
16  wasn't going to be the case.
17       With my cell phone in hand and naked on the table,
18  I laid back down and put my feet on the stirrups, and
19  felt the same wetness on my vagina that caused me to jump
20  back off the table.
21       The events that happened from that point until
22  11 p.m. that day that led me down to the DA's office,
23  took me away from my infant -- I don't know -- I don't
24  need to explain that at the moment -- what that day did
25  to me.  It wasn't just a botched knee surgery or

1    something that could be fixed with medical care.  It
2    dented my psyche, and it ruined the most sacred moment of
3    my life.
4         After that I had numerous months of therapy just
5    to focus on being happy for my daughter.  Every time I
6    would change her diaper, I would think of that moment,
7    and I still do in washing her.
8         I would walk the streets in fear of seeing a
9    gray-haired man with a beard, not knowing what I would do
10   if I was face-to-face with him again.  And it just -- now
11   I can't even go to a doctor's appointment without feeling
12   like I do right now.
13        I said to my daughter this morning when I took her
14   to school, she said, "Mommy, where are you going,"
15   because I never get dressed like this to take her to
16   school.  I said, "I'm going to talk to somebody in hope
17   that all the girls like you and me are safe forever."
18   She said, "Mommy, what do you mean?"  I'll teach her that
19   as the years go on, and I hope that, and I thank you, and
20   I thank everybody involved with this case that this has
21   happened, and I hope no other woman in any other country
22   of any age ever has to experience this ever again.  Thank
23   you.
24        MS. MILLENDORF:  Your Honor, as part of this plea,
25   the defendant has pleaded guilty to felony sexual assault

against a patient during a routine exam, admitting that he licked her vaginal area.

He also pleaded guilty to a separate misdemeanor sex crime against a second patient, also during a routine exam, which covered his indictment for sexually abusing six different patients.

As part of this plea, the defendant will be a convicted felon, a registered sex offender, and must give up his medical license and agree not to seek a license in any other state outside of New York.

Ms. Kanyok has spoken here today for herself, but over the course of this case, other victims have expressed the following about the impact that this defendant's actions have had on them.

The defendant's sexual abuse was a traumatic experience for these women, not only because it was a nonconsensual sexual contact, but because the defendant abused his position of trust as their doctor in committing his crimes.

In the cases where his victims were pregnant, the defendant abused his position as their obstetrician to abuse them rather than providing medical care during a particularly vulnerable period of time.

Pregnancy should be a joyful time, but it can also be a scary time and carry risks.  Rather than providing

1    medical care and assurance during this fragile period,
2    the defendant's actions left his victims feeling
3    humiliated, confused and violated.
4            Through the defendant's acknowledgment of guilt,
5    the People are hopeful that the victims in this case can
6    gain closure, and that the defendant will not be in a
7    position to abuse his power or sexually abuse his
8    patients again.
9            THE COURT:  Ms. Kirshner?
10           MS. KIRSHNER:  Your Honor, as you realize this
11   case has been pending and hard fought for a very long
12   time, and the People who are in the position to know the
13   actual facts and circumstances, all of them, came to a
14   decision in the negotiation, which was detailed, and
15   Dr. Hadden will no longer be practicing medicine, but
16   more importantly, we laid out in very clear detail what
17   the conditions of this plea are.  We rely on those
18   conditions, and we're ready to proceed to sentence.
19           THE COURT:  Does Dr. Hadden wish to make a
20   statement?
21           MS. KIRSHNER:  No.
22           THE COURT:  All right.  In accordance with the
23   plea agreement that was entered into between the District
24   Attorney's office and Ms. Kirshner the defendant's
25   attorney, with regard to the first count, criminal sexual

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | act in the first degree, the defendant will be sentenced            |
| 2  | to zero days time served.                                            |
| 3  | On the misdemeanor of forcible touching, the                         |
| 4  | defendant will receive a one-year conditional discharge,             |
| 5  | and he no longer will be allowed to practice law.                    |
| 6  | MS. KIRSHNER: Medicine.                                              |
| 7  | THE COURT: Practice medicine, excuse me.                             |
| 8  | Practice medicine anywhere within the United States.                 |
| 9  | MS. KIRSHNER: He has already voluntarily                             |
| 10 | surrendered his license.                                             |
| 11 | THE COURT: And he'll be required to now go to the                    |
| 12 | Sex Offender Monitoring Unit within this building to                 |
| 13 | arrange for the transfer to New Jersey where he resides.             |
| 14 | MS. KIRSHNER: Yes.                                                   |
| 15 | MS. MILLENDORF: Your Honor, we can do that SORA                      |
| 16 | assessment and SORA hearing now, if you'd like. I think              |
| 17 | it should be fairly brief. We've shown the SORA risk                 |
| 18 | assessment instrument to the Court beforehand and defense            |
| 19 | counsel. Should I go through that now?                               |
| 20 | THE COURT: Go ahead.                                                 |
| 21 | MS. MILLENDORF: The points assessed are as                           |
| 22 | follows, and as far as the corroboration that goes to                |
| 23 | each of these sets of points, each of these points are               |
| 24 | covered in both the indictment and the plea itself, so               |
| 25 | there's no need to submit additional evidence or                     |

*Ivelisse Rodriguez, Senior Court Reporter*

1  documentation at this time.
2         There are 25 points here assessed for category
3  number two, sexual intercourse, deviate sexual
4  intercourse or aggravated sexual abuse.  Thirty points
5  assessed in category number three for the number of
6  victims, which is assessed here as three or more, because
7  this category is assigned as the number of victims
8  covered in the accusatory instrument.
9         And there are 20 points assessed in category
10 number seven, *relationship with victim*.  The category
11 defined as, *stranger or established for purpose of*
12 *victimizing or professional relationship,* and there are
13 15 points here assessed for Category 14, *being released*
14 *without supervision,* and that brings us to a presumptive
15 category of two with a total of 90 points.
16         MS. KIRSHNER:  Your Honor, at this time, as per
17 our agreement, we're going to move for a downward
18 departure from that finding so that the Court can come to
19 a finding of a Level 1, which was zero to 70.
20         As we discussed, that finding is based on the fact
21 in some ways the fact that he's not being placed on
22 probation is working to his detriment, and everyone
23 agrees that a probationary sentence is not necessary in
24 this case.  That whatever occurred occurred in his office
25 and not out among the general public, and that we have

1   now two years of -- almost two years of the pendency of
2   this case, almost four years, since the incident that
3   Ms. Kanyok addressed without any incident.  And with
4   those three factors in mind and with no objection from
5   the District Attorney's office, the Court has agreed to a
6   downward departure to a Level 1.
7           THE COURT:  Is that correct there is no objection
8   by the People?
9           MS. MILLENDORF:  We agree this risk assessment
10  instrument does not take those factors into account and
11  defer to the Court's decision.
12          MS. KIRSHNER:  Is that a yes?
13          MS. MILLENDORF:  Yes.
14          THE COURT:  The defendant will be sentenced as a
15  Level 1 sex offender.
16          MS. KIRSHNER:  Your Honor, as part of the
17  agreement, we agree to waive any right to appeal, so I'm
18  not informing my client of that right.  We agree that the
19  imposition of a sentence is appropriate and we will await
20  in the courtroom for the paperwork so he'll go upstairs
21  to do whatever filings.
22          THE COURT:  Do we have the waiver forms for
23  Dr. Hadden to sign?
24          MS. MILLENDORF:  Those were signed at the time of
25  plea.

*Ivelisse Rodriguez, Senior Court Reporter*

1           THE COURT:  They were.  I want to advise
2   Dr. Hadden by waiving your right to appeal, you're
3   waiving your right to request the Appellate Division to
4   review and reconsider the terms of this plea as well as
5   the sentence.  You do, however, reserve certain limited
6   constitutional rights.
7           MS. MILLENDORF:  Thank you, Judge.
8              *   *   *   *   *
9   Certified to be a true and accurate transcript.

                            _____
11                            Ivelisse Rodriguez
                            Senior Court Reporter