Kaldhadc

Teleconference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          20 Cr. 0468(RMB)

 5   ROBERT HADDEN,

 6              Defendant.

 7   ------------------------------x

 8
                                           October 21, 2020
 9                                         12:38 p.m.

10
     Before:
11
                       HON. RICHARD M. BERMAN,
12
                                           District Judge
13

14                  APPEARANCES (via telephone)

15   AUDREY STRAUSS
          Acting United States Attorney for the
16        Southern District of New York
     BY:  JESSICA R. LONERGAN
17        MAURENE R. COMEY
          LAURA E. POMERANTZ
18             Assistant United States Attorneys

19   CLAYMAN & ROSENBERG
          Attorneys for Defendant
20   BY:  WAYNE ERVIN GOSNELL, JR.

21   ISABELLE KIRSHNER
          Attorney for Defendant
22
               – also present –
23
     Erica DePalma, U.S. Pretrial Services (New Jersey)
24

25
```

Kaldhadc
                              Teleconference

1          (Teleconference established)

2          THE CLERK:  Judge, we have all the parties and the

3    court reporter.  We don't have Pretrial Services on, however.

4          THE COURT:  We don't have any Pretrial Services

5    Officer, not New York nor New Jersey?

6          (Pause)

7          THE CLERK:  I don't think so, Judge.

8          THE COURT:  Well, that is a little bit of a surprise.

9          Chelsea, will you know if they join the call?

10         THE LAW CLERK:  Only if it is someone that we've had

11   on before and I see their number.

12         THE COURT:  I see.

13         THE LAW CLERK:  Christine, who is it supposed to be?

14   I will send them an email.

15         THE CLERK:  It was my understanding it is Erica

16   DePalma.  Is that correct, Mr. Hadden?

17         THE DEFENDANT:  Yes, that's correct.

18         THE COURT:  Is that New York or New Jersey?

19         THE CLERK:  That's New Jersey, Judge.

20         THE DEFENDANT:  That's New Jersey.

21         THE COURT:  I see.  OK.

22         Is there a New York person, too?

23         THE CLERK:  There was a New York person back on

24   November 17th.  However, that was not an individual who had a

25   supervisory role in the case.

Kaldhadc
                              Teleconference

1          THE COURT:  OK.  All right.  Then we'll just wait

2     another minute and see if the New Jersey person comes on.

3          (Pause)

4          THE COURT:  So this is Judge Berman again.  It would

5     be very helpful if everybody who is on this call would mute

6     their phones unless and until such time as they are going to

7     speak as part of the conference.

8          Any further contact from Pretrial Services?

9          THE CLERK:  Chelsea was going to email.  Go ahead.

10          THE LAW CLERK:  I haven't heard anything yet.

11          THE COURT:  Well, then I think we should begin and

12     we'll note the absense of Pretrial Services both from New York

13     and New Jersey.  I don't understand it but so be it.

14          One issue that I wanted to address at the outset is

15     the issue of counsel, and Mr. Hadden has new counsel.  I think

16     he sought either CJA or Federal Defenders.  And he submitted a

17     financial affidavit in support, which I think is the form

18     that's often used or normally used.  But that form is not

19     adequate for my purposes, which is to accurately reflect all

20     income, assets and expenses in a clear and verified format.  So

21     this one that has been submitted -- and it may be how other

22     people have done it as well, it's not the way I do it.

23          So I want a -- and particularly when we're talking

24     about someone who has had or has, you know, significant

25     resources as having been a medical doctor, having owned a home

Kaldhadc
Teleconference

1    that is valued at somewhere around a half a million dollars,

2    and also is someone who, as has been indicated in prior

3    conferences, had made a transfer of I don't know if it is

4    several hundred thousand dollars or some amount to one of his

5    children to buy a house, etc.  I think we need a more

6    professional and up to date financial affidavit.

7            So, I'm going to want one that is signed and

8    notarized, sworn to under oath, and also is accompanied by a

9    certified financial report prepared by an accountant, or

10   something like that, who knows Mr. Hadden's economic situation,

11   and that should cover the last couple of years prior to the

12   commencement of this lawsuit.  So, I want a full and accurate

13   picture of Mr. Hadden's finances and assets and of any

14   financial transfers that have taken place in the last, say, two

15   or three years as well.

16           THE CLERK:  Judge, this is Christine.  I'm sorry to

17   interrupt, but I believe we have the Pretrial Services Officer,

18   Erica DePalma, on the line.  Is that correct?

19           OFFICER DePALMA:  Yes, Christine.  This is Erica

20   DePalma with Pretrial Services in New Jersey.  Thank you.

21           THE COURT:  Good to have you.

22           OFFICER DePALMA:  Sorry, Judge.

23           THE COURT:  Yes.  So Ms. DePalma, we were just going

24   over Mr. Hadden's application for appointed counsel, and I've

25   been saying that I need more information rather than a

Kaldhadc
Teleconference

1    back-of-the-envelope kind of information with respect to that

2    financial affidavit before I can review it and determine

3    whether he is entitled to appointed counsel.

4              And, Ms. Kirshner, you can explain, to the extent that

5    that needs to be explained, go over that with Mr. Hadden, and

6    I'm going to have to do a do-over, as it were, accompanied by a

7    certified financial statement which covers his finances over

8    the last three years.

9              MS. KIRSHNER:  Your Honor, could we -- I'm just

10   thinking, maybe if we could use the kind of financial affidavit

11   that is used in connection with the preparation of a

12   presentence report, would that be adequate for you?

13             THE COURT:  You know, it sounds good.  What I really

14   wanted is I want a detailed picture of his assets and

15   liabilities and income and expenses, certified, over the last

16   three years.  So whatever form -- and that, of course, would

17   all be sworn to and under oath.  Just that.

18             So what they do is, Pretrial Services, I'm not sure

19   exactly, but if it accomplishes the objective that I want to

20   accomplish, I'll take a look at it.  But pretty much what I

21   want is a statement of assets and liabilities and income and

22   expenses detailed over the last three years, covering his

23   positions for the last three years.

24             So, once I get that, I'll take a look and I'll try and

25   make a determination about whether he qualifies for appointed

Kaldhadc

Teleconference

1    counsel.  But for the moment, I prefer that current counsel

2    remain in the picture.  I don't know how long it will take you

3    all to put that together, but that is what I'm looking for.

4         Anybody have any questions about that?

5         (Pause)

6         So the second issue is I just want to hear from

7    Pretrial Services how Mr. Hadden is doing with respect to the

8    terms and conditions of his release.  If we could hear --

9         OFFICER DePALMA:  Yes, Judge.  To my knowledge, there

10   has not been any issues with Mr. Hadden.  He calls in as

11   directed and provides requests when needed, and we have not had

12   any issues with him.

13        THE COURT:  Right.  But he has other obligations as

14   terms and conditions of his bail, one of which is to have a

15   mental health evaluation, I think, and also weekly therapeutic

16   counseling.  There are other specifics.  That's what I'm really

17   trying to find out, if the specifics are being accomplished,

18   and I mean that specifically.

19        OFFICER DePALMA:  Judge, I have spoken with his

20   psychiatrist and psychologist.  He's meeting over the phone.

21   I'm sorry, I have --

22        (Inaudible)

23        OFFICER DePALMA:  I'm sorry, Judge?

24        THE COURT:  Did you mention a name, and I couldn't get

25   it?  We might need to spell it for the court reporter.

Kaldhadc

Teleconference

1        OFFICER DePALMA:  OK.  I just have to get into his

2   case right now.  But I have spoken with the psychiatrist and

3   psychologist.  They are meeting on Zoom.  The psychiatrist is

4   every three months and the psychologist is weekly.

5        THE COURT:  And could you give us the names --

6        THE REPORTER:  I'm sorry.  Is this Pretrial Services

7   who is speaking?  You didn't identify yourself.

8        OFFICER DePALMA:  Yes.

9        THE REPORTER:  All right.  Thank you.

10       OFFICER DePALMA:  Sorry.

11       THE COURT:  And could you give us the names --

12       MR. GOSNELL:  Your Honor, this is Wayne Gosnell for

13  Mr. Hadden.  We would ask that any names of psychiatrists or

14  therapists, that if the Court needs that information, that that

15  be provided by Pretrial Services.  It is essentially not public

16  because just in the same way that we've had the issue of not

17  having the suretors be public, it is our expectation that this

18  would subject those individuals to targeting by members of the

19  public who have an agenda, and it really just isn't appropriate

20  under the circumstances here.

21       THE COURT:  Yes.  I'm really -- I understood that with

22  respect to the suretors.  I don't understand it with respect to

23  professionals, and so over your objection, I'm going to ask for

24  the names of those individuals from the Pretrial Services

25  Officer.

Kaldhadc

Teleconference

1        OFFICER DePALMA:  Sure, Judge.  Susan Powers is his

2    psychologist, and the psychiatrist -- I'm just trying to get

3    his information -- Dr. Marantz.

4        THE COURT:  Can you spell it?

5        OFFICER DePALMA:  M, as in Michael, a-r-a-n, as in

6    Nancy, t, as in Tom, z.

7        THE COURT:  OK.  And in terms of the psychologist,

8    there have been weekly meetings since I imposed --

9        OFFICER DePALMA:  These are -- yes, Judge.  These are

10   telehealth sessions so they are done over the phone.

11       THE COURT:  And are there any other aspects of bail

12   that you are familiar with that are not being -- anything

13   that's not being complied with?

14       OFFICER DePALMA:  No, Judge.

15       THE COURT:  OK.  So the other -- another issue that I

16   wish to deal with, which has come up, which is the issue of

17   documents that have been discussed in one or more of our

18   conferences so far.  There are also documents referred to in

19   some instances in terms of transcripts of, for example, plea

20   hearings in Mr. Hadden's state court case and also sentencing

21   hearing, and I will get more specific about those documents in

22   a moment.

23       There has been a request from the media -- in

24   particular, The New York Times has asked for those documents,

25   or documents which have made it to me either by request or

Kaldhadc
                    Teleconference

1    by -- request by me or that have been the subject of other

2    proceedings in which there is, you know, disagreement or -- and

3    so those are the documents which I am going to address at this

4    time.

5           There are one or two, by the way, documents that came

6    up in the course of our prior conferences.  One is related

7    to -- one is termed a <u>Molineux</u> motion.  It was my understanding

8    at the conference in which that was discussed that the defense

9    counsel was going to make available to me at least the defense

10   counsel opposition or submission with respect to that motion.

11   I never got it.  So, I'm still looking for that.  And if I'm

12   not mistaken, defense counsel was also going to send over a

13   copy of the indictment in state court.  I don't know if I got

14   that either.  I don't think so.

15          So if Ms. Kirshner or Mr. Gosnell could locate those

16   materials?  If you look through the transcript, you'll find

17   that they were specifically discussed, and I think one or both

18   of you volunteered to send them over to me and for whatever

19   reason it just didn't happen yet.  I would love to see those.

20          Is that all right?

21          MR. GOSNELL:  Your Honor, this is Wayne Gosnell.

22          I suppose the issue here is it somewhat depends on how

23   the Court intends to rule on our motion not to file these

24   documents publicly.  At the moment, the <u>Molineux</u> motion and

25   certainly the other documents that were --

Kaldhadc
                              Teleconference

1           THE COURT:  Mr. Gosnell, I think you've got the wrong

2   issue, frankly and respectfully.  If you look through the

3   transcript of our proceedings, you will find either you and/or

4   Ms. Kirshner said that they would send those documents to me,

5   and that has not happened.  And so I would like you to review

6   the transcripts and then send that to me along with the

7   indictment.  So what I do with it we'll get to in a minute, but

8   I was surprised, frankly, that I didn't receive those documents

9   by now.

10          So is that your understanding, what my request is?  My

11  request is that you look through the transcripts and see if you

12  did make that commitment and, for whatever reason, you didn't

13  follow through on that commitment.  OK?

14          MR. GOSNELL:  This is Wayne Gosnell.

15          Yes, we will do that.

16          THE COURT:  OK.  So for purposes of this ruling, we'll

17  hold at least the Molineux aside and until I get it and read

18  it.  But, also, when you look through the transcripts, you'll

19  find out, which I'm sure you have by now, that there was

20  discussion about those documents already.  And so what I'm

21  concerned about is that we haven't had any substantial

22  proceedings here yet, we're just sort of getting organized, but

23  the one substantive issue that has been discussed on several

24  occasions is bail.  And the issue of bail is of serious concern

25  to me since I'm essentially supervisor in a way -- not the

Kaldhadc
                         Teleconference

1   direct supervisor, that would be Pretrial Services, but I am in

2   a way the assessor of whether the bail conditions are working

3   and appropriate, and it is in that context that I have asked

4   for and for the most part received these other documents.

5          So, I had requested documents from the New York State

6   court proceeding, the plea transcript and the sentencing

7   transcript, as well as a copy of the State court plea

8   agreement.  I did receive those documents via email on

9   September 19.  In the email -- I think this was from

10  Ms. Lonergan -- she wrote that while the two transcripts are

11  publicly available, the plea agreement and the email were not

12  made part of the public record in the State case, and, as such,

13  she wrote it is the parties' preference that at least the plea

14  agreement and the email not be publicly docketed.  I am going

15  to address those documents in about a minute from now.

16         By letter dated September 29, defense counsel has

17  indicated that docketing the New York State court materials

18  would bring about additional adverse pretrial publicity for

19  Mr. Hadden and violate his Sixth Amendment right to a fair

20  trial by an impartial jury.  Close quote.  That's the

21  September 29, 2020 defense letter.

22         Counsel acknowledges that the New York State

23  transcripts and indictment are publicly-filed documents and

24  that the information contained in something called the Risk

25  Assessment Instrument was repeated during the New York State

Kaldhadc

Teleconference

1    sentencing proceedings.

2            And with regard to the plea agreement and the email,

3    defense counsel states that, "The nonpublic nature of those

4    documents is based upon the practices of the New York County

5    District Attorney's Office.  We leave it to" -- from the

6    defense:  "we leave it to that Office to explain its practices

7    and why.  In addition to our arguments, these documents should

8    remain non-public."

9            And then by letter dated October 1, 2020, the

10   government states -- this is a quote -- "To the extent the

11   Court relied on the publicly-available documents from the

12   prior" -- that is to say, the New York County District

13   Attorney's Office" -- proceedings making a judicial

14   determination in the instant case, the government does not

15   object to the docketing of those documents in this case.  As to

16   the non-public documents, because they do not appear to be

17   relied upon in any judicial decision in this case, the

18   government respectfully submits that those materials are not

19   judicial documents subject to public docketing at this time."

20           So, here's the issue.  Of course, everybody recognizes

21   that the public has a right of access to criminal judicial

22   proceedings and judicial documents.  The cite is Nixon v.

23   Warner Communications, 435 U.S. 589, a 1978 case.  Also, I'm

24   relying on Lugosch, L-u-g-o-s-c-h, v. Pyramid Company, 435 F.3d

25   110, a Second Circuit decision from 2006.  And so we know in

Kaldhadc
                            Teleconference

1    these essentially balancing situations where the rights of

2    privacy sometimes on one hand and the rights of the public to

3    know and have the information on the other hand, we do a

4    balancing test.  That is why you've made the submissions, the

5    lawyers have, that you've made and why we've discussed these

6    documents at various proceedings up until now.  And so these

7    are the documents that I have been balancing in my mind the

8    issues of potential privacy.  Frankly, I didn't see much that

9    was private in those documents, given the nature and the venues

10   in which they were discussed and analyzed.

11           But I balance that on the one hand and the public's

12   right to know on the other hand as to the physical safety and

13   privacy interest of any innocent third parties as well as those

14   rights of defendant that may be harmed by disclosure of the

15   material should weigh heavily in the Court's balancing equation

16   in determining what should remain sealed and what should be

17   redacted.  So another authority I'm referring to is New York

18   Times Company, 828 F.2d 110, a Second Circuit case from 1987.

19           I'm also of course aware of and reliant on federal

20   statutes.  One is 18 United States Code, Section 3142(g), which

21   states that:  "The judicial officer shall, in determining

22   whether there are conditions of release that would reasonably

23   assure the appearance of the person as required and the safety

24   of any other person and the community, shall take into

25   account" -- this is the bail statute -- "shall take into

Kaldhadc
                              Teleconference

1    account the available information concerning, among other

2    things, the history and the characteristics of the person,

3    including his character, physical and mental condition, family

4    ties, employment, financial resources, length of residence in

5    the community, community ties, past conduct, history relating

6    to drug or alcohol abuse, criminal history, and record

7    concerning appearance at court proceedings and also whether at

8    the time of the current alleged offense or arrest he was on

9    probation or parole or on such other release pending trial,

10   sentencing, appeal, or completion of sentence for an offense

11   under federal, state or local law."

12          And, finally, that statute section I am referring to

13   concludes:  "Also, the nature and seriousness of the danger to

14   any person or the community that would be posed by the person's

15   release."

16          So, this is the bail statute.  We know that bail has

17   been set by the Magistrate Judge.  We know that I am concerned,

18   because we've had very extensive discussions about whether the

19   conditions of bail have been met, including in my introductory

20   remarks today to find out from the Pretrial Services Officer

21   whether in fact those conditions, which, incidentally, to which

22   I made a modification at one of the more recent conferences.

23   So, these documents are of paramount concern and importance in

24   their contents to me in connection with the bail statute.

25          There is another statute which I've already relied

Kaldhadc
Teleconference

upon, which is 18 United States Code, Section 3142(c)(3), which
states that:  "The judicial officer may at any time amend the
order to impose additional or different conditions of release."
And that is a statute I relied upon when I introduced the
requirement that there be weekly mental health counseling as a
condition of bail.

So, those are the premises for which I reviewed the
documents at issue today.

The government contends that there is no indication
that the Court has relied on any of the public documents in
these proceedings, nor have the parties relied upon the
nonpublic documents in arguments made to the Court.  I take
objection with that statement by the government.  I think that
it is very clear from the transcript, again, my interest in
the -- and my role with respect to the bail conditions and the
rather detailed discussions that we've about some of these very
documents.

So in determining whether the bail conditions are and
were sufficient, I reviewed the New York State plea transcript,
the New York State sentencing transcript, the Risk Assessment
Instrument, the New York State plea agreement, and an email
between Assistant District Attorney Gaffney, G-a-f-f-n-e-y, and
defense counsel Kirshner, K-i-r-s-h-n-e-r, and Gosnell,
G-o-s-n-e-l-l.  These materials are and were clearly relevant
to the Court's assessment of whether the bail conditions are

Kaldhadc
                        Teleconference

1    sufficient as the materials concern, among other things, the

2    history and characteristics of the defendant as well as his

3    criminal history and I underscore, among other things, factors

4    that the Court must, and I have, analyzed under 18 United

5    States Code, Section 3142(g).

6            Now, I started with mentioning the Molineux papers,

7    and I do hope you all go back to the transcript and see where

8    those were discussed.  My ruling today will not directly

9    concern the Molineux papers because I never got them, and I

10   will review them once they are received and I will determine

11   whether or not they are useful and connected to any of the

12   legal purposes for which we review such materials.

13           In the New York State plea transcript, the Assistant

14   District Attorney Millendorf, M-i-l-l-e-n-d-o-r-f, stated that:

15   "Prior to going on the record today" -- this is the plea

16   transcript that you should refer to to see if the quote is

17   correct, dated February 23, 2016.  Millendorf stated that:

18   "Prior to going on the record today, the defendant" -- and the

19   defendant in that case was also Mr. Hadden, the same as the

20   defendant in this case -- "and the people have signed three

21   copies each, which we are filing and serving at this time, of a

22   written waiver of a right to appeal, a written plea agreement,

23   and the previously agreed upon" -- and then there is a sort of

24   a pause.  "The defendant did also sign a copy of the written

25   order from the Office of Professional Medical Conduct

Kaldhadc
                          Teleconference

1    discussing the surrender of his medical licensure in New York

2    and his agreement not to seek such licensure" -- that's his

3    medical license -- "in another state.  So we are not providing

4    the Court with a copy of the OPM plea agreement, but we will be

5    providing the Court with the plea agreement in writing and a

6    written waiver of the right to appeal, and defense counsel also

7    has copies of these and I'm handing those up now."

8               That's in the state court proceeding back in 2016.

9               Also, in the New York State plea transcript, defense

10   counsel Kirshner stated:  "I just -- I would like to

11   incorporate by reference, although I'm not going to provide to

12   Court, I received an email from Ms. Daphne, dated February 11,

13   2016, which goes to greater detail as to the crimes that will

14   be covered by the plea."  That's found in the February

15   (inaudible) 2016 plea transcript.

16              THE REPORTER:  Your Honor, hi.  This is the court

17   reporter.  Somebody is making some noise that is stepping over

18   you and I am losing some of your words.

19              If I could once again please implore everybody, except

20   for your Honor, to please put your phones on mute because it is

21   blocking out some of the words that you are saying.

22              THE COURT:  OK.  So that's a fair point by the court

23   reporter, that we have a lot of people on the line, and if you

24   all could mute your phones at such times as you are not

25   speaking as part of the hearing.  That is a good point.

Kaldhadc
                         Teleconference

1           In the New York State transcript, sentencing

2    transcript -- I was just talking about the plea transcript, but

3    now I'm referring to the sentencing transcript -- the Assistant

4    District Attorney Millendorf stated:  "We've shown that the

5    SORA Risk Assessment Instrument to the Court beforehand and

6    defense counsel."

7           Then the following colloquy occurred among counsel and

8    the Court -- this is the state court -- about the contents of

9    the Risk Assessment Instrument.  And ADA Millendorf stated

10   that, "The points assessed are as follows."  So the Risk

11   Assessment document is a calculation of various points ascribed

12   to the offense conduct, which is me summarizing, and those

13   points get added up to determine what the sex offender status

14   of in this case Mr. Hadden should be.  And so he's saying --

15   Millendorf is saying that, "The points assessed are as follows.

16   And as far as the corroboration that goes to each of these sets

17   of points, each of these points are covered in both the

18   indictment and the plea itself.  So, there's no need to submit

19   additional evidence or documentation at this time."

20          And he goes on to say, "There are 25 points here

21   assessed for category number 2."  And then he says, "Sexual

22   intercourse, deviate sexual intercourse, or aggravated sexual

23   abuse."  that is the category he's discussing for which 25

24   points have been assessed.

25          He goes on to say that, "30 points assessed in

Kaldhadc
                    Teleconference

1   category number 3 for the number of victims, which is assessed

2   here as three or more, because this category is assigned to the

3   number of victims covered in the accusatory instrument."

4          And he goes on to say, "There are 20 points assessed

5   in category number 7, Relationship with Victim, a category

6   defined as stranger or established for purpose of victimizing

7   or professional relationship.  And there are 15 points here

8   assessed for category 14.  And then being released without

9   supervision, and that brings us to a presumptive category of

10  two with a total of 90 points."  So this is the Assistant

11  District Attorney describing how the Risk assessment at this

12  stage, anyway, at the stage I've stopped quoting him, is 90

13  points.

14         The next to speak is Defense Counsel Kirshner, and she

15  says -- and this is not to me, this is to the state court

16  judge:  "Your Honor, at this time, as per our agreement, we're

17  going to move for a downward departure from the finding so that

18  the Court can come to a finding of level one, which was a zero

19  to 70."  So level 1 is the, as I understand it, the lowest

20  level of supervision of a sex offender, and the maximum number

21  of points for that category is 70.  Mr. Millendorf had already

22  said that they were at 90.  So she's making an application and

23  she goes on to say:  "As we discussed, that finding is based on

24  the fact that in some ways the fact that he" -- Mr. Madden --

25  Hadden, rather, excuse me -- "not being placed on probation is

Kaldhadc
                              Teleconference

1    working to his detriment, and everyone agrees that a

2    probationary subpoena is not necessary in this case, that

3    whatever occurred occurred in his office and not out among the

4    general public and that we have now two years of -- almost two

5    years of the pendency of this case, almost four years since the

6    incident that one of the victims addressed without any

7    incident.  And with those three factors in mind, and with no

8    objection from the District Attorney's office, the Court has

9    agreed to a downward departure to a level one."

10          So, this is the application and motion with respect to

11   what level of supervision will be required as a result of the

12   sentence in that case.

13          Then the Court steps in and says:  "Is that correct,

14   there's no objection by the people?"

15          And ADA Millendorf says, in response to the Judge's

16   question:  "We agree, the Risk Assessment Instrument does not

17   take those factors into account and defer to the Court's

18   decision."

19          And Ms. Kirshner then says:  "Is that a yes?"

20          And Mr. Millendorf says:  "Yes."

21          Then the Court goes on to say:  "The defendant will be

22   sentenced as a level one sex offender."

23          And you can find that in the March 29, 2016 sentencing

24   transcript at page 8, lines 21 through 24.

25          The email reviewed by the Court dated 2/11/16, which

Kaldhadc
                    Teleconference

1    was from ADA Gaffney to defense counsel Kirshner and Gosnell,

2    among other things, the email mentions an alleged abuse that

3    occurred in either April or May of 2011 that was brought to the

4    attention of the District Attorney's Office in November 2015

5    that was encompassed as one of the offenses covered by the plea

6    agreement entered into by the defendant in New York State

7    court.

8            So, those pretty much I think encompass the documents

9    which I have received, and I have done the aforementioned

10   balancing in my analysis and here's what I conclude.  As the

11   New York State documents were relied upon in conducting and/or

12   reviewing the bail review and as these documents were either

13   publicly filed either in state court -- well, or discussed and

14   referenced in the publicly-filed documents that I mentioned,

15   then I concluded, on balance, that there does not appear to be

16   any persuasive physical safety and/or privacy interest of

17   innocent third parties or of the defendant, Mr. Hadden, that

18   will be harmed by disclosure.  And in that balancing, I've

19   concluded that the public's right to know, to have access, is

20   paramount at least with respect to the documents I'm talking

21   about.

22           And, consequently, I am going to file on the public

23   docket these documents -- the New York State -- well, I am

24   going to file this when I get it -- the indictment, also the

25   New York State plea transcript, also the New York State

Kaldhadc
                         Teleconference

1    sentencing transcript, also the Risk Assessment Instrument,

2    also the New York State plea agreement, and also the email

3    dated February 11, 2016 between ADA Gaffney and defense counsel

4    Kirshner and Gosnell.

5            I will hold off, because I haven't gotten or reviewed

6    the so-called Molineux papers, and I will reserve decision

7    until such time as I get a chance to review them.  I hope that

8    will be in the next day or two from defense counsel.

9            By the way, with respect to the documents that I've

10   just mentioned, my plan would be to redact email and/or home

11   addresses that may be contained in any of those documents from

12   public filing.

13           So that's the issue I wanted to go over for today.

14   There may be other issues -- well, there certainly are issues

15   that you all may want to raise and discuss, and I'm happy to do

16   it.

17           So, anything from the government that you wish to

18   raise today?

19           MS. LONERGAN:  Yes, your Honor.  Briefly, I would like

20   to raise two issues.

21           First, returning to the very first issue in this

22   conference, which is -- has to do with appointment of counsel

23   for the defendant, the government just wanted to know for the

24   Court that the government, with respect to conflicts, if and

25   when it comes time to appoint counsel, on the CJA panel the

Kaldhadc
Teleconference

1    government is only aware of conflicts with Debevoise and with

2    Paul Weiss, and then the government is not aware of any

3    conflicts with the Federal Defenders.

4              THE COURT:  OK.  That is helpful.  So it's Debevoise

5    and Paul Weiss, did you say?

6              MS. LONERGAN:  That's correct, your Honor.

7              THE COURT:  OK.  So, OK, that leaves it wide open

8    pretty much.  The list is rather extensive but that's very

9    valuable and helpful to know.

10             MS. LONERGAN:  And then the second -- the second thing

11   is just a request from the government, which is that the

12   government takes its responsibilities and obligations to notify

13   everyone of the conference and the dial-in information for the

14   conference prior to the conference.  And so this is just a

15   request from the government that if it is possible to provide

16   the dial-in information 24 hours in advance of the conference,

17   or to tell us now that the dial-in information will always be

18   the same, that would be very helpful -- I'm going to say 24

19   hours; it could be 24 hours or more -- just so that we're not

20   reaching out to plaintiffs' counsel and to the other victim

21   notification services, you know, just the evening before the

22   conference.  So that is just a request from us going forward,

23   if we could have a little bit more notice of the dial-in

24   information so that we could make sure we timely comply with

25   our obligations.

Kaldhadc

Teleconference

1    THE COURT:  Yes.  So that's more than reasonable.  I

2    don't know, and I'm reluctant to say that -- well, maybe

3    Chelsea can help us out with that.  I don't know if it is

4    always going to be the same security code number, but I'm very

5    glad that you raised the topic.  It's very important to us that

6    we notify the persons who are -- the persons who need to be

7    notified, in addition to the litigants and counsel, of course.

8    The top of my list is the victims, who are called victims.  And

9    so we will certainly accommodate you in that regard.

10    I'm going to ask -- well, I won't do it now.  I don't

11    want to put Chelsea on the spot to say whether it is always the

12    same security code, but we'll get back to you about that.  And

13    we certainly are happy to give you at least 24 hours notice.

14    And you can always call chambers and ask for Chelsea or

15    Christine if you haven't gotten that notification and you

16    think -- and you know there is something coming up, we'll

17    certainly make it available to you right then and there.

18    MS. LONERGAN:  Understood, your Honor.  And we thank

19    you very much.  And those were the only two points that the

20    government wished to raise at this conference besides what the

21    Court has already addressed.

22    THE COURT:  Just by way of information, were you able

23    to make a notification to the victims of today's proceeding?

24    Did you have the security code adequately in advance for that

25    purpose?

Kaldhadc
                        Teleconference

 1            MS. LONERGAN:  Yes, your Honor.  We received it, say,

 2   mid or late yesterday afternoon.  As soon as we received it, we

 3   circulated it and put it in a variety of places that we put it.

 4   So we hope that the victims were -- they should have all at

 5   least -- you know, we started the notification process

 6   yesterday before the end of the day, but, you know, I just -- I

 7   think a little bit more notice would be helpful for them.  You

 8   know, we -- our office has a practice or can send out

 9   individual letters or individual emails as well as notifying

10   the victims through counsel, but if we're going to do that,

11   send out letters or emails, then we need at least -- I think

12   for letters we need a week notice, and then for emails it may

13   not be a week, maybe we will do it in a couple of days.

14            But I think what makes sense, your Honor, is that

15   we -- we will keep track of, of course, the conference dates,

16   they're always in our calendar, and we will -- we will be

17   responsible for contacting chambers, you know, even a week in

18   advance to get the information such that we can make sure we

19   have enough time to notify the victims in all the different

20   ways that we do.

21            THE COURT:  That's great and I appreciate that.  We

22   will absolutely make it our business to tell you what the

23   security code is.  I think for the foreseeable future, by the

24   way, we will be operating by these telephone conferences.  I

25   think that is almost certainly going to be true for the balance

Kaldhadc
```
                         Teleconference
```

1   of 2020.  And I think that is even -- I'm sure that's true of

2   my docket in other cases but particularly I think it's going to

3   be true here, either, because I don't believe that, because of

4   the pandemic, that the court or the courtroom is quite ready

5   for not only the litigants and their counsel but also the

6   victims to be physically present in, for example, my own

7   courtroom.  So I don't think it would be feasible to do it in

8   any other way at this time, but that's just a heads up.

9            But I will absolutely guarantee to you that we will be

10  able to give you security code notification information well in

11  advance of any conference or hearing or proceeding that --

12           MS. LONERGAN:  We appreciate that, your Honor, and,

13  again, we will also take it upon ourself to contact chambers,

14  because we know, of course, that everyone is busy and we'll

15  make sure that we do that.  So those were the only issues that

16  the government wished to raise with the Court today.

17           THE COURT:  Do you have any comment on status of the

18  case in terms of, I don't know, discovery or where things

19  are -- how things are going in that regard?

20           MS. LONERGAN:  Yes, your Honor.  So in some sense we

21  are at the same place, unfortunately, that we were at the last

22  conference.  In light of the counsel situation, defense

23  counsel, it has been current counsel's position, which we

24  completely understand, that they don't wish to enter into a

25  protective order if they're not going to stay in the case

Kaldhadc
                          Teleconference

1    longterm.  And so in some sense we have been waiting to resolve

2    the question of longterm counsel before we can have productive

3    discussions about a protective order.  And in light of the

4    allegations and the discovery materials in this case, there is

5    really very little we can produce without a protective order.

6          That said, we are moving forward on doing what we can

7    do, and so one of the things we have been engaged in with

8    current counsel on is the privilege review of the seized

9    materials, and so the government is working to get that

10   privilege review underway so that once the counsel situation is

11   resolved, once we have a protective order, hopefully those

12   privilege reviews will already be underway and then it will

13   make it so that we can produce, you know, the electronic

14   materials in a faster way.  So we are moving ahead as we can,

15   and, hopefully, after the Court's conversation today with

16   defense counsel, we can resolve the counsel situation in the

17   near future and then we can move forward with conversations

18   about the protective order and then with producing discovery.

19         THE COURT:  That's great.  I just got the financial

20   affidavit with respect to Mr. Hadden I think just in the last

21   two days or so.  So if I had gotten it sooner, I would have

22   sent up a red flag because I have an issue.  But be that as it

23   may, I think no harm done, we'll get there.

24         And while I have you, one more thing, Ms. Lonergan.

25   It might have been you who mentioned in one of our proceedings,

Kaldhadc
                       Teleconference

1    perhaps on September 25, that you had located a copy of the

2    indictment and that you were going to send that to me.  I

3    think --

4              MS. LONERGAN:  Yes, your Honor.  I believe that we

5    have it.  I will confirm with my co-counsel, but I believe that

6    we have the state indictment.  And as soon as we locate it, we

7    will -- we can send it to chambers.  We will send it by email,

8    copying defense counsel.

9              THE COURT:  Great.  Thank you very much.

10             OK.  So, defense counsel, did you want to say

11   anything?  Make any --

12             MS. KIRSHNER:  No, your Honor.  We will consult with

13   Mr. Hadden, and get you back with the financial affidavit as

14   soon as we can.

15             THE COURT:  OK.  Any idea?  I won't, you know, hold

16   you to it but --

17             MS. KIRSHNER:  I'm assuming he is going to have to go

18   to an accountant and get the statement.  I don't know how one

19   accomplishes a notary these days, but I guess we can figure

20   that out.

21             THE COURT:  Yes, OK.  So as soon as you can -- well,

22   obviously, you are interested in getting it done soon as well.

23             MS. KIRSHNER:  Right.

24             THE COURT:  OK.  And if you could send me the

25   documents that you mentioned that you would send, if you could

Kaldhadc
Teleconference

1   do that before the end of the week, that would be great.

2           MR. GOSNELL:  Yes, sir.

3           THE COURT:  OK.  I think that's about it.

4           So, let's see.  Assuming that the information, I'm

5   guessing, would be prepared and ready, do you think,

6   Ms. Kirshner, within two weeks, three weeks at the most?

7           MS. KIRSHNER:  I would guess, Judge.  I have no idea.

8           THE COURT:  OK.  So, Chelsea or Christine, Christine,

9   how about a date two weeks from now or so?

10          THE CLERK:  Yes, Judge.

11          THE COURT:  What dates would that be?  It could be a

12  little bit -- with Election Day, it is going to be --

13          THE CLERK:  Judge, how is November 10th at 11:30?

14          MR. GOSNELL:  Your Honor, this is Wayne Gosnell.

15          I'm actually scheduled to have an oral argument in the

16  Appellate Division that day.  If we could have it a different

17  day, I would appreciate it.

18          THE COURT:  OK.

19          THE CLERK:  Judge, how is November 9 at 12:30?

20          THE COURT:  Is that a Monday?

21          THE CLERK:  It is.

22          THE COURT:  I would prefer, if you could, November 11,

23  if we've got something?

24          THE CLERK:  It is a court holiday, Judge.  It is

25  Veterans Day.

Kaldhadc
                       Teleconference

1            THE COURT:  Oh.  And what about the 12th?  Is that a

2      weekday?

3            THE CLERK:  The 12th is a Thursday, Judge, 9:30.

4            THE COURT:  Yes.  November 12, 9:30.  Is that

5      agreeable to everybody?

6            MS. KIRSHNER:  Yes, Judge.

7            MR. GOSNELL:  Yes.

8            THE COURT:  Good.  All right --

9            MS. LONERGAN:  Yes, your Honor.  This is Jessica

10     Lonergan.  Yes for the government.

11           THE COURT:  OK.  Is there an issue or application with

12     respect to speedy trial that we need to deal with?

13           MS. LONERGAN:  Yes, your Honor.

14           At this time, the government would move to exclude

15     time under the Speedy Trial Act from now until November 12th.

16     This will allow the defendant to work out the question of his

17     representation, which is necessary for proceeding forward with

18     the case, and also will allow the parties to continue to engage

19     in conversations regarding any sort of pretrial disposition,

20     should that be pertinent at this time.

21           THE COURT:  OK.  Thank you.

22           I'm going to find, under 18 United States Code,

23     Section 3161, that the request for adjournment, joined in by

24     both sides, is appropriate and warrants exclusion of the

25     adjourned time from speedy trial calculations.  I further find

Kaldhadc
                    Teleconference

1    that the exclusion is designed to prevent any possible

2    miscarriage of justice, to facilitate these proceedings,

3    including resolution of the issue of defense counsel, and to

4    guarantee effective representation of and preparation by

5    counsel for both parties, and, thus, the need for exclusion and

6    the ends of justice outweigh the interests of the public and

7    the defendant in a speedy trial pursuant to 18 U.S.C., Section

8    3161(h)(7)(A) and (B).

9             So, unless that's it, Christine, if you could call me

10   after we hang up from this call?

11            THE CLERK:  Yes, Judge.

12            THE COURT:  We are adjourned for today.  Thanks,

13   everybody.  Thanks for your help and thanks for Probation from

14   New Jersey for being here.

15            MR. GOSNELL:  Thank you, your Honor.

16            MS. LONERGAN:  Thank you.

17            MS. KIRSHNER:  Thank you, your Honor.

18            (Adjourned)

19

20

21

22

23

24

25