**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :
                                             :       20 Cr. 468 (RMB)
            - against -                      :
                                             :       **DECISION & ORDER**
ROBERT HADDEN,                               :
                                             :
                  Defendant.                 :
------------------------------------------------------------------x

Attorneys Isabelle Kirshner and Wayne Gosnell, who are defense counsel of record for Defendant Robert Hadden ("Hadden"), have requested the Court to relieve them as Hadden's counsel.[1] Defense counsel also ask the Court to appoint CJA counsel or Federal Defenders in their stead. For the reasons that follow, the applications are respectfully denied. Hadden has not shown that he is financially unable to retain counsel within the meaning of 18 U.S.C. § 3006A(b)-(c). Hadden's financial resources and income are not insufficient for him to obtain qualified counsel. *See United States v. Parker*, 439 F.3d 81, 98 (2d Cir. 2006).

**I.   Background**

To date, Hadden, who is 63 years of age, has made several attempts to support his request for appointed counsel. The first effort was a handwritten affidavit, dated October 15, 2020 and attached hereto as Exhibit A. Hadden listed the following assets in the affidavit: "cash on hand or money in savings or checking accounts" in the amount of $145,000; monthly income of $6,640 from private

---

[1] Hadden has been privately represented by Kirshner and Gosnell in these S.D.N.Y. proceedings, including the bail hearing before Magistrate Judge Robert W. Lehrburger on September 9, 2020. See Sept. 17, 2020 Tr.; Sept. 25, 2020 Tr.; Oct. 21, 2020 Tr.; Nov. 12, 2020 Tr. They were also previously retained to represent Hadden in state court criminal proceedings from 2012 to 2016.

The Indictment in this case charges Hadden with six counts of enticement and inducement to travel to engage in illegal sex acts with patients in violation of 18 U.S.C. § 2422(a) and 2.

disability insurance; house with a value of $500,000. Hadden also listed monthly expenses of $10,427.50.

The affidavit was rejected at a conference with the Court on October 21, 2020. Court: "[Hadden has] submitted a financial affidavit in support, which I think is the form that's often used or normally used. But that form is not adequate for [these] purposes, which is to accurately reflect all income, assets and expenses in a clear and verified format. . . . particularly when we're talking about someone who has had or has, you know, significant resources . . . [H]aving been a medical doctor [Columbia University Medical Center - gynecologist], having owned a home [in New Jersey] that is valued at somewhere around a half a million dollars, and also is someone who, as has been indicated in prior conferences, had made [] transfer[s] of . . . several hundred thousand dollars or some amount to one of his children to buy a house. I think we need a more professional and up to date financial affidavit . . . What I really want[] is a detailed picture of his assets and liabilities and income and expenses, certified, over the last three years . . . and that, of course, would all be sworn to and under oath." See Oct. 21, 2020 Tr. at 3:14-4:6, 5:13-17.

By letter dated November 11, 2020, defense counsel advised the Court as follows: "[W]e write to update the court regarding the financial statement this Court has ordered Mr. Hadden to submit in advance of deciding whether to appoint CJA counsel on his behalf. Following our last conference on October 21, 2020, Mr. Hadden sought to engage Peter B. Reynolds, a New Jersey-based CPA, for the purpose of preparing a financial statement for submission to this Court. . . . On November 4, 2020, Mr. Hadden was informed that Mr. Reynolds would not be able to provide the requested financial statement based on his unavailability and because, in his view, the applicable . . . guidelines for providing a financial report was beyond his capability. Mr. Hadden then sought to engage Kevin J. Collins, another New Jersey-based CPA. This too resulted in Mr. Collins eventually declining the engagement." See Nov. 11, 2020 Def's Letter at 1. "Finally, on November 10, 2020, Mr. Hadden has engaged Mark Koenig, a third New Jersey-based accountant. Mr. Koenig has accepted the engagement and expects to have it completed within two weeks. He has requested that we provide additional

2

specifics as to the nature of the report this Court wants to receive so that he can provide the most pertinent information for this Court's review." Id. At a November 12, 2020 conference with the Court, Ms. Kirshner stated: "[S]ince the information that the court is seeking is much broader than the information that's being sought by the standard CJA form, that's going to take a little more time." See Nov. 12, 2020 Tr. at 7:20-25, 8:1-17.

By email dated December 4, 2020, Mr. Gosnell provided the Court with "Robert Hadden's financial statement[s] in support of his application to have CJA counsel or Federal Defenders appointed to represent him in these matters" ("Financial Statements"). The Financial Statements were prepared by Mark Koenig, CPA/ABV, CVA and include, among other things, a Net Worth Statement, dated December 3, 2020 ("Net Worth Statement"); a Monthly Cash Flow Statement, dated December 3, 2020 ("Monthly Cash Flow Statement"); and supporting exhibits. The Financial Statements include this qualification by CPA Koenig: "We have not verified the accuracy or completeness of the information provided nor can we express an opinion, or conclusion nor provide any assurance on the [Financial Statements]." See Dec. 3, 2020 Ltr. from Mark Koenig.

In his December 4, 2020 email, Mr. Gosnell also asked that the Financial Statements be sealed: "As all of these documents include Mr. Hadden's private financial information, none of which has been redacted, we respectfully request that these documents be filed under seal, if they are filed at all." The Court is not in favor of this sealing application because the documents are both useful and relevant to the judicial process and the application for appointed counsel as well as the related financial issues have been openly aired and discussed in court on several occasions. "In this Circuit, a document filed with the court is a judicial document subject to the presumptive right of access if it is 'relevant to the performance of the judicial function and useful in the judicial process.'" *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 133 (2d Cir. 2017). "The common-law right of access to judicial proceedings

and documents creates a presumption in favor of public access to, and against sealing of, judicial documents." *United States v. Sattar*, 471 F.Supp.2d 380, 384 (S.D.N.Y. 2006).[2]

**Bail Hearing: Million Dollar Bond**

Hadden was, as noted, represented by attorneys Kirshner and Gosnell at the bail hearing on September 9, 2020 before Magistrate Judge Robert W. Lehrburger. At that hearing, the following exchange took place: AUSA Comey: "[Hadden] has the means to flee. He recently received several hundred thousand dollars from life insurance policies over the last year, and his bank records reflect that he has transferred thousands of dollars, including the transfer of $100,000 to his daughter within the last year." Sept. 9, 2020 Tr. at 16:4-14. Ms. Kirshner: "While the government has indicated he has the means to flee, I know and I assume they know that they spoke with Mr. Hadden's daughter today, and they learned that the monies that were transferred to her [$100,000] was to assist her in purchasing her first home. They also know, because . . . Mr. Hadden said it . . . essentially what he has in terms of assets is about $174 in cash and a home, and that's what he's got." Id. at 21:19-22:3. Magistrate Judge Lehrburger: "[I]n regard to the amount of the bond based on the resources that have been disclosed or talked about . . . I'm just looking at his financial information in the Pretrial Report, I just want to check that. All right, yes, so I think a million dollars is appropriate, it must be secured by pledging the home, whatever equity is in there, and it must be cosigned by three financially responsible persons." Id. at 39:23-40:8.

**II.   Legal Standard**

An "accused defendant [] retains a presumption of innocence throughout the trial process." *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000). "The

---

[2] The Court will provide the defense the opportunity to redact personal information such as social security numbers, names of minor children, dates of birth, financial account numbers, and home addresses. See pp.12-13 *infra*.

presumption of innocence [] attaches to every criminal defendant." *Herrera v. Collins*, 506 U.S. 390, 399 (1993).

Pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(b) ("CJA"), "whenever a defendant charged with a felony . . . appears without counsel . . . the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel . . . [I]f satisfied after appropriate inquiry that the person is financially unable to obtain counsel, [the Court] shall appoint counsel to represent him." *United States v. Barton*, 712 F.3d 111, 117 (2d Cir. 2013) (quoting 18 U.S.C. § 3006A(b)). Pursuant to 18 U.S.C. § 3006A(c), "if at any stage of the proceedings . . . the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel . . . as the interests of justice may dictate." *United States v. Parker*, 439 F.3d 81, 91 (2d Cir. 2006) (quoting 18 U.S.C. § 3006A(c)). "The CJA Guidelines . . . indicate that the standard applies to a defendant whose net financial resources and income are insufficient to enable him to obtain qualified counsel." *Id.*

"CJA funds are a necessarily limited resource" and courts must be "cognizant of the public's strong interest in how its funds are being spent in the administration of criminal justice." *Id.*

"[B]efore appointing counsel, a judge must first conduct an appropriate inquiry into the defendant's financial eligibility.'" *Barton*, 712 F.3d at 117. "[T]he defendant seeking appointment of counsel must 'prove by a preponderance of the evidence that he is financially unable to afford counsel.'" *United States v. Hilsen*, 2004 WL 2284388, at *3 (S.D.N.Y. Oct. 12, 2004) (citing *Harris*, 707 F.2d. at 660). "The Court has considerable discretion in inquiring into the defendant's finances in determining eligibility for appointed counsel." *United States v. Hyde*, 208 F.Supp.2d 1052, 1054 (N.D. Cal. 2002). "[A] defendant's claim of inability to afford counsel can be rebutted 'by inference and circumstantial evidence.'" *Parker*, 439 F.3d at 95.

"Documents to which the public has a qualified right of access may be sealed only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is

5

narrowly tailored to serve that interest." *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008). "The party seeking to seal the documents in question bears the burden of showing that higher values overcome the presumption of access." *United States v. King*, 2012 WL 2196674, at *2 (S.D.N.Y. June 15, 2012).

### III. Findings

Hadden has not met his burden of showing that he is unable to afford representation, as follows:

**Prior Representation by Private Counsel**

It does not appear that Hadden sought appointed counsel prior to October 15, 2020, i.e. the date of his affidavit (Ex. A). Before that date, Kirshner and Gosnell represented Hadden. See e.g., Sept. 9, 2020 Tr. at 3:10-12 (Ms. Kirshner: "Good evening, your Honor, this is Isabelle Kirshner, I'm here with my partner Wayne Gosnell, and we're here on behalf of Mr. Hadden."); ("I first met Mr. Hadden in 2012 when he was arrested by the New York City Police Department and charged in connection with the abuse of a patient."). Id. at 4:11-16, 20:2-4. Ms. Kirshner stated: "Mr. Gosnell and I have represented Mr. Hadden in the past and we are prepared to represent him here this evening, but it is for the limited purpose of this proceeding. We have not had an opportunity to consult with him about being formally retained going forward." See Sept. 9, 2020 Tr. at 4:10-16.[3]

When Magistrate Judge Lehrburger asked defense counsel what they would propose as a bond amount, Ms. Kirshner replied: "Your Honor, you know, a substantial bond of a million dollars signed by his wife and other financially responsible [persons], you know, secured by his home, house detention, home detention and all the other conditions that Pretrial has recommended." See Sept. 9, 2020 Tr. at 39:17-22.

---

[3] As noted, attorneys Kirshner and Gosnell represented Hadden throughout Hadden's New York State proceedings from 2012 to at least 2016.

Kirshner and Gosnell also appeared on behalf of Hadden at the September 17, 2020 conference with this Court. Ms. Kirshner: "[W]e have not been formally retained by Mr. Hadden . . . We hope to resolve that issue shortly but this is a big case and it's a big undertaking and we're a small firm and we need to make sure that our relationship in terms of retention has been formalized . . . [I]f we are unable to formalize our relationship it may be that other counsel needs to be brought in here . . . I believe within the next two weeks that should be resolved one way or the other . . . [I]f it appears that we're not going to be able to come to terms with Mr. Hadden about entering the case, I will certainly let the Court know that immediately . . ." Court: "[Y]ou have every right to add counsel down the road. But essentially you will be Mr. Hadden's counsel through this matter." Ms. Kirshner: "That's the current plan." See Sept. 17, 2020 Tr. at 33:1-35:15.

If Hadden were in financial need, he could have asked Magistrate Judge Lehrburger for court appointed counsel before the bail hearing on September 9, 2020. According to the CJA Plan: "A person financially eligible for representation should be provided with counsel as soon as feasible after being taken into custody, when first appearing before the court or U.S. magistrate judge, when formally charged, or when otherwise entitled to counsel under the CJA, whichever occurs earliest." *See Hilsen*, 2004 WL 2284388, at *1 n.3 (quoting CJA Plan, § VI(C) at 5). It has been observed that "the appearance of privately retained counsel raises a 'serious question' as to whether a defendant is indigent" for purposes of court-appointed counsel. *See Brown v. Unites States*, 716 F. App'x 488, 491 (6th Cir. Nov. 28, 2017).

**Recent Disclaimer of Inheritance & Recent Transfers of Funds**

It is appropriate for the Court, in determining Hadden's eligibility for appointment of CJA or Federal Defenders counsel, to consider all of Hadden's resources as well as the resources of family members. "Financial inability includes an inquiry into whether there is available to defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds." *United States v. Martinez-Torres*, 556 F.Supp. 1275, 1279 (S.D.N.Y. 1983) (Motley, C.J.); *United States v. Knott*, 142 F.Supp.2d 468, 469 n.1 (S.D.N.Y. 2001) (Martin, D.J.).

Hadden's Financial Statements show that he has arranged several recent transfers of inheritance assets and of funds collectively in excess of $1.25 million -- all to his immediate family members. These transfers undermine significantly Hadden's application for CJA-appointed or Federal Defenders counsel. *See e.g. United States v. Grant*, 2011 WL 13208966, at *2 (S.D. Tex. Mar. 2, 2011) ("the court may inquire whether funds are available to the defendant from other sources, such as family and friends, and whether the defendant may have transferred some funds to family and friends in order to appear financially unable to retain counsel"); *United States v. Hung Thien Ly*, 2007 WL 9657599, at *2 (S.D. Ga. Oct. 22, 2007) ("A defendant [] may not hide assets in his wife's name in order to . . . obtain court-appointed counsel."); *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976) (where the court stated: "[A] defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal.").

**Disclaimer of Inheritance**

On May 4, 2020, Hadden "disclaimed" a very substantial inheritance from his father who had passed away nine months earlier on August 2, 2019. See Net Worth Statement Ex. 3. Hadden states: "I have disclaimed my inheritance to my children as of May 4, 2020." Id. Hadden's father's estate had an "estimated gross value of $2 million based primarily in real estate." Hadden was a 50% beneficiary (Hadden's sibling appears to be the other 50% beneficiary). Id. As a result of Hadden's disclaimer, Hadden's share of the estate has or will pass to Hadden's son and Hadden's daughter on a 50/50% basis, i.e. at least $500,000 per child. Id. Hadden's son (who is disabled) lives with Hadden. Hadden is his son's legal guardian. See Sept. 9, 2020 Tr. at 22:5. Hadden's daughter is married and lives in Philadelphia, Pennsylvania. See Net Worth Statement Ex. 4.

In *United States v. Grant*, 2011 WL 13208966, at *2-3 (S.D. Tex. Mar. 2, 2011), the court denied court-appointed counsel for defendant, a medical doctor, in part because the defendant had made a transfer of real estate to his children. The court stated: "[I]n light of the very recent transfer of $1.2 million in valuable real estate to his children, [defendant] should still be deemed financially able to retain counsel and his request for court-appointed counsel should be denied."

8

**Cash Transfers**

Hadden's wife has a United Services Automobile Association Bank ("USAA Bank") checking account balance of $132,772.18 as of December 3, 2020. See Net Worth Statement at 2. This account appears to have received a series of recent cash transfers totaling $148,970 from Hadden's Bank of America account, including a transfer of $140,000 on October 29, 2020; a transfer of $4,000 on November 3, 2020; and a transfer of $4,533 on November 13, 2020. See Net Worth Statement Ex. 5. As discussed at page 11 *infra*, Hadden appears to have access to the USAA Bank account.

And, Hadden's daughter received a $100,000 cash transfer from Hadden on October 26, 2019, which was described by Hadden as a transfer for the purpose of purchasing a home. See Net Worth Statement Ex. 4.

In *United States v. Hung Thien Ly*, 2007 WL 9657599, at *2 (S.D. Ga. Oct. 22, 2007), the court found that the defendant, also a medical doctor, was ineligible for appointed counsel where he "transferred his assets to his wife . . . [to] obtain appointed counsel at public expense." The court stated: "Based on defendant's income and the assets accessible to him, he has failed to meet his burden of demonstrating that he is financially unable to obtain legal representation." And, in *United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976), the Court of Appeals affirmed the district court's denial of court-appointed counsel to a defendant who "put[] his own assets into his relatives names" and continued to "own[] or control[]" those assets. The Court stated: "To the extent that the assets were not in his own name, he had put them in the names of other members of his family . . ." *See also United States v. Rosch*, 1994 WL 364090, at *1 (N.D. Ill. July 14, 1994) where the court denied appointment of counsel "after finding that [defendant's] wife . . . was in fact the recipient of the transfer of hundreds of thousands of dollars of his assets."

**Monthly Income**

Hadden receives monthly income of $6,440 (or $77,280 per year) in disability benefits from Northwestern Mutual Insurance. See Ex. A; Monthly Cash Flow Statement.[4]

Hadden states: "I am 63 years old and have not been practicing for 8 years nor working in any capacity." See Net Worth Statement at 6. The documentation provided does not describe or explain Hadden's disability insurance. See Monthly Cash Flow Statement Exs. 8-12.[5]

In *United States v. Parker*, 439 F.3d 81, 88 (2d Cir. 2006), the Court of Appeals affirmed the district court's determination that the defendant was financially ineligible for the appointment of CJA counsel in part because he "received a check every two weeks" in the amount of "$1,947.50" (or $3,895 per month). And, in *United States v. Harris*, 707 F.2d 653, 655 (2d Cir. 1983), the Court of Appeals affirmed the magistrate judge's ruling that the defendant "had not met his burden of proof to establish his need for appointed counsel" where his income was $70,000 in 1980 and approximately $30,000 in 1981. *See also United States v. Hoyvald*, 1988 WL 2448, at *2 (E.D.N.Y. Jan. 11, 1988) (where the court denied the defendant's motion to relieve his retained counsel and his request for appointment of CJA counsel in part because his joint annual income with his wife was approximately $49,000); *United States v. Gutierrez*, 347 F.Supp.3d 720, 738 (D.N.M. 2018) (where the court found the defendant to be "CJA ineligible" in light of his income of $6,400 per month, stating: "$6,400.00 per month after taxes, or $76,800 per year -- is a dependable income stream with which [the defendant] is likely able to fashion some payment arrangement with an attorney").

---

[4] Hadden's wife receives $654.00 per month in Social Security benefits. See Monthly Cash Flow Statement Ex. 9.

Hadden's son receives $566.31 per month in the form of Social Security disability payments. See Monthly Cash Flow Statement Ex. 9. These payments appear to be deposited into a "custodial" bank account. Id.

[5] As noted, Hadden was arrested in 2012 by the New York City Police Department and charged in connection with the abuse of a patient. Hadden surrendered his medical license as part of his February 23, 2016 plea agreement in New York State Court.

**Net Worth Statement**

   a. Hadden's Net Worth Statement includes Hadden's wife's USAA Bank checking account (see discussion at page 9). See Net Worth Statement at 2;

   b. Hadden includes his house, jointly owned with his wife, in his net worth. Id. at 3. The house appears to have a fair market value of $500,000 and an outstanding mortgage of $148,208. Id.;

   c. Hadden lists an individual whole life insurance policy which has a "face amount" of $776,898, a "cash surrender value" of $166,194, and a "net accumulated value" of $40,373.71. Id.; Ex. 2; and

   d. Hadden has two cars: a 2007 Toyota with a fair market value of $2,500; and a 2017 Volkswagen with a fair market value of $11,000. Id.

Upon facts comparable to those present here, other courts have denied appointment of counsel. For example, in *United States v. Hoyvald*, 1988 WL 2448, at *2 (E.D.N.Y. Jan. 11, 1988), the court denied the defendant's motion to relieve his retained counsel and his request for appointment of CJA counsel after reviewing the defendant's income and assets. These assets included defendant's joint income with his wife of approximately $4,100 per month; a family residence "worth $120,000, with an outstanding mortgage debt of $74,000;" an automobile worth $3,500; and an Individual Retirement Account containing $7,000. The court concluded: "Given his financial resources . . . and the circumstances of this case, defendant's motion for relief of his retained counsel and appointment of CJA counsel must be and hereby is denied." *See Hoyvald*, 1988 WL 2448, at *2.

In sum, in light of Hadden's financial resources, his significant (million-dollar) inheritance disclaimer, his recent money transfers to family members (wife and daughter) totaling approximately $250,000, plus his monthly disability income of $6,440, the Court concludes that Hadden is "likely able to fashion some payment arrangement" with qualified retained counsel. And, based upon a review of all of the evidence presented, the Court is constrained to find that the defendant's portrayal of

11

financial inability "lacks credibility." *See Knott*, 142 F.Supp.2d at 469 n.1. Hadden has failed to meet his burden of proof on the issue of financial inability to obtain counsel. *See Harris*, 707 F.2d at 660.[6]

## IV. Conclusion & Order

Based upon the foregoing, the Court concludes that Hadden has failed to make a "submission of a sufficient financial affidavit or other satisfactory proof of indigency." *See United States v. Al Liby*, 2013 WL 5656087, at *2 (S.D.N.Y. Oct. 11, 2013). Defendant's requests (i) to relieve his current defense counsel of record (Kirshner and Gosnell) and (ii) for the appointment of CJA or Federal Defenders counsel are denied.

Hadden's request to seal the Financial Statements is denied in part and granted in part. That is, defense counsel "has failed to satisfy its burden of overcoming the strong presumption in favor of public access." *See United States v. Snyder*, 187 F.Supp.2d 52, 65 (N.D.N.Y. 2002); see also discussion at pp.3-4 *supra*. Defense counsel may re-submit to the Court for filing, on or before December 29, 2020 (noon), the Financial Statements with appropriate redactions of personal identifiers

---

[6] In addition, the Exhibits attached to Hadden's financial presentation appear incomplete. *See United States v. Zelenka*, 112 F.Supp.2d 708, 712 (M.D. Tenn. 1999) ("courts have refused to appoint counsel where a defendant fails to provide sufficient information regarding his finances"). Here are some examples:

a. The tax returns for 2018 and 2019 appear illegible. See Monthly Cash Flow Statement Exs. 10 & 11.

b. As noted, the documentation provided does not describe/explain Hadden's disability insurance. See Monthly Cash Flow Statement Exs. 8-12.

c. Hadden appears to have a Bank of America account ending in "3603." But this account is not found in the Net Worth Statement. See Net Worth Statement, Exs. 5 & 9.

d. It is unclear who the custodian is for the account ending in "1285." Id. Ex. 9.

e. Hadden lists a monthly health insurance expenditure of $2,732. See Monthly Cash Flow Statement. The documentation does not specify the coverage or the beneficiary.

f. The 2017 U.S. tax return lists income of $10,000 from the estate of Margaret M. See Monthly Cash Flow Statement Ex. 12. This amount does not appear to be listed as an asset or as income in the Net Worth Statement or the Monthly Cash Flow Statement.

such as social security numbers; names of minor children; dates of birth; financial account numbers; and home addresses. See <u>S.D.N.Y. ECF Privacy Policy and the E-Government Act of 2002</u>.

Dated: New York, New York
       December 23, 2020

_____
**RICHARD M. BERMAN, U.S.D.J.**

# EXHIBIT A

| SDNY CJA 23 (Rev. 1/12) | **FINANCIAL AFFIDAVIT** IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE |
|---|---|

| IN THE UNITED STATES | ☐ DISTRICT COURT | ☐ COURT OF APPEALS | ☐ OTHER (Specify below) | LOCATION NUMBER |
|---|---|---|---|---|
| IN THE CASE OF | | FOR | | |
| v. | | AT | | |

| PERSON REPRESENTED (Show your full name) | 1 ☐ Defendant - Adult<br>2 ☐ Defendant - Juvenile<br>3 ☐ Appellant<br>4 ☐ Probation Violator<br>5 ☐ Supervised Release Violator<br>5 ☐ Habeas Petitioner<br>7 ☐ 2255 Petitioner<br>8 ☐ Material Witness<br>9 ☐ Other (Specify) | DOCKET NUMBERS<br>Magistrate Judge<br><br>District Court<br><br>Court of Appeals |
|---|---|---|
| CHARGE/OFFENSE (describe if applicable & check box →) ☐ Felony ☐ Misdemeanor | | |

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**EMPLOYMENT**

Are you now employed? ☐ Yes ☒ No ☐ Self-Employed

Name and address of employer:

IF YES, how much do you earn per month? $

IF NO, give month and year of last employment? **8/2012**
How much did you earn per month? $

If married, is your spouse employed? ☐ Yes ☒ No

IF YES, how much does your spouse earn per month? $

If you are a minor under age 21, what is the approximate monthly income of your parent(s) or guardian(s)? $

**INCOME & ASSETS**

**OTHER INCOME**

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? ☒ Yes ☐ No

RECEIVED — IF YES, give the amount received and identify the sources: **$6,640/MONTH**
SOURCES: **PVT. DISABILITY INSURANCE**

**CASH**

Do you have any cash on hand or money in savings or checking accounts? ☒ Yes ☐ No IF YES, total amount? $ **145,000.00**

**PROPERTY**

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☒ Yes ☐ No

VALUE: **$500,000**
DESCRIPTION: **HOME CO-OWNER WITH SPOUSE**

**DEPENDENTS**

MARITAL STATUS: (Married) — Total No. of Dependents: **2**

List persons you actually support and your relationship to them:
**SPOUSE - CAROL L. HADDEN**
**SON - ALEXANDER W.B. HADDEN**
**(DISABLED/LEGAL GUARDIANS)**

**OBLIGATIONS & DEBTS**

**DEBTS & MONTHLY BILLS** (Rent, utilities, loans, charge accounts, etc.)

| DESCRIPTION | TOTAL DEBT | MONTHLY PAYMENT |
|---|---|---|
| MORTGAGE | $148,402.12 | $2,383.88 |
| HEALTH INSURANCE PREMIUM | | $2,732.00 |
| UTILITIES | | ~$375.00 |
| PHONE | | ~$200.00 |
| CABLE | | |
| PEST CONTROL | | ~250.00 |
| HOME SECURITY | | 36.91 |
| LAWN MAINTENANCE | | 53.63 |
| FOOD/GROCERIES | | 160.00 |
| HEALTHCARE OUT-OF-POCKET/PHARMACY | | ~700.00 |
| CAR PAYMENT + INSURANCE | | ~650.00 |
| | | $10,427.50 |

I certify under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED): *R. Hadden*
Date: **10/15/20**

☐ APPROVED   ☐ DENIED

FD/CJA/RET. ATTORNEY (PRINT) _____

ASSISTANT UNITED STATES ATTORNEY (PRINT) _____

SIGNATURE OF JUDICIAL OFFICER _____   DATE _____