UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                 :

UNITED STATES OF AMERICA       :

                                 :    Case No.: 20 Cr. 468 (RMB)

          v.            :

                                 :

ROBERT HADDEN               :

                                 :

                   Defendant.  :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT HADDEN'S MOTION FOR AN ORDER CLARIFYING THAT CLAYMAN & ROSENBERG LLP'S REPRESETNATION OF MR. HADDEN IN THIS MATTER HAS BEEN TERMINATED AND AN ORDER GRANTING MR. HADDEN'S APPLICATION FOR COURT-APPOINTED COUNSEL**

Of Counsel,
Wayne E. Gosnell, Jr.
Isabelle A. Kirshner

CLAYMAN & ROSENBERG LLP
*Counsel for Robert Hadden*

305 Madison Avenue – Suite 650
New York, New York 10165
(212) 922-1080

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

I.    PROCEDURAL POSTURE ...........................................................................2

II.   FACTUAL BACKGROUND..........................................................................4

     A.    Mr. Hadden's Initial Presentment and Arraignment
         on September 9, 2020 ........................................................................4

     B.    Mr. Hadden's First Appearance before this
         Court on September 17, 2020 ...........................................................4

     C.    The September 25, 2020 Conference and Related Submissions...................8

     D.    The October 21, 2020 Conference and Related Submissions......................9

     E.    The November 12, 2020 Conference and Related Submissions...................11

     F.    The December 23, 2020 Conference and Decision & Order ........................13

III.  THIS COURT SHOULD FIND THAT THE LIMITED SCOPE
       REPRESENTATION OF MR. HADDEN BY MS. KIRSHNER AND
       MR. GOSNELL HAS BEEN SATISFIED ............................................................14

     A.    The Court's Insistence that Ms. Kirshner and
         Mr. Gosnell Represent Mr. Hadden Beyond
         the Limited Scope to Which Mr. Hadden and
         the Court Agreed Violates Mr. Hadden's Sixth
         Amendment Right to His Counsel of Choice .................................................15

     B.    A Motion to Withdraw As Counsel is Not Required....................................16

IV.  MR. HADDEN'S APPLICATION FOR COURT-APPOINTED
       COUNSEL SHOULD BE GRANTED..................................................................17

     A.    The Standard for Court-Appointed Counsel
         Pursuant to 18 U.S.C. § 3006A.....................................................................18

     B.    Mr. Hadden is Financially Eligible for Counsel under the CJA Plan............19

          1.    *Mr. Hadden's Limited-Scope Representation By*
              *Clayman & Rosenberg LLP Does Not Support a*
               *Finding of Financial Ineligibility for CJA Plan Counsel* .................20

          2.    *The Court Inappropriately Considered*
               *Unavailable Resources In Its Inquiry* ...............................................21

3. *Mr. Hadden's Cash Transfer to His Wife* ............................................23

4. *Mr. Hadden's Monthly Income and Expenses* ...................................23

5. *Additional Facts Unaddressed in the*
   *December 23 Decision & Order* ..........................................................25

6. *The Court Failed to Account for the Cost of a*
   *Potential Defense* ...............................................................................27

7. *The Court's Conclusion That Mr. Hadden's*
   *"Portrayal of His Financial Inability 'Lack Credibility'"*
   *is Erroneous and Should be Stricken* ..................................................28

8. *The Court Failed to Evaluate Whether Mr. Hadden is*
   *Partially Eligible for CJA Plan Counsel* ............................................29

**CONCLUSION** ...........................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Caplin & Drysdale, Chartered v. United States*,
    491 U.S. 617 (1989)................................................................................................15

*Felder v. Goord*,
    564 F.Supp.2d 201 (S.D.N.Y.2008) ...................................................................18

*Gideon v. Wainwright*,
    372 U.S. 335 (1963)............................................................................................17

*In re Weiner*,
    2019 WL 2575012 (Bankr. S.D.N.Y. June 21, 2019)..........................................17

*Montejo v. Louisiana*,
    556 U.S. 778 (2009)............................................................................................17

*United States v. Barcelon*,
    833 F.2d 894 (10th Cir. 1987) .............................................................................19

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006)....................................................................................1, 15, 17

*United States v. Grant*,
    2011 WL 13208966 (S.D. Tex. Mar. 2, 2011)....................................................22

*United States v. Harris*,
    707 F.2d 653 (2d Cir. 1983)....................................................................19, 25, 27

*United States v. Hung Thien Ly*,
    2007 WL 9657599 (S.D. Ga. Oct. 22, 2007) ......................................................22

*United States v. Martinez-Torres*,
    556 F. Supp. 1275 (S.D.N.Y. 1983) ...................................................................21

*United States v. O'Neil*,
    118 F.3d 65 (2d. Cir. 1997)..................................................................................25

*United States v. Parker*
    439 F.3d 81, 93 (2d Cir. 2006)..................................................................18, 19, 24

*United States v. Ripley*,
    2003 WL 21982964 (S.D.N.Y. Aug. 20, 2003)................................................3, 14

*United States v. Rubinson*,
 543 F.2d 951 (2d Cir. 1976)...........................................................................19, 22

*United States v. Stein*,
 541 F.3d 130 (2d Cir. 2008)................................................................................15

*Wheat v. United States*,
 486 U.S. 153 (1988).............................................................................................15

**Statutes**

U.S. Const. Amend. VI. ......................................................................................1, 15

18 U.S.C. § 3006A ............................................................................................18, 20

N.J.S.A. § 3B:12-43 ................................................................................................26

**Additional Authority**

New York Rules of Professional Conduct, Rule 1.2 ......................................16

Southern District of New York Local Criminal Rule 1.16 ...............................17

Southern District of New York Local Criminal Rule 1.2 .......................3, 16, 17

Southern District of New York's Revised
Plan for Furnishing Representation
Pursuant to the Criminal Justice Act..............................................18, 19, 20, 24

Stephen Brown, *Judge Denies Columbia U Gynecologist*
*Robert Hadden Defender in Sex Abuse Case,*
*Citing Shady Finances*, N.Y. Daily News, Dec. 23, 2020................................28

Robert Hadden is constitutionally-entitled to either counsel of his choice or court-appointed counsel. *See* U.S. Const. amend. VI. In this case thus far, Mr. Hadden has had neither. Instead, in its decision of December 23, 2020, this Court denied Mr. Hadden court-appointed counsel and designated Clayman & Rosenberg LLP as Mr. Hadden's counsel of record despite counsels' repeated statements advising the Court of counsels' limited representation and despite the fact that this Court had previously approved of counsels' limited representation. Indeed, Mr. Hadden has never retained Clayman & Rosenberg LLP as his counsel in this matter and has no intention of doing so. The end result is that the Court, and not Mr. Hadden, has chosen Mr. Hadden's private counsel even though the constitution reserves that decision to Mr. Hadden alone.

The Court's chosen path imposes a constitutional crisis upon Mr. Hadden. He is not currently represented by his counsel of his choice, nor is he represented by court-appointed counsel. The Court's decision requires limited purpose counsel to submit a motion on Mr. Hadden's behalf (in violation of his constitutional right to counsel of his choice) explaining the factual and legal errors in the Court's December 23 Decision & Order. We urge the Court to reconsider its decision to deny Mr. Hadden court-appointed counsel. Regardless, we also urge the Court to recognize, as it has previously, that Ms. Kirshner and Mr. Gosnell have appeared in this matter on behalf of Mr. Hadden for the limited purpose of bail and, subsequently, to facilitate a response to this Court's inquiries regarding his application for the appointment of counsel. Thus, they have fulfilled their limited scope appearance in this matter. The Court is on the brink, if not beyond, the point where its actions inflict a structural error into these proceedings. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-148 (2006).

## I.      Procedural Posture

On September 9, 2020, Mr. Hadden was arraigned before Magistrate Judge Robert W. Lehrburger and released on bond.  Ms. Kirshner and Mr. Gosnell informed the magistrate judge that they represented Mr. Hadden at his arraignment under a limited appearance (limited to his arraignment and bail-related issues) and that they would seek to be retained for all purposes going forward.  The magistrate court expressly agreed to that limited representation.

On September 17, 2020, Mr. Hadden appeared for the first time before this Court.  Ms. Kirshner and Mr. Gosnell appeared on Mr. Hadden's behalf—again for a limited purpose (limited to bail-related issues) with the understanding that they were seeking to be retained for all purposes.  This Court expressly agreed to that limited representation and posed a number of bail-related issues.

By email dated October 19, 2020, we informed this Court that Mr. Hadden was unable to retain Ms. Kirshner and Mr. Hadden in connection with this matter.  At the Court's request, we provided it with Mr. Hadden's standard CJA Form 23 in support of his application for court-appointed counsel.  On October 21, 2020, the Court denied Mr. Hadden's application for court-appointed counsel without prejudice and directed that he provide a financial affidavit that was significantly more detailed than the standard CJA Form 23.  On December 4, 2020, we provided the Court with Mr. Hadden's financial affidavit—a detailed 104-page document prepared by an accountant.

By Decision & Order dated December 23, 2020, the Court denied Mr. Hadden's renewed application for court-appointed counsel *and* denied Mr. Hadden's "request[] to relieve his current defense counsel of record[.]"  (Ex. A:  Decision & Order, dated December 23, 2020 at 12, ECF No. 35.)

On December 24, 2020, limited counsel filed a letter motion addressing that portion of this Court's December 23 Decision & Order that purported to deny our "request" to relieve Clayman & Rosenberg LLP as Mr. Hadden's counsel.  (*See* Exhibit B:  Letter Motion from Clayman & Rosenberg LLP to Judge Richard M. Berman, dated December 24, 2020, ECF No. 36.)

On December 26, 2020, this Court issued an Order rejecting our December 24 Letter Motion.  (*See* Exhibit C:  Order Rejecting Letter Motion, dated December 26, 2020, ECF No. 37.)  The Order starts by asserting that any motion seeking to obtain specific action or relief from the Court must be by written motion that accords with Federal Rule of Criminal Procedure 47 and may not be made by letter motion.[1]  It then goes on to state that if "counsel's intention in sending their December 24 letter to the Court was to share their stream of consciousness musings and opinions following the Court's Decision & Order, even if their letter had been factually and/or legally correct, their letter was improper (and quite rude).[2]  This motion follows.

---

[1] Our letter motion was filed in the same manner as three letter motions previously decided by the Court.  (*See* ECF Nos. 7 and 8 (Letter Motion and Order Granting Letter Motion for Extension of Bond Period and Limited Sealing); ECF Nos. 12 and 13 (Letter Motion and Gov't Response Regarding Public Filing of State Court Documents; Resolved by the Court during the October 21 and November 12, 2020 Conferences); and ECF Nos. 23 and 24 (Letter Motion and Order Granting Letter Motion for Modification of Bail).)  Letter motions are also routinely accepted by this Court in its other criminal cases.

A motion to withdraw or be relieved as counsel is only required once an attorney has filed a notice of appearance.  *See* SDNY Local Criminal Rule 1.2; *see also United States v. Ripley*, 2003 WL 21982964, at *3-4 (S.D.N.Y. Aug. 20, 2003) (attorney solely representing defendant at initial presentment who did not file a notice of appearance was not required to move to withdraw or seek substitution of counsel).

[2] The intent of our December 24, 2020 letter was to inform the Court that its chosen course of action violates Mr. Hadden's fundamental constitutional rights and was premised on the Court's misapprehension of facts and law.

II.     **Factual Background**

The issue of the nature of Ms. Kirshner's and Mr. Gosnell's limited appearances in this matter is well documented.

A.     Mr. Hadden's Initial Presentment and Arraignment on September 9, 2020

At Mr. Hadden's arraignment on September 9, 2020 before Magistrate Judge Robert W. Lehrburger, Ms. Kirshner made clear the limited nature of our representation.

At the outset of the telephonic proceeding, Ms. Kirshner stated "I have [had an opportunity to consult with Mr. Hadden], Your Honor, and just for the record, Mr. Gosnell and I have represented Mr. Hadden in the past and we are prepared to represent him here this evening, but it is for the limited purpose of this proceeding.  We have not had an opportunity to consult with him about being formally retained going forward."  (Sept. 9, 2020 Tr. at 4:10-16.)  The Court agreed to that limited appearance.  (Sept. 9, 2020 Tr. at 4:17-21.)  At the conclusion of the arraignment, Mr. Hadden was released on his own signature but there were many outstanding tasks to complete quickly to satisfy the remaining bail conditions—including, *inter alia*, finding and vetting bond suretors and placing a lien on his family home to secure the bond.

B.     Mr. Hadden's First Appearance before this Court on September 17, 2020

Our limited appearance was also explicitly made known and accepted by this Court.  On September 17, 2020, this Court held its first conference in the matter via telephone.  To start, this Court knew that Ms. Kirshner and Mr. Gosnell had only appeared on Mr. Hadden's behalf for the limited purpose of his arraignment and that the magistrate judge had accepted the limited nature of that appearance.  (*See* Sept. 17, 2020 Tr. at 2:23-24 (court noting that it "read the transcript from the bail proceeding and arraignment before the magistrate judge").  But Ms. Kirshner also reiterated this point for the Court.

4

In its December 23 Decision & Order, this Court only partially cites the September 17, 2020 transcript for this colloquy.  The full colloquy is set forth below with the Court-omitted portions in italics.

> [AFTER A DISCUSSION REGARDING SCHEDULING]
>
> THE COURT:  *OK.  Sounds – what is the defense's take on that?*
>
> MS. KIRSHNER:  *My take is I'm about to tell you something that's going to make you very unhappy.*
>
> THE COURT:  *Happy?*
>
> MS. KIRSHNER:  *Unhappy.*
>
> THE COURT:  *I'm a happy person, you know.*
>
> MS. KIRSHNER:  *I know and I hate to make you unhappy because you're a nice man and I like to make you happy.*
>
> *The one big if (referring to scheduling), and we have already discussed this with the government via email, is that* we have not been formally retained by Mr. Hadden.
>
> THE COURT:  *I saw that.*
>
> MS. KIRSHNER:  *We have jumped into the breach when he was arrested.  He notified the arresting officers that we were his counsel and we took it upon ourselves to make sure that we dealt with the bail issues and we made clear on the – at the time of the arraignment that we were appearing for those purposes.*
>
> We hope to resolve that issue shortly but this is a big case and it's a big undertaking and we're a small firm and we need to make sure that our relationship in terms of retention has been formalized*.  And so while we're prepared to deal with bail issues for him because we understand there is some timeliness; if he is unable –* if we are unable to formalize our relationship it may be that other counsel needs to be brought in here.
>
> *So we are working on all these issues simultaneously with each other.  We will certainly continue to work with the government on the issue of bail today and try to deal with that.  But, I have told the government that I am reluctant to get into any sort of substantive*

5

*discussions with them until we have been formally retained by Mr. Hadden.*

THE COURT:  *So that's appropriate.  And when do you think that issue is going to be resolved one way or the other?*

MS. KIRSHNER:  *Based on our discussions this morning,* I believe within the next two weeks that should be resolved one way or the other.

THE COURT:   *OK.   And I take it you were suggesting I'd be unhappy if you didn't stay in the case; is that right?*

MS. KIRSHNER:  *No, I wasn't -- I don't know whether you're going to be happy whether I'm in the case or not but the government has a plan that seems to be efficient and streamlined and probably one that we would be willing to go along with but I'm going to just make a little, you know, hole in the road here and cause a little bit of a delay.  That's all.*

THE COURT:  *I got you.  I think – because I did see in the proceeding before the magistrate judge that that – I think that's what I saw, that that issue was an open issue.*

*I encourage you to, and your client, to resolve it as quickly as possible because otherwise it's just going to slow things down.*

*So would you let me know as soon as that determination is made as to whether you're going to remain in the case or not and are you suggesting, Isabelle, that if you are in – sometimes there are, you know, more than one set of people in a case like this in any event.  So is that a possibility as well or would it be that –*

MS. KIRSHNER:  *I'm sorry.  More than one set, you mean another set of lawyers?*

THE COURT:  *Yes.*

MS. KIRSHNER:  *No.  I mean, it's just a question of getting us into the case.  And you'll know that when we file a notice of appearance.  And if it appears that we're not going to be able to come to terms with Mr. Hadden about entering the case, I will certainly let the Court know that immediately.*

*THE COURT:  So your point is that if you are retained it will just be the current lawyers.*

*MS. KIRSHNER:  Yes.*

*THE COURT:  Although, you know, you have every right to add counsel if you wish down the road.  But essentially* you will be Mr. Hadden's counsel through this matter.

MS. KIRSHNER:  That's the current plan.

THE COURT:  *And did you have any reaction to the government's timeframe; that is to say, this 30 days, 90 days from the date of the protective order?*

MS. KIRSHNER:  *Again, Judge, I think it would be inappropriate for us to opine on that without being his lawyers.*

THE COURT:  *I got it.  I got it.  OK.*

MS. LONERGAN.  *Your Honor, this is Jessica Lonergan.  I would propose, once the counsel issue is worked out, the government can confer with whoever is going to be defense and hopefully we can just submit a joint proposed letter setting out a joint proposal for a discovery schedule for the Court's consideration and that way we could – hopefully that would be efficient and we don't have to appear in front of the Court again.  And, of course, if we can't agree on a schedule, then that's a different thing.  But I hope everyone – it seems like everyone – we'll all proceed reasonably and hopefully we can agree on a schedule that we will then propose to the Court.*

THE COURT.  *I get it.*

MS. KIRSHNER:  *That sounds perfectly reasonable, Judge.*

THE COURT:  *So what – the last thing is what is an appropriate date for us to get together again on the issues that I've asked that there be some action taken, those can be resolved by correspondence to the Court.  For example, that counseling is in place weekly or whatever – whatever else we've discussed.  When do you think – or what is a good time for us to schedule the next conference?*

MS. KIRSHNER:  *Well, Judge if what we're just going to do is inform you of whether we're in or we're out can do that in the next – you know, in two weeks or so.*

*If you want to proceed and someone else – look, I guess the one thing I'm considering is that if for some reason we're unable to be*

> *retained and Mr. Hadden requires appointed counsel, I guess he needs to come back before the Court for that, so.*
>
> THE COURT:  *Yes.  So why don't I set a tentative conference and we can vacate it or not as needed but for about – between two and three weeks?  How about that?  And we'll either know that you're in, in which case you might – both sides might ask to vacate the conference and substitute another date or if you're out we'll have the conference and endeavor to resolve counsel issues.*
>
> MS. KIRSHNER:  *Right.*
>
> THE COURT:  *Fair?*
>
> MS. KIRSHNER:  *Yes.  I think that makes sense.*

(Sept. 17, 2020 Tr. at 32:17 - 35:15 (omissions in the December 23 Decision & Order italicized).

There can be no doubt that this Court was aware of and agreed to the limited nature of Ms. Kirshner's and Mr. Gosnell's appearance before the court and the magistrate judge.  We appeared only for the purpose of Mr. Hadden's arraignment and to assist him in issues related to his bail.  Many such issues arose, which is discussed later.  Additionally, this Court's comment that "essentially you will be Mr. Hadden's counsel through this matter" refers to the discussion about whether there would be additional lawyers working with Ms. Kirshner and Mr. Gosnell *if they were retained*.  But the colloquy makes quite clear that we weren't retained at that point.  We have not been retained to date and will not be.

   C.     The September 25, 2020 Conference and Related Submissions

Prior to the September 25, 2020 Conference, we submitted a letter at Mr. Hadden's request seeking an extension of the time for Mr. Hadden to fully satisfy the conditions of his bond and an order permitting non-family suretors to sign the bond under seal.  (*See* Letter Motion to Judge Richard M. Berman, dated September 18, 2020, ECF No. 7 and Order Granting Letter Motion, dated September 18, 2020, ECF No. 8.)  Consistent with our limited "appearance"

8

in this matter, we referred to ourselves in the letter as Mr. Hadden's "temporary counsel."  This Court did not raise any issue as to the nature of that limited "appearance."

At the September 25, 2020 Conference, this Court again addressed the status of Mr. Hadden's bail conditions and discussed its review of documents related to Mr. Hadden's prior state prosecution.  The Court indicated that it intended to file those documents on the ECF docket in this matter because its review of the materials related to this Court's determination of appropriate bail conditions.  The Court gave Mr. Hadden and the government an opportunity to be heard in writing as to these bail-related matters and posed additional questions about the state court proceeding and other matters.  Thus, we understood that our limited representation continued to be necessary to address the bail-related issues raised by the Court.

    D.    The October 21, 2020 Conference and Related Submissions

The next conference in this matter was held on October 21, 2020.  Prior to the conference, we submitted a letter on Mr. Hadden's behalf addressing the bail-related inquiries made by this Court during the prior conferences.  (*See* Letter Motion to Judge Richard M. Berman, dated September 29, 2020, ECF No. 12.)  Consistent with our limited "appearance" in this matter, we referred to ourselves in the letter as Mr. Hadden's "temporary counsel."

Prior to the October 21 conference, we informed the government and this Court that Mr. Hadden was not able to retain us and would request the appointment of CJA counsel at the next conference.  (*See* Exhibit D:  Email from Wayne Gosnell to Chelsea Tabolt, dated October 19, 2020.)  At the Court's request, we also submitted a standard CJA Form 23 on Mr. Hadden's behalf on October 20.  (*See* Exhibit E:  Email from Wayne Gosnell to Chelsea Tabolt, dated October 20, 2020 and CJA Form Attached.)

Despite providing CJA Form 23, this Court determined that the form, which is the form that is "often used or normally used" was not adequate for its purposes.  (Oct. 21, 2020 Tr. at 3:17-18.)  Instead of ruling on Mr. Hadden's application for the appointment of CJA Plan counsel, this Court directed him to provide a financial affidavit covering a period of several years.  In essence, the Court indicated that it wanted a "statement of assets and liabilities and income and expenses detailed over the last three years, covering his positions for the last three years."  (*Id.* at 5:20-23.)  The Court also stated that after receiving the affidavit it would again consider Mr. Hadden's application for the appointment of counsel but "[f]or the moment, [it] prefer[s] that current counsel remain in the picture."  (*Id.* at 6:1-2.)  We acceded to the Court's request "to remain in the picture" and informed the Court that it would take some time to submit such an affidavit and gather the required documents.

The Court thereafter issued an oral ruling on the issues raised in our September 29 letter.  In so doing, the Court noted that there have not been any "substantial proceedings here yet" and that the "issue of bail is of serious concern" because the Court is the assessor of whether the bail conditions are working and appropriate and it was "in that context that [it] asked for and for the most part received" the documents that were the subject of the September 29 letter.  (*Id.* at 10:21-11: 4.)

The government later noted that once the counsel situation was resolved, it could "move forward with conversations about the protective order and then with producing discovery."  (*Id.* 27:16-18.)  The Court agreed ("That's great") and noted that it would have "sent up a red flag" about the CJA Form if he had received it further in advance of the conference.  (*Id.* at 27:20-23.)

E.   <u>The November 12, 2020 Conference and Related Submissions</u>

The next conference in this matter was held on November 12, 2020.  Prior to the

conference, we submitted letters on Mr. Hadden's behalf addressing the only matters we had

been authorized by Mr. Hadden to address on his behalf: a bail-related issue and the status of his

financial affidavit.  (*See* Letter Motion to Judge Richard M. Berman, dated November 1, 2020,

ECF No. 23 (modification of bail conditions); Letter Motion to Richard M. Berman, dated

November 11, 2020, ECF No. 23 (financial affidavit).)  Again, consistent with our limited

"appearance" in this matter, we referred to ourselves in the letters as Mr. Hadden's "temporary

counsel."

At the outset of the November 12, 2020 conference, this Court announced without

warning or discussion, contrary to all prior proceedings, and not based on any new

circumstances, that it now considered temporary counsel to be counsel of record.

> THE COURT:  I have a couple of issues to discuss today.  Our last
> conference was October 21.  With respect to the first item to talk
> about, you may recall at that conference there was discussion about
> Mr. Hadden's request for court-appointed counsel.  We have Ms.
> Kirshner and Mr. Gosnell as defense counsel.  They have in the past
> referred to themselves as temporary counsel, but you should be
> aware that I consider them to be counsel of record, and I'm going to
> proceed under that assumption, and including it's my intention to set
> a trial date today before this conference is over.

(Nov. 12, 2020 Tr. at 2:2-12.)

Ms. Kirshner objected to the setting of a trial date.   As the government has repeatedly

noted, we have refused to engage with them regarding discovery, a protective order, or other

matters—matters which we would ordinarily engage in if we had been Mr. Hadden's counsel of

record.  We haven't done so because we have not been retained, we have only appeared in this

matter for issues related to Mr. Hadden's arraignment and bail-related issues, and we are not Mr.

Hadden's counsel of choice under the Sixth Amendment.   Ms. Kirshner then stated that we would continue to "seek to be relieved from this case and hopefully have counsel appointed." (*Id*. at 10:19-21.)

This statement by Ms. Kirshner did not signify our agreement with the Court's newly adopted view that we were Mr. Hadden's counsel for all purposes, nor a representation that she had been retained by Mr. Hadden,  but simply a respectful response to the Court's sudden pronouncement that it was now considering her to be counsel of record.  After all, we had repeatedly and consistently made known the limited nature of our representation and had already advised the Court on October 19th that we would not be retained by Mr. Hadden as his counsel in this matter.  Earlier, as was made clear during the September 9th and 17th conferences (as well as our conduct throughout this case), we have been Mr. Hadden's counsel solely on the issue of his arraignment and bail-related matters.  (*See, e.g.*, Sept. 17, 2020 Tr. at 35:4-8 ("MS. KIRSHNER: No.  I mean, it's just a question of getting us into the case.  And you'll know that when we file a notice of appearance.  And if it appears that we're not going to be able to come to terms with Mr. Hadden about entering the case, I will certainly let the Court know that immediately.")  We never filed a notice of appearance in this case.

At the November 12th conference, the Court also addressed several issues we raised about the status of the financial affidavit and stated that it needed the affidavit to assess whether Mr. Hadden "is entitled because of his financial picture to appointed counsel or whether he is to continue with retained counsel."  (*Id*. at 4:5-8.)  This assessment, the court goes on to say, was "occasioned by that very unsophisticated and incomplete handwritten application, which was unsworn[.]"  (*Id*. at 4:8-10.)

Consistent with our limited role, Ms. Kirshner addressed the Court's "concerns," noting that the form Mr. Hadden submitted is the "standard CJA form that is available to every defendant seeking CJA counsel in this courthouse, and in fact Mr. Hadden's signature appears on the bottom of it." (*Id.* at 7:21-25.[3]) )

The court set a July 2021 trial date.

F.    The December 23, 2020 Conference and Decision & Order

The next conference in this matter was originally scheduled for December 8, 2020. On December 4, 2020, we submitted a 104-page financial affidavit to the Court in support of Mr. Hadden's application for court-appointed counsel. The Court did not notify us of any issues with the affidavit. The court twice re-scheduled the conference *sua sponte*.

The conference was ultimately held on December 23, 2020. At the conference, the Court did not make any inquiry about issues it had with Mr. Hadden's financial affidavit prior to ruling that it was not sufficient for Mr. Hadden's application for court-appointed counsel. The Court previewed what its written decision was based upon (including but not limited to its assessment that Mr. Hadden's original CJA Form 23 was unsigned). The Court filed its written decision some time following the conference.

The decision includes serious errors both as to Mr. Hadden's financial affidavit and as to our status as Mr. Hadden's counsel. As noted previously, this Court's use of ellipses in describing Ms. Kirshner's statements misrepresents both her statement to the Court about the scope of our limited representation of Mr. Hadden for arraignment and bail-related purposes and

---

[3] The Court reiterated its erroneous assertion that Mr. Hadden submitted an unsigned and unsworn CJA Form 23 during the December 23, 2020 conference in initially rendering its decision to deny Mr. Hadden's application for court-appointed counsel. (*See* Dec. 23, 2020 Tr. at 7:1-3.)

this Court's agreement to permit such a limited representation.  Additionally, this Court's reference to Mr. Hadden's application to "relieve his current defense counsel of record" also misstates the record.  As discussed in more detail below, we have never been retained in this matter and our appearance was limited.

### III.    This Court Should Find That the Limited Scope Representation of Mr. Hadden by Ms. Kirshner and Mr. Gosnell Has Been Satisfied

The Court should withdraw its decision not to recognize that Ms. Kirshner and Mr. Gosnell have fulfilled their limited scope appearance in this matter.  Ms. Kirshner's and Mr. Gosnell's "appearance" to date has been solely to handle Mr. Hadden's arraignment and bail-related issues (and now, at the Court's insistence, the substance of Mr. Hadden's CJA application).  This Court (and the magistrate judge) were informed of the limited nature of our "appearance" and expressly agreed to it.  (*See* Sept. 9, 2020 Tr. at 4:10-21; Sept. 17, 2020 Tr. at 32:16 – 35:15.)  Had either court not so agreed, we would not have "appeared" for even that limited purpose.

Because we have not filed a notice of appearance, no order of this Court is required for us to be "relieved" as counsel.  *See, e.g.*, *Ripley*, 2003 WL 21982964, at *3-4 (attorney solely representing Defendant at initial presentment who did not file a notice of appearance was not required to move to withdraw or seek substitution of counsel).  The scope of our "appearance" has expired and this Court should recognize that.  This is precisely what is meant by our "seeking to be relieved" in this matter.  We simply ask the Court to recognize that the limited scope— which Mr. Hadden and this Court both agreed to—has been satisfied and we are no longer needed to fulfill that limited scope.

A.    The Court's Insistence that Ms. Kirshner and Mr. Gosnell Represent Mr. Hadden Beyond the Limited Scope to Which Mr. Hadden and the Court Agreed Violates Mr. Hadden's Sixth Amendment Right to His Counsel of Choice

The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Thus, "the Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant *can afford to hire*, or who is willing to represent the defendant even though he is without funds. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989) (emphasis added). "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006).[4]

A defendant who is unjustifiably deprived of his counsel of choice need not show how his defense was impacted; such errors are structural and are not subject to harmless-error review. *See Gonzalez–Lopez*, 548 U.S. at 144, 148–52. That is because "the right at stake here is the right to counsel of choice," and it is "violated" if the deprivation of counsel of choice was erroneous. In other words, "[n]o additional showing of prejudice is required to make the violation 'complete.'" *Id*. at 146.

Mr. Hadden is entitled, pursuant to the Sixth Amendment, to his counsel of choice (or, alternatively, to court-appointed counsel) to represent him in this proceeding. Mr. Hadden did not retain us and we are not his counsel of choice. As set forth above, Ms. Kirshner and Mr.

---

[4] This right is qualified: "the attorney must be admitted to the bar, willing to represent the defendant, free from certain conflicts of interest, compliant with the rules of the court, and so on. *United States v. Stein*, 541 F.3d 130, 154 n. 14 (2d Cir. 2008) (citing *Wheat v. United States*, 486 U.S. 153, 159-60 (1988)). Because Clayman & Rosenberg LLP is not retained, we are not willing to represent Mr. Hadden in this case beyond the limited scope approved by Mr. Hadden and the court.

Gosnell appeared in a limited scope in this matter—which was expressly agreed to by Magistrate Judge Lehrburger, this Court, and Mr. Hadden.  Mr. Hadden has not, and will not, authorize us to exceed that limited scope.  This Court's decision not to recognize that we have fulfilled our limited scope representation and to impose representation upon Mr. Hadden violates his right to counsel of choice.

Our limited scope engagement is also expressly contemplated under the New York Rules of Professional Responsibility.  Rule 1.2 of the New York Rules of Professional Conduct, provides that a "lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, the client gives informed consent and where necessary notice is provided to the tribunal and/or opposing counsel."  Here, Ms. Kirshner and Mr. Gosnell limited their representation of Mr. Hadden to his arraignment and bail-related issues that arose from that appearance.  This arrangement was explained to Mr. Hadden and expressly consented to by him.  (*See* Hadden Declaration at ¶ 4-7.)  And it was expressly explained to, and then agreed upon by, the magistrate judge and this Court.  (*See* Sept. 9, 2020 Tr. at 4:10-21; Sept. 17, 2020 Tr. at 32:16 – 35:15.)  This Court's decision to *sua sponte* expand the scope of the limited representation Mr. Hadden agreed to (with the Court's blessing) violates his right to give informed consent and his right to limit the scope of a legal representation.  The Rules do not permit a *sua sponte* modification of the limited scope representation by a tribunal.  This Court could have declined to accept our limited scope representation at the outset, or at any point, but it is not permitted to expand it without the consent of the defendant and counsel.

B.      A Motion to Withdraw As Counsel is Not Required

A motion to withdraw as counsel would be inappropriate here because we are not Mr. Hadden's counsel.  Moreover, such a motion is required pursuant to SDNY Local Criminal Rule

1.2 *only if* an attorney has filed a notice of appearance. *See* SDNY Local Criminal Rule 1.2 ("Once a notice of appearance has been filed, the attorney may not withdraw except upon prior order of the Court pursuant to Local Civil Rule 1.4."). Ms. Kirshner and Mr. Gosnell *have not* entered Notices of Appearances in this case, nor will they do so since Mr. Hadden has not retained them.

Of course, even if we were required to file a motion to withdraw (which we are not), the grounds for granting such a withdrawal would clearly be met here. Rule 1.16(b)(3) requires a lawyer to withdraw from a representation when the client discharges them. Mr. Hadden has done so. Also, Rule 1.16(c) permits withdrawal when it can be done without material adverse effect on the clients' interest or the client consents to it. This case is in its infancy—discovery has not been provided, motions have not been filed, and trial is not imminent. Mr. Hadden would not be prejudiced by any withdrawal of counsel at this time. But again, these rules do not apply here and a motion to withdraw is not necessary because we are not Mr. Hadden's counsel. *Cf. In re Weiner*, 2019 WL 2575012, at *4 (Bankr. S.D.N.Y. June 21, 2019) ("When a client discharges a firm from its employment and the firm accepts such discharge, the court should grant a motion to withdraw 'except under the most compelling circumstances.'") (citation omitted).

## IV.    MR. HADDEN'S APPLICATION FOR COURT-APPOINTED COUNSEL SHOULD BE GRANTED

The Supreme Court has firmly established that criminal defendants who are unable to afford counsel have the right to court-appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). However, unlike defendants who retain private counsel, "an indigent defendant has no right to choose his counsel[.]" *Montejo v. Louisiana*, 556 U.S. 778, 784 (2009) (citing *Gonzalez–Lopez*, 548 U.S. at 151). Thus, defendants who rely on court-appointed counsel are

entitled to the effective assistance of counsel, but they "do not have a veto over who is appointed

to defend them, provided that appointed counsel's representation is adequate." *Felder v. Goord*,

564 F.Supp.2d 201, 220 (S.D.N.Y.2008).

    A.    <u>The Standard for Court-Appointed Counsel Pursuant to 18 U.S.C. § 3006A</u>

Pursuant to the Southern District of New York's Revised Plan for Furnishing

Representation Pursuant to the Criminal Justice Act (18 U.S.C. § 3006A) ("the CJA Plan"), a

person shall be furnished court-appointed counsel "if he or she is financially unable to obtain

adequate representation; that is, if his or her net financial resources and income are insufficient to

enable the person to obtain qualified counsel."[5]  CJA Plan at VI (A); *see also* 18 U.S.C. §

3006A(b).[6]  The determination of whether a person is financially eligible for court-appointed

counsel "shall be made by a judicial officer as soon as feasible after the necessity for counsel

arises."  CJA Plan at VI (C); *see also* 18 U.S.C. § 3006A(b) and (c).

The Court must conduct an "appropriate inquiry" into the defendant's financial eligibility

for court-appointed counsel, the nature of which "necessarily varies with the circumstances

presented."  *United States v. Parker*, 439 F.3d 81, 93 (2d Cir. 2006) (citations omitted).  In many

cases, the court's inquiry "may properly be limited to review of financial information supplied

on the standard form financial affidavit"—a form that requires "comprehensive financial data,

including employment income of the defendant and his or her spouse, all other income, cash, and

property; identification of the defendant's dependents; and all obligations, debts, and monthly

---

[5] Approved counsel under the CJA Plan include The Federal Defenders of New York, Inc. and
other private attorneys who have been selected as members of the SDNY'S Criminal Justice Act
Panel of Private Attorneys.  *See* CJA Plan at II and III.

[6] The CJA Plan was promulgated by the Judges of the Southern District of New York in accord
with 18 U.S.C. § 3006A(a).  It is available at
https://www.nysd.uscourts.gov/sites/default/files/2019-11/1-2019-plan-final-october.pdf.

bills." *Parker*, 439 F.3d at 93, 86 (additional citations and quotations omitted).  A court's review

may also entail "[i]nvestigation of the applicant's assets, liabilities, income, and obligations."

*Parker*, 439 F.3d at 93 (citing *United States v. Barcelon*, 833 F.2d 894, 897 (10th Cir. 1987)).

Other factors are also relevant to the Court's determination of financial eligibility.  The

court should consider the "economic realities" of the situation including "the costs of a criminal

defense and the cost of providing for himself and dependents." *United States v. Harris*, 707 F.2d

653, 661 (2d Cir. 1983).  *See also United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir. 1976)

("a defendant's own funds must be weighed against the anticipated cost of trial.").  Per the CJA

Plan, consideration "should be given to:  (1) the cost of providing the person and his or her

dependents with the necessities of life; and (2) the cost of a defendant's bail bond or the amount

of cash deposit a defendant is required to make to secure his or her release on bond."  CJA Plan

at VI (A).  The court should also consider whether a defendant owns or controls significant

assets and whether any transferred assets remain in his control.  *See Rubinson*, 543 F.2d at 964.

    B.    <u>Mr. Hadden is Financially Eligible for Counsel under the CJA Plan</u>

This Court failed to conduct an "appropriate inquiry" into Mr. Hadden's financial

eligibility under the CJA Plan when it denied Mr. Hadden's application for court-appointed

counsel.  The Court's determination of Mr. Hadden's eligibility, as set forth in its December 23

Decision & Order, fails to take into account several important factors and misapprehends a

number of facts.

1.      *Mr. Hadden's Limited-Scope Representation By Clayman & Rosenberg LLP Does Not Support a Finding of Financial Ineligibility for CJA Plan Counsel*

The Court asserts that Clayman & Rosenberg LLP's representation of Mr. Hadden at his arraignment and initial conferences undermines his application for CJA Plan counsel. Respectfully, the Court's conclusion ignores the limited scope for which Clayman & Rosenberg LLP appeared during those conferences and the representations made to, and accepted by, the courts.

At Mr. Hadden's arraignment, Ms. Kirshner informed the magistrate judge that we were prepared to represent him for the limited purpose of that proceeding and we had not had an opportunity to consult with him about being retained.  (Sept. 9, 2020 Tr. at 4:10-16).  At Mr. Hadden's first appearance before this Court, Ms. Kirshner reiterated that we were appearing in a limited fashion and were hoping to become retained in the matter.  (Sept. 17, 2020 Tr. at 32:17 – 35:15.)  After discussions with Mr. Hadden and a review of his finances, he was unable to retain us *because he is financially unable to do so*.

While the Court suggests that the best time for a defendant to seek CJA Plan counsel is when he first appears at his arraignment, the CJA Plan explicitly notes that the determination of whether a person is financially eligible for court-appointed counsel "shall be made by a judicial officer *as soon as feasible after the necessity for counsel arises*."  CJA Plan at VI (C) (emphasis added); *see also* 18 U.S.C. § 3006A(b) and (c).  At the time of his arraignment, Mr. Hadden had just been arrested by the FBI for serious felonies.  Unsurprisingly, they didn't give him the opportunity to conduct a review of all of his finances before bringing him to court.  Similarly, we did not have the ability to determine what an appropriate retainer would be in this matter (or whether Mr. Hadden could afford it) before Mr. Hadden was arraigned.  When it became clear

that Mr. Hadden finances did not permit him to retain us as private counsel, we promptly informed the court.

        2.    *The Court Inappropriately Considered Unavailable Resources in Its Inquiry*

The Court inappropriately considered the resources of Mr. Hadden's family in its determination of Mr. Hadden's financial eligibility under the CJA Plan.  The court may only consider resources from other sources, "such as family, friends, trusts, estates or defense funds" if those resources are "available" to a defendant.  *United States v. Martinez-Torres*, 556 F. Supp. 1275, 1279 (S.D.N.Y. 1983).  This issue was dealt with squarely in *United States v. Rubison*, 543 F.2d 951, 964 (2d Cir. 1976) in which the Second Circuit made clear that "a defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and *those assets remain at his disposal*."  (emphasis added).  The distinction between family-resources and family-resources *that are available to a defendant* is critical and was misjudged by this Court in its December 23 Decision & Order.

As set forth in Mr. Hadden's financial affidavit, on May 4, 2020, he disclaimed any legal claim to his father's estate.  As a result, once the estate is settled, half of the disclaimed portion will pass to Mr. Hadden's disabled son and the other to his estranged daughter.  No matter what the size of the estate or the timing of the settlement, Mr. Hadden's entitlement to its proceeds is the same.  Neither his daughter nor his son will give him a penny of it.  The court's conclusion to the contrary is in error.

Similarly, on October 26, 2019, Mr. Hadden made a bona fide, one-time gift to his daughter and his son-in-law of $100,000 so that they could make a down payment on a house. This irrevocable gift was inappropriately considered by this Court as one of Mr. Hadden's assets. He does not have any legal claim to the money, nor, as discussed above, will his daughter return

the money—they are estranged.  As such, this is not an asset that is available to Mr. Hadden and

should not be considered in determining his financial eligibility for court-appointed counsel.

Further, Mr. Hadden did not provide this gift to his daughter and son-in-law "in order to

appear financially unable to retain counsel."  *United States v. Grant*, 2011 WL 13208966, at *2-3

(S.D. Tex. Mar. 2, 2011).  (*See also* Hadden Declaration at ¶ 15.)  It occurred almost a year

before he was arrested in this case.  Seemingly under the Court's reading of the law, any

expenditure Mr. Hadden made prior to his arrest would be suspect as designed to make him

appear financially unable to retain counsel.  That is simply not the law.

The cases cited by the court are not to the contrary.

- In *Grant*, 2011 WL 13208966, at *2-3, the defendant sought court-appointed appellate counsel.  Private retained counsel represented him at trial.  Between his arrest and appeal, Grant transferred assets (in the form of cash deposits and real estate transfers) "in order to appear financially unable to retain counsel."  *Grant*, 2011 WL 13208966, at *2.  By contrast, Mr. Hadden disclaimed his inheritance well-before he was arrested in this case and did not do so in order to become financially eligible for CJA Plan counsel.  (*See* Hadden Declaration at ¶ 15.)

- In *United States v. Hung Thien Ly*, 2007 WL 9657599, at *2 (S.D. Ga. Oct. 22, 2007), the trial court conceded that "[o]rdinarily, a court may not look to a defendant's spouse's assets to determine whether the defendant qualifies for the appointment of counsel" but it nevertheless did so because it was clear that the defendant was merely transferring all of his assets to his wife who, as a result, had substantial assets and was doing so to obtain appointed counsel at public expense.  By contrast, Mr. Hadden transferred his sole asset of value to his wife's bank account because his banks closed his accounts—and he has always reported this asset to the court.  And, as discussed above, Mr. Hadden disclaimed his inheritance well-before his arrest in this case.

- In *Rubinson*, 543 F.2d at 964, the court stated that "a defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal."  Quite right.  But this Court erroneously concludes that the disclaimed inheritance and Mr. Hadden's gift to his daughter—both of which occurred before he was arrested in this matter—"remain at his disposal."  They do not.  (*See* Hadden Declaration at ¶ 15.)  Therefore, they are not "appropriate" to consider in the Court's "inquiry" into Mr. Hadden's financial eligibility for CJA Plan counsel.

3.      *Mr. Hadden's Cash Transfer to His Wife*

As set forth in Exhibit 5 to Mr. Hadden's financial affidavit, Mr. Hadden was forced to transfer money from bank to bank as a result of his arrest on this case.  On September 17, 2020, Valley National Bank closed his account and issued him a check for $159,272.  Mr. Hadden deposited this at Bank of America on September 23, 2020.  On October 13, 2020, Bank of America informed him that it was closing his account.  Thereafter, Mr. Hadden transferred the remaining funds ($148,970 in total) to his wife's bank account at USAA Federal Savings.

The Court's December 23 Decision & Order is opaque about what conclusion the Court drew from Mr. Hadden's transfer of $148,970 to his wife's account.  This is the same money that was disclosed on Mr. Hadden's CJA Form 23 (noting approximately $145,000 in an account) and was listed as an asset that he does control.  The only reason why this money is in his wife's account is that Valley National Bank and Bank of America have refused to permit him to have individual accounts at their banks.  The Court should consider the $148,970 in its analysis of Mr. Hadden's financial eligibility for CJA Plan counsel but should not view this transfer as an attempt by Mr. Hadden to understate his finances.  He has consistently disclosed this asset.  (*See also* Hadden Declaration at ¶ 16.)

4.      *Mr. Hadden's Monthly Income and Expenses*

As set forth in Mr. Hadden's financial affidavit, he receives a monthly payment of $6,440 in disability benefits from Northwestern Mutual Insurance,[7] his wife receives $654 per month in

---

[7] The Court notes that Mr. Hadden "does not describe or explain [his] disability insurance" in his Financial Affidavit.  *See* December 23 Decision & Order at 10.  Mr. Hadden fully disclosed the amount of money he receives in disability benefits—an amount that his insurance company believes is an appropriate sum given his disability.  If the Court is suggesting that Mr. Hadden has not disclosed the nature of his medical disability then that is correct.  Such a disclosure is not warranted in determining Mr. Hadden's financial eligibility for CJA Plan counsel and is personal, protected health information.

Social Security benefits, and his son receives $566.31 per month in Social Security disability payments:  for a monthly combined income of $7,789.23.  But the Court fails to account for any of Mr. Hadden's or his family's expenses, which are itemized on the next page of Mr. Hadden's financial statement.  The monthly expenses include payments for the mortgage ($2,384), groceries ($750), electricity ($270), water and sewage ($40), a telephone ($150), cable ($126), car payments and insurance ($298 and $206), commuting expenses ($45), health insurance ($2732), clothing ($50), medical expenses ($262), and pest control, home security, lawn care and home repairs ($269):  for a monthly combined expenses of $7,582.00.  And, as noted in paragraph 25 of Mr. Hadden's Declaration, the cost of health insurance rose on January 1, 2021 to $3,074 per month, bringing his monthly expenses to $7,924.

That leaves Mr. Hadden (and his wife and disabled child), with a *negative* monthly cash flow (it was only a positive $207 before January 1, 2021).  In other words, Mr. Hadden will be forced to use the remaining balance of his $149,970 in savings to pay to keep a roof over his (and his wife's and his disabled son's) head, keep the lights on, and make sure everyone is clothed, fed, and medically cared for.  The CJA Plan explicitly requires the Court to consider in its analysis "the cost of providing the person and his or her dependents with the necessities of life," which this Court failed to consider in its December 23 Decision & Order.  *See also Parker*, 439 F.3d at 93.  Mr. Hadden does not live a lavish lifestyle—far from it.  He lives in a modest home in New Jersey with a mortgage and rarely socializes.

5.     *Additional Facts Unaddressed in the December 23 Decision & Order*

In its December 23 Decision & Order, the Court refers to several additional assets that warrant mention here.

*First*, the Court notes that Mr. Hadden, jointly with his wife, owns a home with a fair market value of $500,000 subject to an outstanding mortgage of $148,208.  But the Court fails to recognize that this home is securing Mr. Hadden's significant bond in this matter and has a lien on it.  Mr. Hadden cannot sell his home for a multitude of reasons:  the home is securing his bond; his wife jointly owns it with him and won't consent to a sale; and selling his home would mean that he, his wife, and disabled child have to live on the street.

*Second*, the Court notes that Mr. Hadden has individual whole life insurance policies with a "face amount" of $776,898, a "cash surrender value" of $166,194, and a "net accumulated value" of $40,373.71.  But Mr. Hadden's wife is the beneficiary of these policies.  She only gets the "face amount" if Mr. Hadden is deceased—which would render his application for CJA Plan counsel moot.  In addition, after the Court's December 23 Decision & Order, Mr. Hadden had Northwestern Mutual prepare an updated report on these policies which reflects that the "cash surrender value" of the polices totals $39,214.14.  (*See* Hadden Declaration at ¶ 28 and Exhibit C.)

*Third,* the Court ignores the fact that Mr. Hadden is a defendant in five active civil cases arising out of allegations similar to those found in the Indictment.  Each of these matters should be considered as a potential liability for Mr. Hadden.

*Fourth*, the Court notes that Mr. Hadden has two cars worth a total of $13,500.    Again, a defendant is not required to show that he is indigent in seeking CJA Plan counsel.  *See, e.g.*, *United States v. O'Neil*, 118 F.3d 65, 74 (2d. Cir. 1997); *Harris*, 707 F.2d at 660.

*Fifth*, in a footnote, the Court indicates that the Exhibits attached to Mr. Hadden's financial presentation "appear incomplete."  But none of the documents the court cites as "missing or incomplete" should have any bearing on Mr. Hadden's financial eligibility or can be easily supplied to the Court.[8]

- Mr. Hadden is providing more legible copies of his 2018 and 2019 tax returns in connection with this motion.  (*See* Hadden Declaration at Exhibits A and B.)

- It is unclear what the Court is seeking regarding Mr. Hadden's disability insurance, which is included in his cash flow statement.  To the extent any requested documents do not disclose protected medical information, we can provide those to the court.

- The Bank of America 3603 Account is not included in Mr. Hadden's statement of net worth because the money was transferred to his wife's USAA account (which is included in his statement of net worth).  This transfer is discussed above and set forth in Exhibit 5 of the Financial Affidavit and paragraph 23 of Mr. Hadden's Declaration.

- Carol Hadden is the custodian for Bank of America account #1285, which is the account for their disabled son.  As his legal guardian, Mrs. Hadden may only make expenditures out of a ward's estate for his "support, maintenance, education" or for his "general use and benefit."  NJSA 3B: 12-43.  Even if Mr. Hadden's disabled son had sufficient assets to pay for Mr. Hadden's legal defense (which he does not), it would be unlawful for the guardian to use those funds for that purpose.

- The health insurance provides coverage to Mr. Hadden and his wife.  (*See* Hadden Declaration at ¶ 25.)

- Mr. Hadden's wife received a $10,000 inheritance from her mother's estate.  This is explained in paragraph 26 of Mr. Hadden's Declaration.

---

[8] Indeed, at the October 21, 2020 conference (when the Court first considered Mr. Hadden's application), the Court, which had received Mr. Hadden's CJA Form 23 two-days prior, stated that "if it had gotten it sooner, I would have sent up a red flag because I have an issue." (Oct. 21, 2020 Tr. at 27:21-22.)  In the instant application, the Court received Mr. Hadden's financial affidavit on December 4, 2020 and did not raise any issue with its sufficiency until rendering its written opinion.

6.      *The Court Failed to Account for the Cost of a Potential Defense*

One of the factors that the court should consider is the cost of defense.  *See Harris*, 707

F.2d at 661.  This case will be an enormous undertaking for any team of lawyers.  The

Indictment claims Mr. Hadden sexually abused "dozens" of his gynecological patients from 1993

through 2012.  He faces a life sentence.

 The government has indicated trial may span 6 weeks, which this Court has observed is

longer than any other trial of a single defendant over which it has presided.  (*See* December 23,

2020 Tr. at 11:11 – 12:4.)  Pre-trial motions and applications will be significant and complicated.

The discovery will be voluminous.  There will likely be hundreds of pages of hand-written

medical records for each alleged victim or 404(b) witness.  The government has indicated that

many of the witnesses are represented by counsel because they are plaintiffs in civil cases against

Mr. Hadden (which collectively include more than 1,000 docket entries).  Investigators will need

to be hired to inquire into a multitude of issues.  An expert or experts will need to review much

of the discovery and possibly testify.  And the government has indicated that a 2TB hard drive is

necessary for Mr. Hadden to receive forensic downloads of electronic devices.

All of the above will take both time and money.  If the government's trial length estimate

holds true, the defense cost (using the CJA rate of $152) for a *single lawyer* will exceed

$45,000.[9]  That calculation does not include a second of time spent preparing for trial, reviewing

discovery, conducting research, preparing and filing motions, locating and interviewing

witnesses and expert witnesses, or any other expense that will be incurred in this matter.  Nor, in

the event of a conviction, does it cover any of the cost of post-trial motions or sentencing

---

[9] This calculation assumes 10 hours per day for 5 trial days in a six-week trial.  By any measure, this is a conservative calculation of the time counsel will spend working on the case during a six-week trial.

27

submissions in a case where Mr. Hadden faces life imprisonment.  Moreover, the complexity and time-commitment of this case is likely to require several defense lawyers (indeed, the Government has three of its own, assisted by paralegals, experts, and the FBI, prosecuting the case!).

7.      *The Court's Conclusion That Mr. Hadden's "Portrayal of His Financial Inability 'Lack Credibility'" is Erroneous and Should be Stricken*

The Court's December 23 Decision & Order ends with a parting shot at Mr. Hadden: "the Court is constrained to find that the defendant's portrayal of his financial inability 'lacks credibility.'"  (December 23 Decision & Order at 11-12.)  We respectfully submit that the Court's observation was based upon a mistaken review of the factual record.  As the Court is well aware, this case has been relentlessly covered by new media[10] and other sources and remarks like this threaten to infringe upon his Sixth Amendment right to a fair trial by an impartial jury.

As discussed above, contrary to the Court's basis for that conclusion, Mr. Hadden does not have access to a "significant (million-dollar) inheritance" or the transfer of $100,000 to his daughter in 2019, and the disclaimed inheritance and transfer cannot be considered in his application for appointed counsel.  Similarly, Mr. Hadden has always disclosed his disability income and his approximately $140,000 in liquid assets and he described in detail why those funds were transferred to an account in his wife's name.[11]

---

[10] Indeed, the Court's comment is quoted by, among other publications, the New York Daily News.  *See, e.g.*, Stephen Brown, *Judge Denies Columbia U Gynecologist Robert Hadden Defender in Sex Abuse Case, Citing Shady Finances*, N.Y. Daily News, Dec. 23, 2020, *available at* https://www.nydailynews.com/new-york/ny-robert-hadden-columbia-public-defender-ruling-20201223-ccv3dqpnezetrcp5xaukfu7ocy-story.html

[11] The Court also refers to Mark Koenig's certification for Mr. Hadden's financial statement as a "qualification."  Mr. Koenig's certification is identical to that provided by tax preparers.  Mr. Koenig was responsible for calculating Mr. Hadden's assets, liabilities, cash flow and the like

8.    *The Court Failed to Evaluate Whether Mr. Hadden is Partially Eligible
       for CJA Plan Counsel*

Given the amount of resources that will inevitably be required for Mr. Hadden to defend

himself in his case, if Mr. Hadden is required to hire private counsel he will inevitably be back

before this Court on a future application for the appointment of CJA Plan counsel.  (*See* Hadden

Declaration at ¶ 30.)  Depending on the timing, this could be enormously disruptive.  The CJA

Plan does provide some guidance here.

Mr. Hadden could seek to retain counsel of his choice but limit his choices to attorneys

who are currently on the CJA Panel.  He would then pay retained counsel at their normal hourly

rate until an amount, pre-determined by this Court[12] is exhausted.  Upon exhaustion of that

amount, Mr. Hadden's retained counsel would continue to represent him but do so under the CJA

Plan and be paid the applicable CJA rates.  (*See* Hadden Declaration at ¶ 31.)

This Court may also, in accord with the CJA Plan, find that a defendant's net financial

resources and income are "in excess of the amount needed to provide him or her and any

dependents with the necessities of life, and to secure the person's release on bond" and that those

resources "are insufficient to pay fully for retained counsel."  CJA Plan at VI(B).  In the event

that this Court finds Mr. Hadden falls into this category, the Court should find that he is eligible

for court-appointed counsel and appoint CJA Plan counsel for him, on the condition that Mr.

Hadden pay to the Clerk of the Court the funds this Court believes are available.  *Id.*

---

based upon the document provided to him by Mr. Hadden.  Mr. Hadden declared upon penalty of
perjury that the financial statements were accurate.

[12] Such amount would necessarily have to account for the amount needed for Mr. Hadden to
continue to provide for the necessities of life and to secure his release on bond.

In either scenario, this Court would first need to find a specific amount of money that it deems is available to Mr. Hadden—over and above the amount needed to pay for necessities and secure his release—that he would be required to contribute to his counsel's fees.

CONCLUSION

For the foregoing reasons, we urge the Court to terminate Clayman & Rosenberg LLP's representation of Robert Hadden in this matter.  In addition, we request that the Court exercise its discretion to approve Mr. Hadden's application for the appointment of counsel under the Criminal Justice Act and the CJA Plan.

Respectfully submitted,

By: _____
    Wayne E. Gosnell, Jr.
    Isabelle A. Kirshner
    CLAYMAN & ROSENBERG LLP
    305 Madison Avenue, Suite 650
    New York, New York 10165
    *Counsel for Robert Hadden*