**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 7, 2021

**BY ECF AND EMAIL**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Robert Hadden,**
              **20 Cr. 468 (RMB)**

Dear Judge Berman:

      The Government respectfully submits this letter in opposition to the defense's letter motion, dated July 6, 2021, to preclude the Government from using in its case-in-chief at trial any materials seized from the defendant's home "that are not identified by the government as responsive sufficiently prior to the August 2, 2021, pre-trial motions filing deadline." (Dkt. 93 at 1). The defense's motion effectively seeks to preemptively suppress evidence obtained pursuant to court-authorized search warrants from approximately 33 electronic devices, as well as other physical objects, without any legal basis.[1]

      As discussed in greater detail below, after seizing approximately 33 electronic devices (the "Electronic Devices") containing data (the "Data") consisting of more than 3 million emails, text messages, photographs, Internet history, deleted files, hidden files, and potentially encrypted files and potential virtual systems (referred to collectively herein as the "Artifacts"), the Government has worked diligently over the last ten months to conduct (i) a privilege screen to segregate items that may be potentially protected by attorney-client privilege, spousal privilege, or doctor-patient privilege, followed by (ii) a targeted privilege review of potentially privileged and potentially spousal items, and (iii) a responsiveness review—all in the midst of significant technological challenges, a complicated forensic review, and the COVID-19 pandemic. The length of the Government's search of the Electronic Devices has been wholly reasonable under the Fourth Amendment and well-established law in this District given, among other things, the number of

---

[1] The defense's preemptive suppression motion principally challenges the length of the Government's responsiveness review. Accordingly, the Government does not respond here to the defense's other assertions about the search warrants issued in this case or the items seized pursuant to the search warrants (*e.g.*, the claims that the warrants were "general warrants" or lacked probable cause). The defense's pretrial motions are due on August 2, 2021, and the Government plans to respond to the defense's other suppression arguments in its response, which is due on September 2, 2021.

electronic devices, the quantity and nature of the Data, the privilege screen to segregate potentially privileged material, the ongoing and targeted privilege review, the technical challenges posed by the Data and document- and forensic-review platforms, and the potential existence of child pornography on the Electronic Devices. *See infra* at 8-9 (citing cases).

The Government has been in regular communication with the defense about its privilege and responsiveness reviews, both through discovery letters and phone conversations. As the defense has acknowledged in its motion—and in phone conversations with the Government—the Data is substantial. (Dkt. 93 at 3-4). For example, although the Government believed that as of on or about April 15, 2021, it would be able to produce responsive materials to the defendant by the end of June 2021 (Dkt. 83 at 2), when we realized that this timeline was not feasible, we communicated that to the defense and to the Court on or about June 11, 2021 (Dkt. 87 at 2). As discussed below, moreover, the FBI has identified certain large files on at least one of the Electronic Devices that may have had a now-deleted virtual drive or a virtual computer, both of which are discussed in more detail below.

On or about June 30 and July 6, 2021, the Government conferred with defense counsel and explained that because of the potential virtual systems and encryption, the Government plans to identify responsive materials for the defendant by early September 2021—four months before trial is scheduled to commence on January 5, 2021. The parties discussed a supplemental motions calendar with respect to the responsive material the Government plans to identify for the defense by early September 2021. The calendar discussed by the parties was as follows: any defense motions would be due on October 15, 2021, after defense counsel's case will be argued before the Supreme Court on October 6, 2021; the Government's response would be due by November 5, 2021; and the defense's reply would be due by November 12, 2021. A supplemental motions calendar for the responsive materials will not alter the current schedule for other pretrial motions or the trial date in this case, and will give the Government a fair opportunity to properly execute the court-authorized search of the Electronic Devices for fruits, instrumentalities, and evidence of the defendant's crimes.

Accordingly, for the reasons discussed in greater detail below, the Government respectfully requests that the Court deny the defendant's motion, and allow the defense to file supplemental motions with respect to the responsive materials in early October 2021 after the Government has produced such materials.

## **RELEVANT FACTS**

### I.    **The Defendant's Arrest and the Search Warrants**

On or about September 8, 2020, the defendant was charged in Indictment 20 Cr. 468 (RMB) with one count of enticing one minor patient-victim and five counts of enticing five adult patient-victims, in connection with the defendant's sexual abuse of the patient-victims as their obstetrician-gynecologist ("OB/GYN"), and in violation of 18 U.S.C. § 2422(a). (Dkt. 1). That same day, an arrest warrant for the defendant and a search warrant (the "September 2020 Search Warrant") to search the defendant's residence in Englewood, New Jersey (the "Hadden Residence") were issued by the Honorable Barbara Moses, United States Magistrate Judge,

Southern District of New York, and the Honorable Leda Dunn Wettre, United States Magistrate Judge, District of New Jersey, respectively. (Dkt. 3 (arrest warrant); Ex. A (September 2020 Search Warrant)).[2]

On or about September 9, 2020, the defendant was arrested in the vicinity of the Hadden Residence. At or about this time, the Federal Bureau of Investigation ("FBI") executed the September 2020 Search Warrant. The September 2020 Search Warrant included the subject offense of enticement. (Ex. A at 7). The September 2020 Search Warrant authorized the search of the Hadden Residence and the seizure of instrumentalities, evidence, and fruits of the subject offense of enticement, including the seizure of electronically stored information ("ESI"), such as computers, storage medium, tablets, electronic devices, and cellphones. (*Id.* at 7-8).

Prior to the defendant's arrest, on or about August 21, 2020, the Honorable Stewart D. Aaron, United States Magistrate Judge, Southern District of New York, issued a search warrant to search an Apple iBook (the "Apple iBook") that the FBI had obtained following a consent search of the residence of the defendant's deceased father in Glen Cove, New York (the "August 2020 Search Warrant"). (Ex. B (August 2020 Search Warrant)). The August 2020 Search Warrant authorized the search of the MacBook for evidence of the subject offenses of enticing minors to travel interstate for purposes of unlawful sexual activity and the receipt and distribution of child pornography, among other offenses. (*Id.* at 19-21). As stated in the agent affidavit to the August 2020 Search Warrant, the defendant is believed to have used the Apple iBook. (*Id.* at 12).

## II.    The Electronic Devices and Physical Property

Pursuant to the August 2020 Search Warrant and the September 2020 Search Warrant, the Government seized a total of 33 items believed to contain ESI (collectively referred to as the "Electronic Devices"). The 33 Electronic Devices are listed below and include: three laptop computers, four Apple iPhones, three tablets, one micro SD card, seven CD/DVDs (two of which appear to contain data backups), 11 external drives (*e.g.*, thumb drives), two cellphones, one VHS tape, and one handheld recorder with storage capacity.

| Electronic Device Number | Description |
|---|---|
| 1 | Apple iPhone 6S-Silver (main phone) |
| 2 | Apple iPhone (cracked screen) |
| 3 | Dell Laptop |
| 4 | San Disk 2GB Micro SD Card |
| 5 | Handheld Recorder, 128MB Memory Stick (Walkman) |
| 6 | Apple Silver-Black iPhone |
| 7 | Apple Silver-White iPhone (Black Case) |

---

[2] The Government respectfully submits Exhibits A and B under seal, pursuant to the Protective Order in this case, because they contain victim and other sensitive information.

| 8  | Verizon Tablet |
|----|----------------|
| 9  | CD/DVD (Purple Fujifilm) |
| 10 | CD/DVD (PIX 07_06) |
| 11 | CD/DVD (Staples) |
| 12 | CD/DVD (FBI-Marked "2") |
| 13 | CD/DVD (Blank Silver Sticky Note) |
| 14 | CD/DVD (Back Up 10-9-10) |
| 15 | CD/DVD (Back Up 9-10-10) |
| 16 | Kingston 4GB |
| 17 | Sony 8GB |
| 18 | Lexar 32GB |
| 19 | Apple Silver-Black 8GB iPod |
| 20 | VHS Tape |
| 21 | ASUS Nexus Tablet |
| 22 | Cruzer 8GB Thumb Drive |
| 23 | San Disk 512MB Compact Flash Drive |
| 24 | San Disk 1GB Compact Flash Drive |
| 25 | Canon FC-32MH Compact Flash Drive |
| 26 | Cruzer 8GB Thumb Drive (2) |
| 27 | Sony 2GB Thumb Drive |
| 28 | San Disk 16GB Thumb Drive |
| 29 | Dell Inspiron Laptop |
| 30 | Red Verizon Flip Phone |
| 31 | Black Motorola Phone |
| 32 | iPad Pocket PC |
| 33 | Apple iBook |

In addition to the Electronic Devices, the Government seized records, documents, and physical objects pursuant to the September 2020 Search Warrant (the "Physical Objects"). The Physical Objects include the defendant's patient files, a book on child sex abuse with accompanying notes, a composition notebook, and two electronics accessories (a Microsoft Notebook Receiver and a GE Mouse Adapter).[3]

---

[3] The August 2020 Warrant and the September 2020 Warrant contained typographic errors with respect to one of the subject offenses (*i.e.*, the enticement statute was listed as 18 U.S.C. § 2242 rather than § 2422). As a result, on or about April 8, 2021, the Government obtained amended search warrants, which were issued by Magistrate Judge Aaron. The amended search warrants, together with the August 2020 Warrant and the September 2020 Warrant, are referenced herein as the "Search Warrants."

## III.    The Government's Discovery Productions

At the time of his arrest, the defendant was represented by retained counsel.  (Dkt. 35 at 6-7).  On or about January 19, 2021, approximately four months after his arrest, the defendant was appointed counsel.  (Dkt. 55).  Prior to the appointment of counsel, the defendant's former counsel declined to sign the proposed protective order.  As a result, the Government produced non-confidential materials to the defendant's former counsel beginning in December 2020.  Once current counsel was appointed, the Protective Order was issued on or about February 4, 2021 (Dkt. 68), and the Government began producing discovery containing confidential materials subject to the Protective Order.

The FBI identified child pornography on the Apple iBook (Electronic Device-33).  As a result, the Government could not produce the Apple iBook to the defendant because producing child pornography to the defendant would violate federal criminal law.  Given the existence of child pornography on the Apple iBook, the nature of the enticement offenses, which involve certain minor victims, and federal statutes criminalizing the distribution of child pornography, the FBI screened the Electronic Devices for child pornography before imaging them for discovery purposes.

On April 5, 2021, the Government produced to the defendant images of 26 of the Electronic Devices.  In addition, the Government could not create a forensic copy or image of the CD/DVD (Purple Fujifilm) (Electronic Device-9), the Apple Silver-Black 8GB iPod (Electronic Device-19), the VHS Tape (Electronic Device-20), the ASUS Nexus Tablet (Electronic Device-21), the Black Motorola Phone (Electronic Device-31), or the iPad Pocket PC (Electronic Device-32), either because the Electronic Device was blank or because the FBI's forensic analysis software could not image the Electronic Device.

The Government has repeatedly informed the defense that they are free to inspect and review the Physical Objects, the Apple iBook, and the Electronic Devices in person.

## IV.    The Government's Responsiveness Review of the Electronic Devices and the Physical Objects

Since the seizure of the Electronic Devices approximately ten months ago, the Government has worked diligently to complete its privilege review and responsiveness review of the over 3 million Artifacts.  The Government has also regularly updated the defense with respect to its responsiveness review, which did not begin until approximately four months ago, in or about March 2021.[4]

As discussed below, the privilege review, the COVID-19 pandemic, technological challenges, and the volume and nature of the Artifacts on the Electronic Devices, have presented

---

[4] The defense claims that the Government has not yet identified "a single responsive document." (Dkt. 93 at 1).  That is not true.  The Government has identified materials responsive to the Search Warrants.  The Government plans to identify these materials for the defense in early September 2021.

challenges to the Government's review.  For example, the data from the Electronic Devices (*i.e.*, the Data) is not easily reviewed on a document-review platform like Relativity, which is the review platform regularly used by the U.S. Attorney's Office, because the Data does not simply contain emails.  Instead, the Data contains, among other things, images, hidden files, deleted files, Internet search history, communications, text messages, and saved files (*i.e.*, Artifacts).  Likewise, a forensic review is very different and much more time-consuming than a basic email or document review, in part because a forensic review can, among other things, identify hidden files and deleted files within the Data.

A.    **The Government's Privilege Review of the Electronic Devices and the Subpoena Returns**

From approximately September 2020 to March 2021, a filter team consisting of AUSAs from the U.S. Attorney's Office and the FBI (the "Privilege Team") conducted a privilege screen to segregate Artifacts that may be potentially protected by attorney-client privilege, spousal privilege, or doctor-patient privilege.  Because the Data contains Artifacts beyond emails, all of the Data could not be viewed in the document-review platform typically used by the U.S. Attorney's Office (*i.e.*, Relativity).  For example, deleted or hidden files that were identified during the forensic review are not reviewable on Relativity.  Data extracted from the Apple iPhones, phones, and iPad, with the exception of emails, also could not be viewed on Relativity.  In an effort to expedite the review, the Government even tried to copy and upload the emails from the Data to Relativity on at least two occasions, without success.

The U.S. Attorney's Office then turned to a forensic-review platform used by the FBI called Axiom.  When conducting the privilege screen in Axiom, however, the Privilege Team learned that when keyword search terms are run in Axiom, the search results do not always keep emails and attachments together.  The FBI and the Privilege Team worked together to fix this technical problem so that keyword searches could be run in Axiom for the privilege review.  Axiom, moreover, was only available to the Government on select FBI laptops.  Neither Axiom nor the Data could be uploaded on a "cloud" so that the Privilege Team could remotely access the Data.  Instead, the Data had to be reviewed in-person.  The privilege review, moreover, was conducted during the COVID-19 pandemic.

The Privilege Team completed its identification and segregation of all potentially spousal and potentially privileged non-email Artifacts from the Data in or about March 2021.  Approximately two months later, in or about May 2021, after resolving the technical issue discussed above, the Privilege Team completed its identification and segregation of all potentially spousal and potentially privileged email Artifacts from the Data.[5]  Approximately 26,000 Artifacts, out of the over 3 million total Artifacts, have been segregated from the case team as potentially privileged or potentially spousal.  From May 2021 to present, the Privilege Team has used responsiveness search terms and date ranges provided by the case team to identify a subset of

---

[5] During this time, the privilege review also involved the review of approximately 25,000 total documents produced by third parties in response to grand jury subpoenas.  This was a time-intensive process, which added to the overall length of time the Privilege Team took to release materials to the case team.

potentially privileged and potentially spousal Artifacts for further privilege review, and the Privilege Team has been conducting that further review.

### B.      The Forensic Analysis

In total, the Electronic Devices contain more than 3 million Artifacts.  In or about March 2021, the Government began its responsiveness review of the non-potentially privileged Artifacts. Because of the number of Electronic Devices and Artifacts, electronic keyword searches of the Data take time and are not instantaneous.  In addition, the responsiveness review is being conducted in-person and on forensic applications including Axiom and Griffeye that are not widely available at the U.S. Attorney's Office.

In conducting its forensic analysis, the FBI has identified indicia of encryption, and of virtual drives and virtual computers.  In other words, the FBI has identified files that indicate that the Electronic Devices may have contained a virtual drive or virtual system that was then subsequently deleted.  A virtual drive essentially operates like an additional hard drive.  A user can save and store Artifacts on a virtual drive.  A user can also save a virtual drive on, for example, a computer, such that the virtual drive is not immediately apparent or visible to other users who access that computer.  A virtual computer enables a user to access a different computer or hard drive from the computer in front of the user.  These virtual systems, however, take substantial time and resources to analyze.

### C.      Hard-Copy Documents and Records

On or about June 30, 2021, the defense asked the Government about the Physical Objects, including the documents and records seized from the Hadden Residence, and whether any of the evidence could be returned to the defendant.  The Government promptly conducted due diligence with respect to the defense's questions.  After reviewing the materials obtained from the Hadden Residence, including the Electronic Devices, on or about July 6, 2021, the Government informed the defense that six specific items could be returned to the defendant.

On July 6, 2021, the Government told the defense that if the defense had specific Electronic Devices or Physical Objects that it would like the Government to return, the Government was open to receiving a list of items from the defense.  Similarly, to the extent that the defense believes that the Government has seized items belonging and used exclusively by the defendant's wife, the Government is open to receiving such information and reviewing the specified materials to see if they can be returned to the defense.

With respect to the documents and records seized from the Hadden Residence, the Government has completed its privilege review of these materials, and plans to complete its responsiveness review and identify responsive materials for the defense also by early September 2021, if not sooner.  As noted above, the defense is free to inspect and review the Physical Objects, the Apple iBook, and the Electronic Devices in person.

## DISCUSSION

## The Court Should Deny The Defendant's Preemptive Suppression Motion

The defendant's motion should be denied.  As an initial matter, the defendant has identified no authority for the proposition that a court may preemptively determine that a not-yet-completed search was executed in an unreasonable manner.  Nor would this be an appropriate case to do so, as the searches here are being executed in a manner that is eminently reasonable and consistent with numerous cases in this District in which motions to suppress have been rejected after searches have been completed.  Finally, the defendant's claims about the timing of the Government's responsiveness review with respect to the motions deadline and trial date are meritless.

**I.      Applicable Law**

"The touchstone of the Fourth Amendment is reasonableness."  *United States v. Knights*, 534 U.S. 112, 118 (2001).  Although the Government's execution of a valid search warrant is subject to reasonableness review, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness."  *United States v. Ganias*, 824 F.3d 199, 209 (2d Cir. 2016) (en banc) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).  There is "no established upper limit as to when the government must review seized electronic data to determine whether evidence falls within the scope of a warrant."  *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (citation omitted).  Put another way, "[t]here is no basis for a 'one size fits all' presumptive period" for the time in which a review must take place because "[a] substantial amount of time can be involved in the forensic imaging and review of information . . . due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs."  Fed. R. Crim. P. 41 Advisory Committee's Note (2009).

In this District, the law is well-established:  searches of electronic evidence, particularly computers and cellphones, may continue for more than a year.  *See, e.g.*, *United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) (search of two phones, which took 10 and 15 months to complete, was reasonable, where the "searches were executed pursuant to valid warrants, commenced shortly after execution, and completed nearly three months prior to defendant's scheduled trial).  Courts in this District have upheld responsiveness reviews for electronic data as reasonable when they have continued for well over one year.  *See, e.g.*, *Sosa*, 379 F. Supp. 3d at 222 (upholding searches that took 10 and 15 months); *United States v. Estime*, No. 19 Cr. 711 (NSR), 2020 WL 6075554, at *14 (S.D.N.Y. Oct. 14, 2020) (agreeing with Government that retaining cellphone for "10-months, or more" before completing a search was reasonable, where delay was "result of difficulties created by encryption"); *United States v. Nejad (Sadr)*, 436 F. Supp. 3d 707, 733 (S.D.N.Y. 2020)  (responsiveness review reasonable, where it concluded "roughly three years after issuance of the first search warrant in April 2014 and only one year after issuance of the last warrant in 2016," and where the returns "comprised over one million documents in at least three different languages"); *United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 1017533, at *4, *11 (S.D.N.Y. Mar. 2, 2019) (upholding review process that started in October 2015, two months after execution of the warrant, and ended April 2017, right before return of the Indictment); *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (holding that the "Government has not exceeded any constitutional or Rule 41

deadline for concluding the search of the iPhone given the difficulties posed by encryption" where the "Government has only possessed the iPhone in question for a matter of months at this point, hardly a constitutionally significant period of time given the encryption difficulties," and where the "Government further represents that it continues to need the iPhone for its preparation for trial and continues to seek to de-encrypt the iPhone as it accesses new technology").

## II.    The Length of the Government's Privilege and Responsiveness Reviews Have Been Plainly Reasonable Under the Fourth Amendment

Here, the Government has been working diligently over the course of the past ten months to complete a privilege screen to segregate potentially privileged material followed by a targeted privilege review and a responsiveness review of the Data. Given the following factors, the length of the Government's responsiveness review has been entirely reasonable under the Fourth Amendment: (i) the quantity of Electronic Devices (*i.e.*, 33 Electronic Devices); (ii) the volume of Artifacts contained on the Electronic Devices (*i.e.*, more than 3 million); (iii) the nature of the Data and the forensic review (*i.e.*, the analysis of potentially encrypted files, hidden files, deleted files, and potential virtual systems); (iv) the privilege screen to segregate potentially privileged and potentially spousal items; (v) the targeted privilege review, which is ongoing; (v) the technical problems involved in reviewing the Data; (vi) the COVID-19 pandemic, which limited the number of employees at the U.S. Attorney's Office who could physically work in-person in the Office over the past year; and (vi) the complicated nature of the forensic review.

As discussed above, the Government plans to substantially complete its responsiveness review and identify responsive materials for the defense by early September 2021. The Government respectfully submits that approximately one year to review 33 Electronic Devices containing more than 3 million Artifacts for potentially privileged Artifacts, potentially spousal Artifacts, potential child pornography, and materials responsive to the Search Warrants—all amidst technological problems with the document-review and forensic-review platforms, the COVID-19 pandemic, requisite in-person review, and complex forensic analysis—is plainly reasonable. Accordingly, there is no basis for the Court to preemptively determine that the ongoing review is unreasonable, nor is there any basis in the Fourth Amendment or the relevant case law of this Circuit for the Court to set a deadline by which such review must be completed.

## III.   The Government's Responsiveness Review Does Not Infringe on the Defendant's Right to Due Process

The defendant also argues that the length of the Government's responsiveness review "infringes on the defendant's due process rights and compromises counsel's ability to provide effective assistance." (Dkt. 93 at 4). That is simply not the case.

First, the defendant has had images of 26 of the Electronic Devices since April 5, 2021, and the ability to review the physical evidence in person since his arrest. Based on conversations with the defense, the Government understands that Federal Defenders has Axiom, as well as other forensic-review platforms. By January 5, 2022, the defense will thus have had approximately nine months to review the images of the 26 Electronic Devices and approximately 15 months to review the physical evidence, including the Electronic Devices, in person—without seven months

dedicated to a privilege review.   Second, the defense will have the responsive materials approximately four months before trial, which is more than enough time to prepare for trial.  In *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998), the defendant was charged in connection with his participation in the plot to bomb the World Trade Center.  *Id.* at 158.  The Second Circuit held that the defendant's right to a fair trial was not violated where the defendant was appointed counsel less than three months before trial commenced, and the trial lasted six months and involved over 1000 exhibits and the testimony of more than 200 witnesses.  *Id.* at 108, 158.  Finally, the Government consents to a supplemental motions calendar that will allow the defense sufficient time to review the responsive materials and prepare motions limited to the responsive materials. *See Sosa*, 379 F. Supp. at 222 (finding searches to be reasonable when they were completed nearly three months prior to the defendant's scheduled trial)  Accordingly, the timing of the defendant's responsiveness review does not violate the defendant's due process rights.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's preemptive suppression motion, and allow the defense to file supplemental motions with respect to the responsive materials in early October 2021 after the Government has produced such materials.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by:  ___/s/_____
Jane Kim / Lara Pomerantz
Assistant United States Attorneys
(212) 637-2038 / 2343

cc:     Defense Counsel (By Email and ECF)