**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**UNITED STATES OF AMERICA,**                     :
                                                  :
                              **Government,**      :          **20 Cr 468 (RMB)**
                                                  :
**- against -**                                   :
                                                  :          <u>**ORDER**</u>
**ROBERT HADDEN,**                                :
                                                  :
                              **Defendant.**       :
-------------------------------------------------------------x

By motion dated August 2, 2021 ("Def. Motion"), and reply dated September 15, 2021

("Def. Reply"), Defendant Robert Hadden moved for the following:

1.  To dismiss the indictment, or alternatively, for an evidentiary hearing, on the grounds that the Government's prosecution violates Defendant's due process rights because the New York County District Attorney ("DANY") is "orchestrating" the federal prosecution;

2.  To dismiss the indictment on the grounds that the Government's delay in indicting Defendant violated his due process rights;

3.  To preclude the Government from relying on DANY-gathered evidence, including Defendant's state guilty plea, on the grounds that DANY violated its plea agreement with Defendant;

4.  To exclude Defendant's state guilty plea (but not other DANY-generated evidence) on the grounds that Defendant's state guilty plea (i) was not voluntarily and intelligently made, barring its use under the Fifth Amendment, or (ii) was the result of ineffective assistance of counsel, barring its use under the Sixth Amendment;

5.  To transfer venue outside of the Southern District of New York.

By response dated September 2, 2021 ("Govt. Response"), the Government opposes each

branch of Defendant's motion.

For the following reasons, Defendant's motion is denied.

1. <u>Motion to dismiss indictment (or, in the alternative, for an evidentiary hearing) on the grounds that the Government's prosecution violates due process because it is being orchestrated by DANY</u>

   a. Introduction

Defense counsel argues that "[t]he factual overlap between the federal and state cases is extreme," and that one of the victims charged in the Government's indictment was also charged in DANY's indictment, and another victim in the Government's indictment was listed as a potential witness by DANY. (Def. Motion at 14-15.) Defense counsel also argues that, as a legal matter, "[t]he only element added by the federal charges is a jurisdictional one; the alleged wrongful conduct is the same. In state court, Mr. Hadden was charged with engaging in illegal sexual contact in violation of various New York statutes. In federal court, he is charged with enticing victims to travel across state lines for the purpose of violating those very same New York statutes." (Def. Motion at 15.)

Defense counsel acknowledges that "the Double Jeopardy Clause does not ordinarily apply to successive prosecutions by different sovereigns" (Def. Motion at 17) and that "the federal charges have one slightly different element than the DANY charges and thus might **not** be barred by the Double Jeopardy Clause regardless of the dual sovereignty issue" (Def. Motion at 18). Defense counsel argues that the Government's prosecution violates Defendant's Fifth Amendment right to due process of law under <u>Bartkus v. Illinois</u>, 359 U.S 121 (1959), which "carved out a narrow exception [to the dual sovereignty principle] that bars a second prosecution where one prosecuting sovereign can be said to acting as **a tool** of the other . . . or where the second prosecution amounts to a sham and cover for the first." (Def. Motion at 17 (<u>quoting United States v. Aboumoussallem</u>, 726 F.2d 906, 910 (2d Cir. 1984)).) Defense counsel states that "the procedural advantages the government has secured by bringing this second prosecution in federal court . . . when coupled with the unusual timing of this prosecution . . . create a

compelling inference that federal prosecutors are acting as a tool of the state," and "a full evidentiary hearing at which the government is required to demonstrate it is acting independently is warranted."  (Def. Motion at 24.)

The Government argues that Bartkus does not apply because its investigation and prosecution are independent of DANY.  (Govt. Response at 23.)  The Government also states that "an evidentiary hearing is not warranted here because the defendant has failed to satisfy his burden of showing that the Government's prosecution is a sham."  (Govt. Response at 28.)

b.  Legal Standard

"Double jeopardy does not bar successive prosecutions brought by separate sovereigns, unless the second prosecuting authority served as a 'tool' of, or 'cover' for, the first."  United States v. Lavanture, 102 F. App'x 198, 200 (2d Cir. 2004) (summary order) (citing Bartkus, 359 U.S at 123-24).  The Second Circuit has stated that the Bartkus exception to the dual sovereignty principle "is not triggered simply by cooperation between the two authorities," but rather "one government must have effectively manipulated the actions of the other government, so that the other government's officials retained little or no independent volition."  United States v. Burden, 600 F.3d 204, 229 (2d Cir. 2010) (citation omitted).  The exception "applies only in an extraordinary type of case."  United States v. Moreno-Diaz, 257 F. App'x 435 (2d Cir. 2007) (summary order).

c.  Analysis

The Court finds that defense counsel has failed to show that the Government's prosecution has been manipulated by DANY such that it is merely a "cover" for a second state prosecution of Defendant.  According to the Government:

- "In or about February 2020, the Government formally opened an investigation of the defendant with the Federal Bureau of Investigation ('FBI'). In or about September 2020, approximately nine months after beginning its investigation, the Government charged the

3

defendant with violations of federal law . . . . The Government's charging decision was based on, among other things, the weight of the evidence against the defendant; the nature, breadth, and duration of the defendant's criminal conduct; the number of victims abused by the defendant; the harm caused by the [alleged] abuse; the defendant's abuse of a position of power and authority in committing his crimes; the lenient state sentence the defendant received in connection with his sex abuse of two victims; and the vindication of other important federal interests." (Govt. Response at 3.)

- "The Government's investigation of the defendant has been independent of any other prosecuting office, including DANY. The Government did not initiate its investigation of the defendant based on a request or referral from DANY or from any other prosecuting office. The Government has not shared its evidence with any other prosecuting office nor has it conducted victim or witness interviews with any other prosecuting office. The Government's decision to charge the defendant was made independently by the U.S. Attorney's Office and the FBI. DANY was not involved in the Government's charging decisions." (Govt. Response at 3-4.)

- "During the course of its investigation, the Government identified and interviewed dozens and dozens of victims. The Government's understanding is that the majority of the victims had not been interviewed by DANY and instead were first interviewed by the Government in 2020. The Government also conducted interviews of additional witnesses and took other investigative steps before it was prepared to seek the Indictment in September 2020." (Govt. Response at 57.)

- "The U.S. Attorney's Office was not party to the State Plea Agreement nor did it encourage DANY to offer it." (Govt. Response at 25.)

Moreover, there is little overlap between Defendant's state and federal indictments. The Government states that only one of seven victims in the federal indictment was included in the state indictment, while one other federal victim had been listed as a witness by the state. (See Govt. Response at 12-13.) It appears that five of the seven federal victims were not involved in DANY's prosecution.

Defense counsel's attempt to portray DANY as "orchestrating" the federal prosecution relies in large part on what it characterizes as "unusual timing" of the Government's investigation, which began approximately eight years after the most recent conduct charged in the indictment and "after the Manhattan DA came under intense public pressure for its handling of the case in 2020 and publicly announced it was reopening its investigation." (See Def. Motion

at 1, 19-21.)  The inference defense counsel attempts to draw—that the Government is acting as DANY's tool—is far-fetched, speculative, conclusory, and utterly fails to support a <u>Bartkus</u> claim.  <u>See</u> <u>Aboumoussallem</u>, 726 F.2d at 910 (rejecting <u>Bartkus</u> claim where defendant's "allegations fall far short of showing the sort of manipulation that could avoid the general rule [of dual sovereignty]"); <u>United States v. Jordan</u>, 870 F.2d 1310, 1317-18 (7th Cir. 1989) ("There is no evidence to indicate that any state official knew, when [defendant] pleaded guilty, that [defendant would later be federally prosecuted]. In short, [defendant's] claim that the federal authorities were used as a 'tool' by the State . . . is without factual support.").  There was no referral here from DANY to the Government, and even if there were, there is nothing improper about a state prosecutor's referral of a case to a federal prosecutor.  <u>See</u> <u>United States v. All Assets of G.P.S. Auto. Corp.</u>, 66 F.3d 483, 496 (2d Cir. 1995).  The Government denies that DANY asked it to investigate Defendant.  (Govt. Response at 23.)

Defense counsel's argument that any procedural advantages available to the Government "further[] the 'tool' inference" is similarly unpersuasive, speculative, and conclusory.  (<u>See</u> Def. Motion at 22-23.)  First, defense counsel asserts that the fact that the Government may be able to introduce Defendant's state guilty plea at trial indicates that DANY is using the Government as a tool.  (See id.)  Defense counsel offers no support for that argument, and courts have rejected it before.  <u>See</u> <u>Jordan</u>, 870 F.2d at 1317-18 (rejecting <u>Bartkus</u> claim where defendant's state guilty plea and other evidence gathered by state authorities was admitted in federal prosecution related to same conduct).  Second, defense counsel argues that, because New York's statute of limitations on sex crimes might have prevented DANY from prosecuting the crimes charged in the indictment, DANY must be orchestrating the federal prosecution.  (See Def. Motion at 20-21.)  That inference is also unsound, and courts have declined to draw it before.  <u>See</u> <u>United</u>

States v. Bernhardt, 831 F.2d 181, 181 (9th Cir. 1987) (rejecting Bartkus claim where federal indictment followed dismissal of state indictment on statute of limitations grounds).  Third, defense counsel contends that, because the state plea agreement may have prevented DANY from prosecuting counts 2 or 5 of the federal indictment, the Government's prosecution is merely a cover for DANY.  (See Def. Motion at 20.)  That inference is unfounded as well.  DANY's plea agreement does not bind the U.S. Attorney's Office.  United States v. Annabi, 771 F.2d 670, 672 (2d Cir. 1985) (per curiam) ("A plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction.").

Finally, DANY's sharing of case files and its public statement that it provided "substantial assistance" to the federal prosecution do not suggest that DANY is manipulating the Government.  (See Def. Motion at 16.)  Cooperation "is the conventional practice between the two sets of prosecutors throughout the country."  Bartkus, 359 U.S. at 123.

And, because defense counsel has offered only (far-fetched) speculation regarding any improper cooperation between the Government and DANY in this case, Defendant's request for an evidentiary hearing on his Bartkus claim is also denied.  See United States v. Russotti, 717 F.2d 27, 31 (2d Cir. 1983) (rejecting argument that defendants were entitled to hearing on Bartkus claim where they "offered little in the way of proof of federal orchestration of the state murder trial other than the barest conclusory allegations"); United States v. Scala, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005) ("[Defendant's] speculation as to government motives is insufficient . . . to warrant a hearing."); United States v. Valentin, No. 3:14-CR-55 (VLB), 2016 WL 1296903, at *1 (D. Conn. Mar. 30, 2016) ("[defendant] is not entitled to an evidentiary hearing unless he can offer at least a scintilla of evidence in support of his assertion").

2. <u>Motion to dismiss on the grounds that the Government's pre-indictment delay violated due process</u>

    a. Introduction

Defense counsel argues that the DANY indictment filed in 2014 put the Government on notice of Defendant's alleged conduct, and that the six years between the state and federal indictments "prejudiced Mr. Hadden by resulting in significant, negative pre-trial publicity accompanied by multiple civil lawsuits with growing numbers of plaintiffs, and the unavailability of defense witnesses who would have provided exculpatory testimony." (Def. Motion at 33.) "[P]roof of prejudice must be definite and not speculative." <u>United States v. Birney</u>, 686 F.2d 102, 105-06 (2d Cir. 1982).

The Government counters that Defendant has failed to establish that the alleged pre-indictment delay caused any actual prejudice to his defense or was designed to gain a prosecutorial advantage. "The Government obtained the Indictment less than a year after opening its investigation and less than a year after certain of the Victims with information critical to the pending charges came forward." (Govt. Response at 49-50.)

    b. Legal Standard

The Government's indictment was brought within the applicable statute of limitations and therefore carries "a strong presumption of validity." <u>United States v. Cornielle</u>, 171 F.3d 748, 752 (2d Cir. 1999). Defendant "bears the heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose." <u>Cornielle</u>, 171 F.3d at 752.

    c. Analysis

Defendant has failed to show that he was prejudiced by any pre-indictment delay. Defense counsel states that two former colleagues and instructors of Defendant have died in the last year and a half, thus depriving Defendant of their potential testimony that his "examinations

7

were conducted in accordance with the standard of care." (Def. Motion at 36.) However, "[c]ourts have generally found that vague assertions that a deceased witness might have provided favorable testimony do not justify dismissing an indictment for delay." United States v. Maxwell, No. 20 Cr. 330 (AJN), 2021 WL 1518675, at *9 (S.D.N.Y. Apr. 16, 2021); accord United States v. Merced, No. 19 CR. 0832 (ER), 2021 WL 5647827, at *5 (S.D.N.Y. Nov. 30, 2021) (slip op.) (rejecting pre-indictment delay claim based on 30-year interval between alleged conduct and indictment where defendants' "conjectures" about lost testimony of unavailable eyewitnesses were too "speculative" to show actual prejudice); United States v. Wey, No. 15-CR-611 (AJN), 2017 WL 237651, at *14 (S.D.N.Y. Jan. 18, 2017) (rejecting pre-indictment delay claim based on four-year interval between government searches and indictment where "the unsubstantiated—and unsworn—representation of counsel that the [potentially unavailable witness] would undoubtedly exculpate [defendant]" was insufficient to meet "heavy burden to show actual prejudice"); United States v. Scala, 388 F. Supp. 2d 396, 399-400 (S.D.N.Y. 2005) ("Counsel's unsworn assertions as to vague generalities" that witnesses, "if alive, would give testimony helpful to [the defendant] do not show that [the defendant's] ability to present a defense has been substantially and actually prejudiced.").

Moreover, the deceased witnesses' testimony, as described by defense counsel, would not have been exculpatory because those witnesses apparently were not present during the examinations implicated in the indictment. See United States v. Pierre-Louis, No. 16 Cr. 541 (CM), 2018 WL 4043140, at *4 (S.D.N.Y. Aug. 9, 2018) (finding no prejudice to defendant from death of potential witness during alleged nine-year pre-indictment delay because "[u]nless [the deceased witness] was with [defendant] every moment between 1998 and 2007, it would be impossible for him to testify that defendant did not commit the charged crimes . . . ."); id.

("[E]ven when a claim of prejudice is based upon the complete loss of a witness's testimony or other evidence, a defendant nevertheless must show how that testimony or evidence would have affected the outcome or otherwise have assisted the case.").  Defense counsel does not contend that there are no other witnesses who can testify to the appropriateness of Defendant's examination practices.  See United States v. Baptiste, 84 F. App'x 153, 155 (2d Cir. 2004) (summary order) (witness's death prior to trial "does not constitute actual prejudice because the availability of other evidence, including other witnesses, diminishes, or even eliminates, the prejudicial effect of a witness' unavailability"); Pierre-Louis, 2018 WL 4043140, at *4 ("Courts have held that the defendant also has the burden of showing that the lost testimony or information was not available through other means."); Wey, 2017 WL 237651, at *15 (no actual prejudice where testimony of potentially unavailable witness could be replaced by other evidence "go[ing] to substantially the same point").

Defense counsel's claim that Defendant has been prejudiced by pre-indictment publicity is not persuasive.  *Voir dire* is sufficient "to ensure that the pretrial publicity in this case does not compromise [Defendant's] right to a fair and impartial jury."  Maxwell, 2021 WL 1518675, at *9.

Defense counsel also fails to show that any delay was for an improper purpose.  Any inference that the Government's (alleged) delay was for an improper purpose is undermined by the fact that much of the conduct alleged in the federal indictment was not alleged in the DANY indictment.

Because the indictment was brought within the statute of limitations and because Defendant has not shown any improper purpose or actual prejudice, his pre-indictment delay claim fails.  The motion to dismiss is denied.

3. <u>Motion to preclude DANY-gathered evidence (including Defendant's state guilty plea) on the grounds that DANY violated its plea agreement with Defendant</u>

    a. Introduction

Defense counsel argues that the Government "should be precluded from relying on evidence obtained by the DANY," including Defendant's state guilty plea, because DANY breached its plea agreement with Defendant, and therefore the Government "should not benefit from the broken promises made by the DANY." (Def. Motion at 24-28.) Defense counsel states: "DANY breached the spirit of its agreement and Mr. Hadden's reasonable expectations in (a) making a public announcement that it was reopening its investigation of Mr. Hadden without any basis in law for doing so, apparently spurring a federal investigation and (b) sharing its files with federal prosecutors so that they could pursue charges DANY had promised not to pursue." (Def. Motion at 26.)

    The Government responds that Defendant should have sought relief for DANY's alleged breach of the plea agreement (and for any involuntary waiver and ineffective assistance of counsel claims) in New York state court. (Govt. Motion at 30.) Defendant's breach claim fails on the merits because, among other things, Defendant's plea agreement did not bar DANY from sharing its evidence with the Government. (Govt. Motion at 45.)

    b. Legal Standard

Plea agreements "are construed according to contract law principles." <u>United States v. Pollack</u>, 91 F.3d 331, 334 (2d Cir. 1996). "In determining whether any particular plea agreement has been breached, we look to the reasonable understanding of the parties, and resolve any ambiguities in the agreement against the government." <u>United States v. Rodgers</u>, 101 F.3d 247, 253 (2d Cir. 1996).

    c. Analysis

The Court finds no merit to the defense claim that DANY breached the state plea agreement.  The plea agreement contains no obligation that DANY would not make public announcements concerning Defendant or share information with other prosecuting offices.  (See Ex. 5 to Def. Motion).

The Second Circuit has held that, where a plea agreement is in writing, "a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach."  In re Altro, 180 F.3d 372, 376-77 (2d Cir. 1999) (where plea agreement did not address defendant's obligation to testify, government did not breach plea agreement by seeking to compel defendant's testimony notwithstanding defendant's understanding that plea agreement shielded him from having to testify); id. ("[w]e decline to require the Government to anticipate and expressly disavow every potential term that a defendant might believe to be implicit in [a plea] agreement"); accord United States v. Jordan, 870 F.2d 1310, 1316 (7th Cir. 1989) (rejecting claim that state prosecutors breached state plea agreement because "state prosecutors [] did not promise [defendant] anything regarding federal prosecution or the use of his state guilty plea in federal court"); United States v. Callahan, No. 213CR00453S1ADS, 2020 WL 108452, at *7 (E.D.N.Y. Jan. 9, 2020) (where plea agreement did not provide for credits reducing defendant's sentence, "Defendants' subjective and unilateral understanding that they would be entitled to additional credits" could not support a breach claim).  The Court need not inquire into the reasonability of Defendant's purported understanding.  See In re Altro, 180 F.3d at 376 ("[I]t is irrelevant whether [defendant] plausibly could have believed that he would be exempt from testifying, because any such unilateral understanding would be insufficient to supplement the terms of the written plea agreement."); In re Grand Jury Proc., 819 F.2d 984, 987 (11th Cir. 1987) (where plea agreement did not address defendant's obligation to provide testimony,

government did not breach agreement by compelling defendant to testify even though "the government arguably misled [defendant] and . . . [defendant] plausibly misunderstood the plea agreement").

Defense counsel has offered no evidence that Defendant (or DANY) believed that the plea agreement barred DANY from making public statements or sharing information at the time Defendant allocuted to his plea.

The motion to preclude the Government from relying on evidence that it received from DANY is denied.

4. Motion to exclude Defendant's state guilty plea on the grounds that (i) it was not voluntarily and intelligently made; or (ii) it was the result of ineffective assistance of counsel

a. Introduction

Defense counsel argues that Defendant's state guilty plea should be excluded from trial on two independent constitutional grounds: (i) his plea was not voluntarily and intelligently made (barring its use under the Fifth Amendment); and (ii) his state court counsel was ineffective (barring its use under the Sixth Amendment). (Def. Motion at 28.) Defendant allegedly "was not warned by the state court judge or counsel that his plea could be used against him in a subsequent federal prosecution." (Id.)

The Government argues that "[t]he record establishes that the defendant's State Guilty Plea was voluntarily and intelligently made" and that "overwhelming federal precedent dictates that a defendant need not be informed of the possibility of federal prosecution for a state plea to be voluntary or for a defendant to have received effective assistance of counsel." (Govt. Response at 30.) The Government also notes that Defendant has never moved to withdraw his guilty plea in state court, where it was made. (Id.)

b.   Legal Standard

"[A] defendant can make an intelligent and voluntary guilty plea satisfying due process if he is fully aware of the direct consequences of a guilty plea. . . . [However,] district courts need not inform a defendant of collateral consequences during the plea colloquy."  United States v. Youngs, 687 F.3d 56, 60 (2d Cir. 2012) (citations omitted).  "[D]irect consequences are those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment, and any other consequence is merely collateral."  Id.

To prevail on an ineffective assistance of counsel claim, a defendant must (i) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (ii) "affirmatively prove prejudice" from counsel's alleged negligence.  Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984).

c.   Analysis

The Court finds that Defendant's state guilty plea appears to have been knowingly and voluntarily made.  During the state court's plea colloquy, Defendant answered the following questions in the affirmative: "Have you discussed this case with your attorney?"; "have you had sufficient time to thoroughly discuss your decision to pled [sic] guilty?"; "Are you pleading guilty because you are guilty of the charges?"; "You understand that by pleading guilty you are waiving your constitutional rights which include your right to trial by jury . . . ?"; "You understand the charges you are pleading guilty to . . . ?"  (Dkt. 16 at 5-7 (Transcript of state plea proceeding).)  The state court judge was not required to warn Defendant about the potential use of his guilty plea in a subsequent federal prosecution.  Such a consequence is collateral, not direct.  See, e.g., Jordan, 870 F.2d at 1317-18 ("[T]he possibility of federal prosecution was not a direct consequence of the plea" because "federal prosecution was only a possibility, over which the State's Attorney had no control, when [defendant] pleaded guilty in state court"); United

States v. Ayala, 601 F.3d 256, 270 (4th Cir. 2010); United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997); United States v. Maestas, 941 F.2d 273, 279 (5th Cir. 1991). The Second Circuit has suggested that it would agree with the other circuits by rejecting the claim that a guilty plea was not knowing and voluntary where the district judge accepted the plea without advising the defendant that he might face civil commitment following the completion of his prison sentence. See Youngs, 687 F.3d at 63.

There is no basis to conclude that Defendant's state court counsel was ineffective. Defense counsel's motion does not identify a single case in which counsel was found to be ineffective for failing to advise a client that his state court guilty plea could be introduced in a later federal prosecution. The claim also lacks factual support. Defendant's state court counsel served as an assistant district attorney at DANY and has practiced as a criminal defense lawyer for more than three decades. (Govt. Response at 44.) Her declaration states that she "did not advise Mr. Hadden that he might be prosecuted federally for the conduct that was the subject of the state prosecution," but it fails to state that she did not advise Defendant that his plea might be used in a federal prosecution concerning other conduct. (See Ex. 73 to Def. Motion (Declaration of Isabelle A. Kirshner).)

Moreover, Defendant has not shown "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (announcing standard for satisfying prejudice prong of Strickland test where ineffective assistance claim is premised on guilty plea). While DANY charged Defendant with nine counts of sex-related crimes involving six victims, Defendant pled guilty to only two counts involving two victims, and he avoided incarceration. (Govt. Response at 6); see Jordan, 870 F.2d at 1319 (rejecting ineffective assistance of counsel claim premised on

14

defense counsel's failure to advise defendant that his guilty plea could be used against him in federal court where state dismissed two related charges and recommended minimum statutory sentence as part of plea agreement).  And, according to defense counsel, when Defendant pled guilty in state court "[n]either he nor his lawyers had any reason to anticipate a federal prosecution" (Def. Motion at 25), undermining the proposition that Defendant would have rejected DANY's plea offer based on the mere possibility that his plea could be introduced in a later federal prosecution.

The motion to exclude Defendant's state guilty plea is denied.

5.  <u>Motion to transfer venue out of the Southern District of New York</u>

a.  Introduction

Defense counsel concedes that the standard for a change of venue is "high" (Def. Motion at 54), but counsel argues that "key factors . . . render this case extraordinary: (1) the press coverage, political campaigning, and lobbying concerning Mr. Hadden have been unusually localized in this District . . .; (2) the coverage, campaigning and lobbying have assumed Mr. Hadden's guilt to an atypical degree; and, (3) victims who appear likely to testify for the prosecution at trial have been the source of a significant number of public accounts about the case, many of them involving inadmissible victim impact statements . . . ."  (Def. Reply at 17-18.)

The Government responds (persuasively) that defense counsel "dramatically overstates the volume and reach of the pretrial publicity in this case, and has failed to show that this publicity has so prejudiced the five-million-strong jury pool in this District such that the Court would be unable to seat an impartial 12-person jury."  (Govt. Response at 59-60.)  This district "is regularly the venue for high-profile trials" and "the Court can adequately address any

arguable effects of pretrial publicity through its careful *voir dire* and jury instructions." (Govt. Response at 60.)

  b. Legal Standard

Federal Rule of Criminal Procedure 21(a) provides that, "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." "[T]he defendant must show a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial." United States v. Maldonado-Rivera, 922 F.2d 934, 966-67 (2d Cir. 1990). The inquiry "turns not on the venire's mere exposure to pretrial publicity but rather on the actual prejudgment by the venire of the issues to be decided in the case." United States v. Skelos, 988 F.3d 645, 659 (2d Cir. 2021).

  c. Analysis

The Court finds that there is no basis to transfer venue. First, "the pretrial publicity here was not so pervasive and prejudicial as to have created a reasonable likelihood that a fair trial could not be conducted." United States v. Sabhnani, 599 F.3d 215, 233 (2d Cir. 2010); accord Maldonado-Rivera, 922 F.2d at 966-67. Defense counsel asserts that much of the media attention directed toward Defendant was connected to coverage of the Manhattan District Attorney race (see Def. Motion at 63); less than half of the SDNY jury pool lives in Manhattan (see Def. Reply at 20).

And, defense counsel has not shown that the venire has prejudged the issues to be decided in the case. While asserting that "[n]ews stories and political campaigns universally have assumed his guilt" (Def. Reply at 22), defense counsel has not presented any facts, surveys, or public opinion data demonstrating the jury pool's awareness, much less prejudgment, of Defendant's case. Courts have rejected venue transfer motions where evidence of the venire's

16

prejudgment was more substantial.  See, e.g., Knapp v. Leonardo, 46 F.3d 170, 176-77 (2d Cir.

1995) (finding no manifest error in state trial court's determination that jury was impartial despite

contention in defendant's habeas petition that 83% of veniremen were excused because they had

prejudged the case); United States v. Campa, 459 F.3d 1121, 1143 (11th Cir. 2006) (en banc)

(affirming denial of motion to transfer venue of accused Cuban spies from Miami despite alleged

pervasive prejudice against Cuban government within district); United States v. Higgs, 353 F.3d

281, 308–09 (4th Cir. 2003).

      The Court will take all appropriate measures to safeguard Defendant's right to a fair and

impartial jury.  See Maxwell, 2021 WL 1518675, at *9.

      The motion to transfer venue is denied.


      Dated: New York, New York
           December 15, 2021

_RMB_

**RICHARD M. BERMAN, U.S.D.J.**