

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 21, 2021

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Robert Hadden,**
            **S1 20 Cr. 468 (RMB)**

Dear Judge Berman:

      Trial is scheduled to commence in this case on March 28, 2022. The Government respectfully submits this letter in opposition to the defendant's request that the Court administer a juror questionnaire to prospective jurors in this case. (Dkt. 138 ("Def. Ltr.")). For the reasons set forth below, a juror questionnaire is neither warranted nor appropriate here and would only needlessly prolong and delay the jury selection process. The Court can and "will take all appropriate measures to safeguard the Defendant's right to a fair and impartial jury" by, among other things, conducting a proper *voir dire* and providing appropriate jury instructions. (Dkt. 140 at 17 (Court's Opinion denying defendant's non-suppression motions)). The defendant's motion should be denied.

      **I.**      **Applicable Law**

      "[T]he obligation to impanel an impartial jury lies in the first instance with the trial judge." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). It is well-established that because federal judges "must rely largely on [their] immediate perceptions" to impanel an impartial jury, district courts "have been accorded ample discretion in determining how best to conduct the *voir dire*." *Id.* (citing cases); *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (same); *see also United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). Accordingly, "[w]hether to use a jury questionnaire is within the discretion of the Court." *United States v. Tomero*, 486 F. Supp. 2d 320, 324-25 (S.D.N.Y. 2007) (citing cases); *see also, e.g.*, *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (court did not abuse discretion in denying request for juror questionnaire); *United States v. Salameh*, 152 F.3d 88, 120-21 (2d Cir. 1998) (same). The Second Circuit thus "will not interfere with the manner in which the district court has chosen to conduct voir dire unless an abuse of discretion is 'clear.'" *Treacy*, 639 F.3d at 46.

## II. Discussion

A juror questionnaire in this case is neither warranted nor necessary and would be cumbersome, inefficient, and could hinder jury selection. The defendant's right to a fair trial and to a fair jury "will be protected adequately even without use of a jury questionnaire" through a proper *voir dire* and jury instructions. *Tomero*, 486 F. Supp. 2d at 325. For the following reasons, the Court should exercise its sound discretion to deny the defendant's request for a juror questionnaire.

*First*, a juror questionnaire is not necessary or warranted in this case. In this District, juror questionnaires traditionally have been used in an extremely limited number of exceptional cases. For instance, courts have used written questionnaires in extraordinary cases in which a large number of prospective jurors might need to be screened, whether because of the exceptionally high-profile nature of the case, *see, e.g.*, *United States v. Rahman*, 189 F.3d 88, 121-22 (2d Cir. 1999) (discussing the use of a written jury questionnaire in the trial of individuals charged with, among other things, providing support to the individuals responsible for the 1993 World Trade Center bombing), as a result of the decision to empanel an anonymous jury, *see, e.g.*, *United States v. Thai*, 29 F.3d 785, 800-01 (2d Cir. 1994) (discussing the use of a written jury questionnaire in selecting an anonymous jury as a result of, among other things, two defendants having threatened and killed a civilian witness), in cases involving exceptionally extensive pre-trial publicity, *see, e.g.*, *United States v. Stewart*, 433 F.3d 273, 303-04 (2d Cir. 2006) (discussing the use of a written jury questionnaire in the criminal trial of Martha Stewart), and in capital cases, *see, e.g.*, *Quinones*, 511 F.3d at 299-300 (discussing the use of a written jury questionnaire in a case in jurors were asked to deliberate, following a penalty phase, as to whether or not to impose the death penalty).

The defendant points to two recent cases in which juror questionnaires have been used: *United States v. Ghislaine Maxwell*, S2 20 Cr. 330 (AJN), and *United States v. Michael Avenatti*, S1 19 Cr. 373 (PGG).[1] The defendant contends that a juror questionnaire is appropriate because this case has "garnered significant pre-trial publicity." (Def. Ltr. at 1). But, as the Court has already recognized in denying the defendant's motion for change of venue, the defendant "dramatically overstates the volume and reach of the pretrial publicity in this case." (Dkt. 140 at 15). While this is certainly an important case involving numerous victims and very serious conduct, this case has garnered significantly less press coverage than Maxwell or Avenatti. Indeed, the Maxwell and Avenatti prosecutions have regularly (if not daily) appeared on the covers of national and international news sources like *The New York Times*, including with photographs of the defendants. Both Maxwell and Avenatti were public figures before they were criminally charged in this District. Avenatti, due to a prior representation of a client, received extensive publicity characterizing him as one of the "chief adversaries" of the then-President of the United

---

[1] Contrary to the defendant's assertion, the Government did not agree to the use of a juror questionnaire in *Avenatti*. Rather, the Government's position in the first *Avenatti* trial was that a juror questionnaire was not necessary. (Dkt. 90 at 1 n.1). Because the Court had granted the use of a juror questionnaire in the first *Avenatti* trial, the Government did not oppose the use of a questionnaire in the second (upcoming) *Avenatti* trial (*United States v. Avenatti*, 19 Cr. 374 (JMF)).

States.[2] And Maxwell's relationship with co-conspirator and financier Jeffrey Epstein, Epstein's criminal conduct, Epstein's death, and Maxwell's and Epstein's associations with other public figures have been regularly and repeatedly scrutinized in the media. Indeed, in 2020, Netflix released a documentary about Epstein, and in 2021, Amazon's Audible released a series on Maxwell. It is thus indisputable that pretrial publicity with respect to Maxwell and Avenatti has far exceeded that of the defendant. (*See, e.g.*, Def. Ltr. at 1-2 (citing reference to the defendant in a *New York Times* article, Twitter posts, and local news sources like the *New York Daily News* and the *Columbia Spectator*)).

This is simply not the kind of case in which a juror questionnaire is warranted. Judges in this District regularly impanel fair and impartial juries in cases involving sexual abuse, sexual exploitation, and enticement by conducting proper *voir dires* and providing adequate jury instructions. *See, e.g.*, *United States v. Purcell*, 18 Cr. 81 (DLC); *United States v. Kidd*, 18 Cr. 872 (VM); *United States v. Benjamin*, 18 Cr. 874 (JSR); *United States v. English*, 18 Cr, 492 (PGG); *United States v. Dupigny*, 18 Cr. 528 (JMF); *United States v. Almonte*, 16 Cr. 670 (KMW). This case is no different.

*Second,* the defendant's right to a fair and impartial jury can be adequately—indeed, best—protected through the Court's *voir dire* and jury instructions. Given that "some of the issues likely to arise in this [sex abuse] case may be regarded as sensitive by some prospective jurors," *Harding*, 273 F. Supp. 2d at 428-29, as a matter of common sense, it would be preferable for the Court in the first instance and in person to pose questions to potential jurors about potentially personal subject matter, including their views and potential experiences with sexual abuse. The Court's in-person *voir dire* is preferable to posing such sensitive questions to potential jurors through an impersonal written questionnaire calling for a formal written response. In-person questioning would also allow the Court and the parties to directly assess the jurors and their responses—and to ask follow-up questions on the spot. *See Rosales-Lopez*, 451 U.S. at 189.[3] The defendant requests a "careful approach to jury selection" that involves a "searching voir dire" and the opportunity "to ask targeted follow-up questions based on specific answers" provided by potential jurors. (Def. Ltr. at 3). Such a careful approach to jury selection can certainly be achieved through the Court's proper *voir dire*.

*Third*, a juror questionnaire would be cumbersome and inefficient. It would prolong jury selection and lead to an undue waste of judicial resources that is neither in the interest of the public or of the prospective jurors. If a juror questionnaire was administered in this case, the Government understands that the process would entail the following:

---

[2] *See, e.g.*, Emma Brown & Beth Reinhard, *Michael Avenatti Is Using Trump Tactics to Battle with Trump, a Strategy that Comes with Risks*, Washington Post (May 14, 2018), *available at* https://www.washingtonpost.com/politics/michael-avenatti-is-using-trump-tactics-to-battle-trump-some-say-that-may-hurt-his-client-stormy-daniels/2018/05/14/6ea957b2-553a-11e8-a551-5b648abe29ef_story.html.

[3] It is difficult to predict whether jurors would be more apt to respond openly and comprehensively to a written juror questionnaire or in-person.

(i) **The Juror Questionnaire.** Prospective jurors would come to the courthouse to read through and complete the juror questionnaires. <u>Approximately one to three trial days would be devoted to this step</u>. In *Maxwell*, this step took several days.

(ii) **Review of the Juror Questionnaires.** The Court would collect and distribute the juror questionnaires. The Court, the defense, and the Government would review the juror questionnaires in order to determine which jurors, if any, should be removed from the venire for cause.[4] <u>Depending on the length and volume of the questionnaires, a few days and potentially the greater part of a week would be devoted to this review</u>. In *Maxwell*, the Court distributed approximately 20,000 pages of juror questionnaires to approximately 694 prospective jurors. In *Avenatti*, the Court distributed approximately 840 pages of juror questionnaires for approximately 120 prospective jurors.[5]

(iii) **Oral *Voir Dire*.** Prospective jurors would then have to return to the courthouse again to begin the oral *voir dire*—a process that would likely involve follow-up questions to clarify the answers provided on the questionnaires. <u>This process could take a few hours or a few days depending on juror responses</u>.

The above three-step process would be particularly difficult to administer in light of COVID-19-related restrictions and precautions in place at the courthouse. The Government understands that the jury administration courtroom may not be available immediately upon request, and so potential jurors may not be able to physically return to the courthouse given space constraints immediately after their questionnaires have been submitted and/or reviewed by the Court and the parties.

Instead of the above process, an oral *voir dire* would eliminate the first two above steps. Jury selection would thus begin with the oral questioning of prospective jurors and the parties could propose juror strikes the same day. In contrast, implementation of a juror questionnaire could take upwards of at least a week and lead to the same outcome: the selection of a fair and

---

[4] The defendant contends that any juror who has "been exposed to inadmissible information, such as victim impact statements and the settlement of the civil case by Mr. Hadden's prior employers" should be removed from the venire for cause. (Def. Ltr. at 2). The Government does not agree. A potential juror's "exposure" to publicity about this case should not automatically disqualify that juror from service. Rather, the juror should be disqualified for cause if they have been prejudiced by such exposure and cannot fairly and impartially consider the evidence presented at trial. *See, e.g.*, *In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) (per curiam) ("Knowledge, however, does not equate to disqualifying prejudice. Distinguishing between the two is at the heart of the jury selection process."); *United States v. Salameh,* No. S5 93 Cr.0180, 1993 WL 364486, at *1 (S.D.N.Y. Sept. 15, 1993) (finding less than a year after the 1993 World Trade Center bombing that a jury in New York would be "willing to try this case with an open mind" and able to "render a decision based solely upon the evidence, or lack thereof," even if the jurors had heard of the bombing before) (conviction affirmed in *United States v. Yousef,* 327 F.3d 56, 155 (2d Cir.2003)).

[5] Certain of these pages of the juror questionnaires included case background and jury instructions.

impartial jury. (*See* Def. Ltr. at 3 (noting that juror questionnaire in *Avenatti* extended the jury selection process by at last one week)).

*       *       *

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's request for a juror questionnaire.

Respectfully submitted,

DAMIAN WILLIAMS<br>United States Attorney

By: /s/ _____
Jane Kim / Lara Pomerantz
Paul M. Monteleoni / Alexandra Rothman
Assistant United States Attorneys

cc: Defense Counsel (ECF)