**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
UNITED STATES OF AMERICA,

               Government,

-against-

ROBERT HADDEN,

               Defendant.
------------------------------------------------------------X

20 CR. 468 (RMB)

**DECISION & ORDER**

Defendant Robert Hadden's motion, dated November 22, 2021, seeks the suppression of evidence obtained from a laptop (the "Apple iBook") belonging to Hadden's deceased father that was seized on August 12, 2020, from his father's residence in Glen Cove, New York.[1]

The Court incorporates by reference the arguments counsel have raised in their motion papers and at oral argument, which was held on January 20, 2022. Based upon the written and oral record in this case, the Court denies the motion to suppress and finds that an evidentiary hearing is not warranted.

I. Background

FBI interview of Jennifer Hadden

Prior to the Glen Cove house search, on August 12, 2020, FBI agents conducted an interview of defendant Hadden's sister, Jennifer Hadden, and her partner, hereinafter referred to as "T.H." As memorialized in the Report of FBI Special Agent Aaron Spivack, dated August 18, 2020, Jennifer Hadden advised the FBI agents, as follows:

---

[1] Redacted versions of the motion papers and exhibits were filed on the public docket. Unredacted versions of the motion papers and exhibits were filed under seal.

1

- Jennifer's father, William Hadden, passed away in the summer of 2019, and the Glen Cove house and "all of his belongings were left to [Jennifer] and other family members to sort through, including her brother [defendant] Robert Hadden." (FBI Report dated August 18, 2020 at 1, ECF No. 134-8.) Jennifer said that "she was essentially the sole family member assuming the responsibility of cleaning out the house and organizing William's personal effects," and that she and T.H. "spent a lot of time going through William's belongings, which they boxed up and placed in the basement of the residence." (Id. at 1-2.) She also stated that the Glen Cove house had "sustained severe flood damage and required extensive repairs," for which Jennifer "fronted much of the cost." (Id. at 1.) Jennifer and T.H. had "unfettered access" to the house and "both frequent[ed] it." (Id. at 2.)

- Jennifer told the FBI agents that among William's belongings was a MAC laptop, *i.e.*, the Apple iBook, which she personally placed in a box in the basement of the Glen Cove house. (Id. at 1-2.) Jennifer "stated the laptop belonged to William, but [she] believe[d] [defendant Hadden], her nephew [], and her deceased brother had used it from time to time." (Id. at 1.) Jennifer knew that William had watched pornography on the laptop. (Id.) Jennifer stated that "the laptop had no current ownership" and that "she had just as much a right to it as anyone." (Id.) She "consented to allow the FBI access to the residence and to take and search the laptop." (Id. at 2.)

Seizure of the Apple iBook from the Glen Cove house

After the interview, on August 12, 2020, the FBI agents carried out the search of the Glen Cove house, as follows:

2

- The FBI agents met Jennifer and T.H. outside the locked gate of the gated community in which the Glen Cove house is located. (Id. at 2.) Jennifer entered a code to let the agents in. (Id.) Prior to entering the home, the FBI agents explained to Jennifer that her consent must be voluntary, and "that she must also have lawful access to the residence and the personal effects within." (Id.) Jennifer confirmed that she had lawful access and authority. (Id.) And, significantly, she signed a "CONSENT TO SEARCH" form provided by the agents, which states, among other things: "I have been asked by Special Agents of the [FBI] to permit a complete search of [the Glen Cove house]"; "I have been advised of my right to refuse consent"; "I give this permission voluntarily"; "I authorize the agents to take any items which they determine may be related to their investigation." The consent contains the signatures of Jennifer, T.H. (as witness), and one of the FBI agents, and is dated August 12, 2020, the day of the search. (FBI Consent to Search Forms at 1, ECF No. 137-7.)

- Once inside the house, Jennifer showed the agents around and escorted them to the basement, where Jennifer had placed all of the boxes containing William's belongings. (FBI Report dated August 18, 2020 at 2, ECF No. 134-8.) Upon entering the basement, the agents asked to whom the boxes belonged, and Jennifer "stated they were either [William's] or her own items." (Id.)

- The agents also asked if defendant Hadden "could have any personal items left behind." Jennifer "stated that she had gone through every inch of the residence and nothing of his was there." (Id.) Jennifer then located a nondescript box which contained the laptop and an unlabeled DVD, and again "confirm[ed] [she] had the lawful right to relinquish the laptop and DVD to the FBI." (Id.)

- Jennifer was provided with a second consent to search form, which she read and signed, allowing the agents to take and search the Apple iBook. (Id.) This second consent to search form was dated August 12, 2020 and titled "CONSENT TO SEARCH COMPUTER(S)." It stated, among other things: "I, Jennifer Hadden, have been asked by [the FBI] to permit a complete search . . . of any and all computers, [and] any electronic and/or data storage . . . described [as]: Mac A1055/iBook G4 [Apple iBook]; [and] One (1) blank (unlabeled) DVD and located at [the Glen Cove house], which I own, possess, control, and/or have access to"; "I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely and voluntarily"; "I authorize [the] Agents to take any evidence discovered during" the search, including "any associated data, hardware, software and computer peripherals." (FBI Consent to Search Forms at 2, ECF No. 137-7.) The form contains the signatures of Jennifer and one of the FBI agents, and specifies the location of the seized items as "Basement of residence." (Id.)

Warrant

After a preliminary search of the Apple iBook, the FBI agent sought and obtained a warrant from Southern District of New York Magistrate Judge Stewart D. Aaron to search the "Apple iBook . . . seized on August 12, 2020" from the Glen Cove House. (See Glen Cove Application and Warrant dated August 21, 2020 at 12 ¶¶ 15-17 and 21, ECF No. 137-1.) Images reviewed by the agent prior to obtaining the warrant revealed child pornography and image(s) that "suggests that [defendant] Hadden had more access to the [Apple iBook] than previously believed." (Id. at 12-13 ¶¶ 15-17.)

In his affidavit, sworn to on August 21, 2020, FBI Agent Spivack set forth his background and experience with the FBI. (Id. at 2-3 ¶ 1.) He described the investigation and the offenses alleged to have been committed by defendant Hadden. (Id. at 4-10 ¶¶ 5-13.) He also described the statements made by Jennifer Hadden in her interview, including, among other things, the following:

- Jennifer's late father, William Hadden, lived in Glen Cove, New York. William passed away in the summer of 2019, and his belongings were left to Jennifer and other family members, including defendant Hadden, to sort through. (Id. at 11 ¶ 14(a).)

- The Glen Cove house sustained severe flood damage and required extensive repairs. The family agreed to the repairs; Jennifer "fronted much of the cost of the repairs…" (Id. at 11 ¶ 14(b).)

- Jennifer and T.H. "have unrestricted access" to the Glen Cove house. They have spent many hours since William's death in the summer of 2019 going through his belongings. They placed belongings in boxes and stored them in the basement. Among other things, Jennifer placed the Apple iBook in a box in the basement. (Id. at 11 ¶ 14(c).)

- Defendant Hadden "and other family members helped with the review of [William's] belongings and removed from the residence any items that belonged to them. By the time [Jennifer] spoke with the FBI, [defendant] Hadden no longer had personal items left at the Glen Cove Residence." (Id. at 11 ¶ 14(d).)

- The Apple iBook belonged to William but before William's death, defendant Hadden and another relative had access to and used the Apple iBook. Jennifer knew that William watched pornography on the Apple iBook. Jennifer told the FBI agents that she "had just as much of a right to the [Apple iBook] as any other family member."

5

Defendant Hadden "and the rest of the surviving family members had already taken their personal belongings out of the Glen Gove Residence." (Id. at 11-12 ¶ 14(e).)

- On August 12, 2020, Jennifer provided the FBI with verbal and written consent to a search of the Glen Cove house and the Apple iBook. That day, the FBI agents met Jennifer and T.H. outside the locked gate of the gated community in which the Glen Cove house is located. Jennifer entered a code to open the gate. Prior to the FBI agents entering the Glen Cove house, Jennifer confirmed that she had lawful access to the house and the items therein. Jennifer signed a consent to search form for the Glen Cove house. (Id. at 12 ¶ 14(f).)

- The FBI agents entered the Glen Cove house, which Jennifer opened with a key, and were escorted by Jennifer and T.H. to the basement. Jennifer identified a box containing the Apple iBook and a DVD. Jennifer provided verbal and written consent to seize and search the Apple iBook and the DVD. (Id. at 11 ¶ 14(h).)

- After obtaining Jennifer's consent to search the Apple iBook, the FBI agent preliminarily reviewed its contents. (Id. at 12 ¶ 15.) The agent believed the device supported probable cause for a warrant, including child pornography, sexual exploitation of minors, enticement and inducement to engage in interstate travel, and travel in interstate commerce with intent to engage in illicit sexual conduct. (Id. at 3 ¶ 5 and 14 ¶ 18.)

Standing

The Government argues that defendant Hadden lacks standing to challenge the seizure and search of the Apple iBook because defendant Hadden "disclaimed his inheritance from his deceased father, including any right over the Glen Cove [house]." (The Government's

6

Memorandum in Opposition to the Defendant's Suppression Motions at 13, ECF No. 137.) Defendant Hadden submitted a sworn declaration in connection with his Reply Brief, dated December 15, 2021, stating: "I disclaimed my interest in [my father's] Trust in June 2020 shortly after disclaiming my interest in [my father's] Estate." (Declaration of Robert Hadden dated December 15, 2021 at ¶ 5, ECF No. 141-1.) As the Government stated at oral argument, Hadden's theory that he has a Fourth Amendment interest in the Apple iBook as estate property appears "fatally undermined by [his] declaration" affirming his disclaimer of his inheritance. (Transcript of Oral Argument at 53:25 – 54:3, January 20, 2022.) Defendant Hadden counters that he has standing because, among other reasons, he is the trustee of a trust that owns a 50 percent interest in the Glen Cove house. (See Defendant's Reply to Government's Opposition at 28, ECF No. 141).

**The Court assumes, without deciding, that defendant Hadden has standing.**

II.     Legal Standards Applied in this Decision & Order

The Court finds that Jennifer had apparent authority to consent to the search of the Glen Cove house and to the seizure and search of the Apple iBook.

"A warrantless police search of a defendant's private premises . . . is lawful if conducted pursuant to the consent, voluntarily given, of another person who has authority to consent by reason of that person's 'common authority over or other sufficient relationship to the premises.'" United States v. McGee, 564 F.3d 136, 138 (2d Cir. 2009) (quoting United States v. Matlock, 415 U.S. 164, 171 (1974)). "**Even if the person giving consent in fact lacked authority to do so, the consent may nonetheless validate the search if the person reasonably appeared to the police to possess authority to consent to the search.**" Id. at 139 (emphasis added). "The Supreme Court has explained that apparent authority to give consent 'must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises?'" Id. (quoting

7

Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)). The government bears the burden of establishing the reasonableness of the officers' belief by a preponderance of the evidence. United States v. Trzaska, 859 F.2d 1118, 1120 (2d Cir. 1988).

The record, referred to above, establishes that the Government has met its burden of proof in this case.

Nor is an evidentiary hearing warranted on these facts. "A defendant is not entitled to an evidentiary hearing in connection with a motion to suppress unless he can show that there are 'contested issues of fact going to the validity of the search.'" United States v. Martinez, 992 F. Supp. 2d 322, 325 (S.D.N.Y. 2014) (quoting United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992)). "To create a factual dispute, Defendants must [] submit a sworn affidavit from one with personal knowledge of the underlying facts. In the absence of such an affidavit . . . an evidentiary hearing is unnecessary." United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007).

Magistrate Judge Aaron, who issued a warrant on August 21, 2020, found probable cause to search the Apple iBook.[2] "In evaluating probable cause in any given case, a judge must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Raymonda, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotations omitted). "Due to this subjective standard, a reviewing court generally accords 'substantial deference to the finding of an issuing judicial office that probable cause exists,'

---

[2] Defendant Hadden concedes: "Notwithstanding the fact that the full search of the Father's Laptop was ultimately undertaken pursuant to a warrant, the legality of the seizure and search of the Father's Laptop hinges on the validity of the initial consent provided to the FBI by Mr. Hadden's sister." Defendant's Motion to Suppress Evidence Seized From His Deceased Father's Home ("Def.'s Mot.") at 1, ECF No. 134.

8

limiting the inquiry to whether the office 'had a substantial basis' for his determination." Id. at 113 (quoting United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993)).

III. The Court concludes that Jennifer Hadden had apparent authority to consent to the seizure and search of the Apple iBook.

The Court finds that the FBI agents reasonably believed Jennifer had authority to consent to the search of her deceased father's house and the seizure and search of the Apple iBook. "The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes . . . ." United States v. Matlock, 415 U.S. 164, 172 (1974) (citations omitted); see also discussion at pages 7-8, above. No ambiguity exists as to Jennifer's apparent authority over the Glen Cove house and Apple iBook.

Jennifer expressly represented that she had lawful, unfettered access to the Glen Cove house and the right to turn over the Apple iBook to the FBI to search. (See FBI Report dated August 18, 2020 at 2, ECF No. 134-8.) Among other things, Jennifer signed two separate consent to search forms, one for the Glen Cove house search and one for the Apple iBook search. (See FBI Consent to Search Forms, ECF No. 137-7.) In signing the computer consent to search form, Jennifer represented that: she owned, possessed, controlled, and/or had access to the Apple iBook; she had been advised of her right to refuse to consent to the search; she was giving her permission for the search "freely and voluntarily"; and, she authorized the agents to take any evidence discovered during the search, including "any associated data, hardware, software and computer peripherals." (Id. at 2.) See also United States v. Buitrago Pelaez, 961 F. Supp. 64, 68 (S.D.N.Y. 1997) (finding employee had apparent authority to consent to search where she signed consent form and "had personal access . . . and the ability to allow others" into areas searched).

In addition, in her interview prior to the Glen Cove house search, Jennifer stated that: she had "unfettered access" to the house; she "was essentially the sole family member assuming the responsibility of cleaning out and organizing" the items in the house; and, she frequently goes to the house in order to assist in repairs and cleaning. (FBI Report dated August 18, 2020 at 1-2, ECF No. 134-8.) See also United States v. Hunyady, 409 F.3d 297, 304 (6th Cir. 2005) (personal representative of estate of defendant's deceased father, which included deceased father's residence, had actual and apparent authority to consent to search of residence even though defendant was staying there at time of search); United States v. Gambina, 122 F.3d 1058, at *2 (2d Cir. 1997) (Table) (finding that defendant's sister who had keys to defendant's apartment, stayed there occasionally, and kept belongings there, had apparent authority to consent to search).

In her interview with the FBI agents, Jennifer also stated the Apple iBook belonged to her father and that she had "as much a right to the laptop as anyone." (FBI Report dated August 18, 2020 at 1-2, ECF No. 134-8.) Jennifer also stated that all the boxes in the Glen Cove basement "were either [her father's] or her own items." (Id. at 2.) She told the FBI agents that she "had gone th[r]ough every inch of the residence and nothing of [defendant Hadden's] was there." (Id.) See also United States v. Marandola, 489 F. App'x 522, 523 (2d Cir. 2013).

The Court also finds that an evidentiary hearing is unwarranted because defendant Hadden has not established a contested issue of fact going to the validity of the search. See Martinez, 992 F. Supp. 2d at 326. As the Government stated at oral argument, "defense counsel doesn't have an affidavit from a percipient witness," and there is "no factual dispute as to what [Jennifer] said to the agents." (Transcript of Oral Argument at 51:1-8, January 20, 2022.) Defense counsel's response that "we don't have access to all of the facts that were available to [the FBI agents] at the time" of the search is not persuasive. (Id. at 52:2-3.) "[I]t is not the Government's obligation to

prove its unchallenged factual assertions on [the defendant's] say-so." United States v. Cicuto, No. 10 CR. 138, 2010 WL 3119471, at *1 (S.D.N.Y. Aug. 6, 2010) (where defendant did not submit "an affidavit in support of his motion based on personal knowledge," the court found that a hearing was unnecessary. The court also held that third party had actual and apparent authority to consent to search).

IV. The Court defers to Magistrate Judge Aaron's finding of probable cause in issuing the warrant to search the Apple iBook.

Judge Aaron's finding of probable cause to search the Apple iBook is entitled to substantial deference. See United States v. Raymonda, 780 F.3d at 113. The warrant affidavit established probable cause by stating, among other things, that: Jennifer had "unrestricted access" to the Glen Cove house (see Glen Cove Application and Warrant dated August 21, 2020 at 11 ¶ 14(c), ECF No. 137-1); Jennifer provided the FBI with verbal and written consent to a search of the Glen Cove house and to the Apple iBook (id. at 12 ¶ 14(h)); prior to the FBI agents entering the Glen Cove house, Jennifer confirmed that she had access to the house and the items within (id. at 12 ¶ 14(g)); defendant Hadden and another relative had had access to and used the Apple iBook (id. at 11 ¶ 14(e)); after obtaining Jennifer's consent to search the Apple iBook, the agent started to review its contents and found child pornography and information suggesting that defendant Hadden had more access to the laptop than previously believed (id. at 12-13 ¶ 15-17).

Defendant Hadden does not argue that the warrant affidavit failed to establish probable cause to search the Apple iBook. See Def.'s Mot. at 1, ECF No. 134 ("Notwithstanding the fact that the full search of the Father's Laptop was ultimately undertaken pursuant to a warrant, the legality of the seizure and search of the Father's Laptop hinges on the validity of the initial consent provided to the FBI by Mr. Hadden's sister.")

Judge Aaron had more than a substantial basis to find probable cause to issue the warrant.

11

V.   Conclusion and Order

Defendant Robert Hadden's motion to suppress evidence seized from his deceased father's home (ECF No. 134) is denied. There is no basis to hold a hearing.

Dated: New York, New York
January 25, 2022

*Richard M. Berman*

**RICHARD M. BERMAN, U.S.D.J.**