ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -  x
                                 :
 UNITED STATES OF AMERICA        :
                                 :
            - v. -               :
                                 :
 ROBERT HADDEN,                  :
                                 :
            Defendant.           :
                                 :
- - - - - - - - - - - - - - - -  x

SUPERSEDING INDICTMENT

S2 20 Cr. 468 (RMB)

The Grand Jury charges:

## OVERVIEW

1.    As set forth herein, over more than a decade, ROBERT HADDEN, the defendant, sexually abused dozens of female patients, including multiple minors, under the guise of conducting purported gynecological and obstetric examinations at HADDEN's medical offices and at hospitals in Manhattan, New York.

2.    In particular, from at least in or about 1993, up to and including at least in or about 2012, ROBERT HADDEN, the defendant, enticed and induced multiple victims to travel to his medical offices in New York, at least in part for the purpose of subjecting them to unlawful sexual abuse. HADDEN used his position as a medical doctor at a prominent university (the "University") to make or to attempt to make his victims believe that the sexual abuse he inflicted on them was appropriate and medically necessary. HADDEN encouraged his victims to return to see him and often directed his victims to schedule follow-up visits on timelines he

set.  As a result, some of his victims attended many appointments with HADDEN over the course of multiple years, at which HADDEN repeatedly abused them.

3.  As a part and in furtherance of his scheme, ROBERT HADDEN, the defendant, enticed, induced, and caused multiple victims to return to appointments with him to be further sexually abused, knowing that in order to do so many of his victims would travel to HADDEN's offices in Manhattan, New York, from or through other states.

**FACTUAL BACKGROUND**

4.  At all times charged in this Indictment, ROBERT HADDEN, the defendant, was a medical doctor who worked at the University.  In particular, between at least in or about 1993 and in or about 2012, HADDEN was a practicing obstetrician/gynecologist ("OB/GYN") who maintained offices at University-affiliated hospitals and medical offices in Manhattan, New York.

5.  Between at least in or about 1993 and in or about 2012, ROBERT HADDEN, the defendant, abused dozens of his patients, including multiple minors.  HADDEN did so through a process that entailed developing a relationship with his victims and causing them to trust him, before engaging in a course of increasingly

2

abusive conduct, which HADDEN attempted to mask under the guise of legitimate medical care.

6.    In particular, ROBERT HADDEN, the defendant, typically used the following means and methods, among others, to facilitate his abuse:

a.    Although nurses and assistants were present for portions of HADDEN's appointments with patients, HADDEN frequently created opportunities to be alone with his victims. Among other things, HADDEN invited his victims to meet with him alone in his office, sent nurses and medical assistants out of the examination room for periods of time, and/or intentionally failed to tell nurses and medical assistants when he was going into examination rooms, so that he could be alone with his victims.

b.    Once alone with his victims, HADDEN attempted to develop a rapport with them and put them at ease by asking them questions about their personal lives and telling them about his own life and family.

c.    During these conversations, HADDEN frequently brought up inappropriate and medically irrelevant sexual topics without prompting from his patients. For example, HADDEN asked many of his victims detailed, inappropriate questions about their own sexual activities and sexual partners. HADDEN also offered unsolicited advice to some of his victims regarding such

inappropriate subjects as how to groom their pubic hair and how to masturbate or have orgasms.   In some instances, HADDEN made sexualized comments about his victims' physiques.

7.   After developing or attempting to develop a rapport with his victims, ROBERT HADDEN, the defendant, then began to engage in a course of physical sexual abuse of his victims under the guise of providing medical advice and/or medical care.   He did so by, among other things, engaging in the following conduct, which in the case of many victims became increasingly abusive over time:

a.   HADDEN   conducted   excessively   long   and sexualized breast exams on many of his victims.   In some instances, HADDEN conducted two breast exams on a victim in the same appointment, conducting the second breast exam typically after ensuring that no one else was present in the room with HADDEN and the victim.   Some of these breast exams included, among other things, HADDEN caressing or groping a victim's breasts, and pinching, twisting, or otherwise manipulating a victim's nipples.

b.   HADDEN conducted inappropriate "mole checks" on some of his victims during which his victims were fully nude at HADDEN's direction.   HADDEN used these "mole checks" as an excuse to reposition a victim while she was fully nude, and to touch a victim's breasts, buttocks, and/or genitals for HADDEN's sexual gratification.   When HADDEN conducted a full-body mole check on a

victim, HADDEN ensured that no one else was in the room with HADDEN and the victim.

      c.    HADDEN conducted pelvic exams on some of his victims during which HADDEN used his hands to touch a victim's clitoris, labia, vagina, and/or anus without a valid medical purpose.  In many of these instances, HADDEN ensured that no one else was in the room with HADDEN and the victim.

      d.    On multiple occasions, HADDEN conducted pelvic exams on victims during which HADDEN licked a victim's vagina. When HADDEN licked a victim's vagina, he ensured that no one else was in the room with HADDEN and the victim.

      8.    Through this process, ROBERT HADDEN, the defendant, sexually abused dozens of victims, including multiple minor victims, over many years.  Those victims' experiences included, but were not limited to, HADDEN touching a victim's breasts and nipples, touching a victim's buttocks, touching a victim's genitals, digitally penetrating a victim's genitals, and/or licking a victim's genitals — all without a valid medical purpose.

      9.    ROBERT HADDEN, the defendant, frequently targeted victims who were young and thus unlikely to have much, if any, experience with OB/GYNs prior to meeting HADDEN.  For many victims, HADDEN was their first gynecologist, and for others, HADDEN was their doctor during their first pregnancy.  In so doing, HADDEN

intentionally targeted victims who would not know what to expect during their exams with HADDEN, or who were less likely to challenge HADDEN when he made them feel uncomfortable. As a result, although some victims immediately identified HADDEN's conduct as abusive and never returned, many of his victims continued returning to see HADDEN, sometimes for multiple years, before realizing that his examinations were inappropriate, medically unnecessary, and sexually abusive.

10. To ensure that he could continue to abuse his victims, ROBERT HADDEN, the defendant, took various steps to cause and entice his victims to return to see him, knowing that certain of his victims would have to travel from or through other states to attend appointments with him, including appointments at which HADDEN sexually abused those victims. HADDEN enticed some of his victims to travel into New York from or through other states by using a number of means and methods, including but not limited to the following:

a. HADDEN selected how frequently and when a victim would have her appointments with him, typically directing the victim to schedule a follow up appointment at a particular time interval, and thereby causing the victim to travel interstate for her appointments. In some instances, HADDEN directed victims

to return at shorter intervals that were inconsistent with legitimate medical care.

b.   HADDEN used access to birth control to entice victims to travel into New York for appointments.  For example, HADDEN would provide a victim with free birth control, thereby enticing her to return for future appointments to obtain additional free birth control.  In other instances, HADDEN would only provide a victim with enough birth control to last a few months and required the victim to return for multiple appointments in a single year in order to obtain more birth control.

c.   Through conversations with the victims and a review of their medical files, among other ways, HADDEN knew at the time he caused and enticed his victims to return that certain of his victims would travel from or through a state other than New York to attend their appointments with HADDEN in Manhattan.

### INDIVIDUAL VICTIMS

11.  Among the dozens of victims sexually abused by ROBERT HADDEN, the defendant, were a minor female patient identified herein as Minor Victim-1 and adult female patients identified herein as Victim-1, Victim-2, Victim-3, Victim-4, Victim-5, Victim-6, and Victim-7.  In particular, and during

periods relevant to this Indictment, HADDEN engaged in the following acts, among others, with respect to these victims:

<u>Minor Victim-1</u>

12. Minor Victim-1 was a patient of ROBERT HADDEN, the defendant, from at least in or about 2010 up to and including in or about 2012. During the entire time Minor Victim-1 saw HADDEN as a patient, Minor Victim-1 lived in a state outside of New York. As a result, Minor Victim-1 traveled from out of state into New York for appointments with HADDEN. HADDEN knew that Minor Victim-1 traveled from another state to New York for her appointments.

13. ROBERT HADDEN, the defendant, knew that Minor Victim-1 was under the age of 18 at the time of her appointments with him, in part because HADDEN had delivered Minor Victim-1 at birth. As Minor Victim-1 approached and entered puberty, HADDEN repeatedly encouraged Minor Victim-1's parent to bring Minor Victim-1 in for appointments with HADDEN. As a result, Minor Victim-1 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

14. During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Minor Victim-1 through a course of conduct that lacked any valid medical purpose. For example, during one appointment with Minor Victim-1, after the nurse left the room, HADDEN instructed Minor Victim-1 to position

herself on her hands and knees on an exam table while fully nude. HADDEN then purported to examine her vagina and vaginal area.

15.   During multiple appointments with Minor Victim-1, ROBERT HADDEN, the defendant, conducted breast exams during which HADDEN groped Minor Victim-1's breasts and pinched her nipples.

16.   During one appointment with Minor Victim-1, ROBERT HADDEN, the defendant, conducted a vaginal exam during which HADDEN digitally penetrated Minor Victim-1 and intentionally touched her G-spot.

### Victim-1

17.   Victim-1 was a patient of ROBERT HADDEN, the defendant, from at least in or about 2000 up to and including in or about 2012.  In or about 2005, Victim-1 moved to a state outside of New York, where she lived for the remainder of her time as HADDEN's patient.  After leaving New York, Victim-1 traveled from out of state into New York for appointments with HADDEN.  HADDEN knew that Victim-1 traveled from another state to New York for her appointments.

18.   After many of Victim-1's appointments between 2005 and 2012, ROBERT HADDEN, the defendant, directed Victim-1 to return for her next appointment and provided Victim-1 with instructions on when to return.  As a result, Victim-1 continued to travel to

New York for the purpose of attending appointments with HADDEN on multiple occasions.

19.   During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Victim-1 through a course of conduct that lacked any valid medical purpose.  For example, in the majority of appointments with Victim-1, HADDEN conducted two breast exams.  During the exams, HADDEN pulled on and manipulated Victim-1's nipples.

20.   In or about 2012, Victim-1 traveled from the state of her residence to New York at the direction of ROBERT HADDEN, the defendant.  Victim-1 traveled to New York exclusively for that appointment with HADDEN.   During that appointment, HADDEN administered a vaginal exam, during which he licked Victim-1's vagina.

<u>Victim-2</u>

21.   Victim-2 was a patient of ROBERT HADDEN, the defendant, from at least in or about 1993 up to and including in or about 2012.  Beginning at least in or about 1997, Victim-2 resided outside of the state of New York, where she lived for the remainder of her time as HADDEN's patient.  As a result, between approximately 1997 and 2012, Victim-2 traveled from out of state into New York for appointments with HADDEN.  HADDEN knew that

Victim-2 traveled from another state to New York for her appointments.

22.  After many of Victim-2's appointments between 1997 and 2012, ROBERT HADDEN, the defendant, directed Victim-2 to return for her next appointment and provided Victim-2 with instructions on when to return.  As a result, Victim-2 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

23.  During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Victim-2 through a course of conduct that lacked any valid medical purpose.  For example, in the majority of appointments with Victim-2, HADDEN conducted two breast exams.  HADDEN usually conducted the first breast exam in the presence of a nurse, but he conducted the second breast exam when he was alone with Victim-2.  During the second breast exam at each appointment, HADDEN groped Victim-2's breasts and manipulated her nipples.

<u>Victim-3</u>

24.  Victim-3 was a patient of ROBERT HADDEN, the defendant, from at least in or about late 2011 up to and including in or about 2012.  In or about 2012, Victim-3 moved outside of the state of New York, where she lived for the remainder of her time as HADDEN's patient.  After leaving New York, Victim-3 remained

HADDEN's patient and traveled from out of state into New York for appointments with HADDEN.  HADDEN knew that Victim-3 traveled from another state to New York for her appointments.

25.  After many of Victim-3's appointments in 2012, ROBERT HADDEN, the defendant, directed Victim-3 to return for her next appointment and provided Victim-3 with instructions on when to return.  As a result, Victim-3 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

26.  During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Victim-3 through a course of conduct that lacked any valid medical purpose.  For example, during the majority of Victim-3's prenatal appointments, HADDEN conducted a breast exam on Victim-3, with one exception when a relative of Victim-3 was in the exam room.  During those breast exams, HADDEN groped Victim-3's breasts and touched her nipples.  At an appointment in or about 2012, after Victim-3 had given birth, HADDEN squeezed Victim-3's nipples to extract breast milk without a valid medical purpose.

Victim-4

27.  Victim-4 was a patient of ROBERT HADDEN, the defendant, from at least in or about 1998 up to and including in or about 2010.  During the entire period that Victim-4 was HADDEN's

12

patient, she resided in New York State but outside of New York City. When traveling from her residence to her appointments with HADDEN, Victim-4 routinely crossed into another state while traveling into Manhattan. HADDEN knew that Victim-4 traveled through another state to New York for her appointments.

28. After many of Victim-4's appointments, ROBERT HADDEN, the defendant, directed Victim-4 to return for her next appointment and provided instructions to Victim-4 on when to return. As a result, Victim-4 traveled through another state to Manhattan for the purpose of attending appointments with HADDEN on multiple occasions.

29. During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Victim-4 through a course of conduct that lacked any valid medical purpose. For example, during the majority of appointments with Victim-4, HADDEN conducted two breast exams. A nurse was generally present for the first exam. During the second exam, when a nurse was not present, HADDEN groped Victim-4's breasts and manipulated her nipples.

30. During the majority of appointments with Victim-4, ROBERT HADDEN, the defendant, also conducted vaginal exams, including when Victim-4 was pregnant. During those vaginal exams, HADDEN used his fingers to apply lubrication directly on the outside of Victim-4's vagina.

31. In or about 2010, Victim-4 traveled from her residence through another state to Manhattan at the direction of ROBERT HADDEN, the defendant. Victim-4 traveled through another state to Manhattan exclusively for the purpose of attending her appointment with HADDEN. During that appointment, HADDEN administered a vaginal exam, during which he licked Victim-4's vagina.

<u>Victim-5</u>

32. Victim-5 was a patient of ROBERT HADDEN, the defendant, from at least in or about 2002 up to and including in or about 2011. In or about 2003, Victim-5 moved to a state outside of New York, where she lived for the remainder of her time as HADDEN's patient. After leaving New York, Victim-5 remained HADDEN's patient and traveled from out of state into New York for appointments with HADDEN. HADDEN knew that Victim-5 traveled from another state to New York for her appointments.

33. After many of Victim-5's appointments between 2003 and 2011, ROBERT HADDEN, the defendant, directed Victim-5 to return for her next appointment and instructed Victim-5 on when to return. As a result, Victim-5 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

34. During these appointments, ROBERT HADDEN, the defendant, repeatedly sexually abused Victim-5 through a course of

conduct that lacked any valid medical purpose.  For example, during the majority of appointments with Victim-5, HADDEN conducted at least one breast exam, including when Victim-5 was pregnant.  At some appointments with Victim-5, HADDEN conducted two breast exams.  In or about 2009, during an appointment after Victim-5 had given birth, HADDEN conducted a breast exam and squeezed Victim-5's nipples to extract breast milk without a valid medical purpose.

<u>Victim-6</u>

35.  Victim-6 was a patient of ROBERT HADDEN, the defendant, from at least in or about 2008 up to and including in or about 2009, during which time Victim-6 resided in a state outside of New York.  As a result, Victim-6 traveled from another state to New York for her appointments with HADDEN.  HADDEN knew that Victim-6 traveled from another state to New York for her appointments.

36.  After many of her appointments with ROBERT HADDEN, the defendant, HADDEN directed Victim-6 to return for her next appointment and instructed Victim-6 on when to return.  As a result, Victim-6 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

37.  During at least two appointments, ROBERT HADDEN, the defendant, sexually abused Victim-6 through a course of conduct that lacked any valid medical purpose.  For example, HADDEN

conducted breast exams of Victim-6 in which he repeatedly pulled on and manipulated her nipples without a valid medical purpose. HADDEN also digitally penetrated Victim-6 without any valid medical purpose.

<u>Victim-7</u>

38.   Victim-7 was a patient of ROBERT HADDEN, the defendant, from at least in or about 2000 up to and including in or about 2011, during which time Victim-7 resided in a state outside of New York.  As a result, Victim-7 traveled from another state to New York for her appointments with HADDEN.  HADDEN knew that Victim-7 traveled from another state to New York for her appointments.

39.   After many of her appointments with ROBERT HADDEN, the defendant, HADDEN directed Victim-7 to return for her next appointment and instructed Victim-7 on when to return.  As a result, Victim-7 traveled to New York for the purpose of attending appointments with HADDEN on multiple occasions.

40.   During at least two appointments, ROBERT HADDEN, the defendant, sexually abused Victim-7 through a course of conduct that lacked any valid medical purpose.  For example, HADDEN touched

Victim-7's vagina with his fingers and licked Victim-7's vagina, both without any medical purpose.

## COUNT ONE
**(Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)**

The Grand Jury further charges:

41.  The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

42.  From at least in or about 2010, up to and including in or about 2012, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Minor Victim-1 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Minor Victim-1, in violation of New York Penal Law Sections 130.52 and 130.55.

(Title 18, United States Code, Sections 2422(a) and 2.)

## COUNT TWO
### (Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)

The Grand Jury further charges:

43.   The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

44.   From at least in or about 2005, up to and including in or about 2012, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-1 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Victim-1, in violation of New York Penal Law Sections 130.52, 130.55, and 130.40.

(Title 18, United States Code, Sections 2422(a) and 2.)

## COUNT THREE
### (Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)

The Grand Jury further charges:

45.   The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

46.   From at least in or about 1997, up to and including in or about 2012, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-2 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Victim-2, in violation of New York Penal Law Sections 130.52 and 130.55.

(Title 18, United States Code, Sections 2422(a) and 2.)

## COUNT FOUR
### (Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)

The Grand Jury further charges:

47.  The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

48.  In or about 2012, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-3 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Victim-3, in violation of New York Penal Law Sections 130.52 and 130.55.

(Title 18, United States Code, Sections 2422(a) and 2.)

## COUNT FIVE
### (Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)

The Grand Jury further charges:

49.  The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

50.   From at least in or about 1998, up to and including in or about 2010, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-4 to travel to New York, New York, through another state to engage or attempt to engage in unlawful sexual activity with Victim-4, in violation of New York Penal Law Sections 130.52, 130.55, and 130.40.

(Title 18, United States Code, Sections 2422(a) and 2.)

## COUNT SIX
### (Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)

The Grand Jury further charges:

51.   The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

52.   From at least in or about 2003, up to and including in or about 2011, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a

person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-5 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Victim-5, in violation of New York Penal Law Sections 130.52 and 130.55.

(Title 18, United States Code, Sections 2422(a) and 2.)

### COUNT SEVEN
**(Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)**

The Grand Jury further charges:

53.  The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

54.  From at least in or about 2008, up to and including in or about 2009, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-6 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with

22

Victim-6, in violation of New York Penal Law Sections 130.52 and 130.55.

     (Title 18, United States Code, Sections 2422(a) and 2.)

### COUNT EIGHT
**(Enticement and Inducement to Travel to Engage in Unlawful Sexual Activity)**

     The Grand Jury further charges:

     55.  The allegations contained in paragraphs 1 through 40 of this Indictment are repeated and realleged as if fully set forth within.

     56.  From at least in or about 2000, up to and including in or about 2011, in the Southern District of New York and elsewhere, ROBERT HADDEN, the defendant, knowingly did persuade, induce, entice, and coerce an individual to travel in interstate and foreign commerce to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, HADDEN persuaded, induced, enticed, and coerced Victim-7 to travel to New York, New York, from another state to engage or attempt to engage in unlawful sexual activity with Victim-7, in violation of New York Penal Law Sections 130.52, 130.55, and 130.40.

     (Title 18, United States Code, Sections 2422(a) and 2.)

## FORFEITURE ALLEGATION

57.   As a result of committing the offenses alleged in Counts One through Eight of this Indictment, ROBERT HADDEN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2428, any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offenses; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses and proceeds traceable to the commission of said offenses.

## Substitute Asset Provision

58.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third person;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e) has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C.
§ 853(p) and 28 U.S.C. § 2461(c), to seek forfeiture of any
other property of said defendant up to the value of the above
forfeitable property.

(Title 18, United States Code, Sections 981, 2428; Title 21,
United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

v.

**ROBERT HADDEN,**

Defendant.

---

**SUPERSEDING INDICTMENT**

S2 20 Cr. 468 (RMB)

(18 U.S.C. §§ 2422(a), 2.)

DAMIAN WILLIAMS
United States Attorney

_Foreperson_

---

6/1/22 Filed superseding indictment
USMJ closes
TK