**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

December 6, 2022

<u>Via ECF & E-mail</u>

The Honorable Richard M. Berman
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, New York 10001

      Re:    *United States v. Robert Hadden*, No. 20-cr-468 (RMB)

Dear Judge Berman,

      The defense writes to supplement two pending *in limine* motions based on the government's production of 18 U.S.C. § 3500 material: to exclude prior bad acts testimony and to limit the government's introduction of prior consistent statements.

      **<u>Prior "Bad Acts" Testimony Should be Excluded</u>**

      The defense supplements its pending request that the Court exclude the government's 24 proffered "bad acts" witnesses or, at a minimum, hold a pre-trial hearing as to those "bad acts" witnesses whose testimony is vague, uncorroborated or both. Def. Opp. To Gov't Mot. In Lim., ECF No. 177, at 25. A court may only allow the admission of bad acts evidence where "there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *United States v. Huddleston,* 485 U.S. 681, 685 (1988). The government cannot "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Id.* at 689. While a pretrial hearing is not always necessary for "bad acts" witnesses, denial of a hearing without sufficient proof to believe a jury could find the allegations credible is an abuse of discretion. *See United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1998). Vague and uncorroborated testimony by "bad acts" witnesses confuses the jury and violates due process. U.S. Const. amend. V.

      The government's reliance on *Huddleston* to argue that a hearing is unwarranted or "absurd" is misplaced. *See* Gov't Reply To Def. Opp. to Mot. In Lim., ECF No. 186, at 6 (citing *Huddleston,* 485 U.S. 681). In the wake of *Huddleston*, multiple Courts of Appeals, specifically

reviewing the admissibility of bad acts evidence pursuant to Rule 413, have found such a hearing to be appropriate.  *See* Def. Opp. to Govt's Mot. In Lim., ECF No. 177, at 27 (citing *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) ("the district court must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act and that it constituted an "offense of sexual assault" for purposes of Rule 413"); *United States v. Benally*, 500 F.3d 1085, 1088 (10th Cir. 2007) (trial court admitted evidence of a prior sexual assault under Rule 413 only after conducting an evidentiary hearing and concluding a jury could find by a preponderance of the evidence that the assault occurred); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998) (the district court deferred ruling on the admission of testimony under Rule 413 "until it had heard the testimony of the alleged Victim of the uncharged offense, which was the other similar-acts evidence offered, in closed proceedings.")).

This Court must find that a jury could reasonably determine that Mr. Hadden committed the prior bad acts by a preponderance of the evidence before admitting such evidence.  Vague allegations lacking any factual detail, support or corroboration cannot meet this standard and the Court should prohibit such testimony, or in the alternative, hold a hearing to determine what the evidence consists of.  In this case – where the government seeks to introduce twenty additional "bad acts" witnesses to testify about alleged additional abuse that does not violate federal law – unfair prejudice is not a risk, it is certain. The Court's review of such testimony and regulation of witnesses is critical to ensuring Mr. Hadden's right to a fair trial on the charges in the Indictment.

Specifically, having now received the 3500 material, the defense respectfully requests that the Court hold a pre-trial admissibility hearing as to the following proposed government witnesses: Minor Victim-3, Victim-27, Witness-1, and Witness-2.

**MINOR VICTIM-3.**  Minor Victim-3 claims that she saw Mr. Hadden for a single visit in 1992 – thirty years ago.  She first made an allegation of sexual abuse only after seeing Mr. Hadden's picture in the news in connection with a multi-million dollar civil lawsuit brought by former patients.  Minor Victim-3 has never testified before a grand jury, or under oath in any form.  There is not a single piece of documentation to corroborate that she was ever a patient of Mr. Hadden, no less was assaulted by him.  She is not listed on any patient log or appointment calendar, and there is no patient chart or record for her.  Indeed, New York Presbyterian Hospital has affirmatively indicated that no records exist for her.  The combination of Minor Victim-3's financial interest – complainants in the civil case stand to gain an average of roughly $1 million each based on settlements to date – and the lack of corroboration of her ever having been a patient of Mr. Hadden raise a sufficient possibility that her allegations of ever being treated by Mr. Hadden are fabricated; her allegations should, at a minimum, be tested by an evidentiary hearing prior to trial.

**VICTIM-27.** Victim-27 claims that Mr. Hadden sexually abused her on a single appointment in 2007.  This allegation was first made after the filing of the civil lawsuits.  There are no medical records from Columbia or New York Presbyterian pertaining to Victim-27.  Victim-27's name appears on a patient list for Mr. Hadden but with no information concerning her treatment.

**WITNESS-1**.  Witness-1 was a medical assistant at Columbia thirty years ago.  Based on the 3500 materials received, Witness-1 would testify regarding an inappropriate examination she claims to have witnessed Mr. Hadden conduct in the early 1990s, which she never documented or reported.  Witness-1 now says she contemporaneously told a colleague; but the interviews of that colleague by the FBI do not indicate that Witness-1 ever told her about such an examination by Mr. Hadden.  More importantly, Witness-1's accusations amount to nothing more than vague accusations that she saw Mr. Hadden do something wrong in an exam room on an unknown date sometime in a four-year time period involving an unknown patient.  These allegations are so vague that they are not capable of confrontation on cross-examination.

**WITNESS-2**.  Witness-2 was a medical assistant who assisted in the labor and delivery room and now believes she saw Mr. Hadden conduct an inappropriate vaginal exam during a vaginal delivery sometime in the "early 90s."  Witness-2 did not report her concerns, nor does she allege that she witnessed something clearly inappropriate (such as oral contact), nor does she explain how an inappropriate exam could occur in a context where multiple staff members are moving in and out of a labor and delivery room.  There is no information about the patient to whom this allegedly happened, not even race or approximate age.  This renders this allegation not susceptible to verification or cross-examination.

### Prior Consistent Statements Should Be Excluded

The government's production of 3500 materials suggests the government will seek to introduce numerous prior consistent statements of its witnesses and other forms of pure hearsay, contrary to the Federal Rules of Evidence.  Based on these witness statements, we write to supplement our opposition to the government's pending motion to exclude or limit the use of prior consistent statements.  Def. Opp. to Gov't Mot. In Lim., ECF No. 174, at 22-26.  The defense describes only the clearest examples below – witnesses whose entire testimony should be disallowed – and anticipates lodging additional objections at trial as needed.

To start: the government has included among the 3500 interviews of a person who has never had any interaction with Mr. Hadden.  Her only knowledge of the case derives from out-of-court hearsay statements from one of the indicted victims (Victim-3).  According to FBI reports, the witness met Victim-3, a former patient of Mr. Hadden's, in 2013, after Mr. Hadden had stopped practicing.  The woman would apparently testify that Victim-3 told her that Mr. Hadden conducted breast examinations at each of her prenatal appointments, and that Victim-3 told her she never questioned this frequency of exams because he was her first obstetrician.  This testimony serves no purpose other than to impermissibly bolster Victim-3's testimony.  As set forth in our initial opposition to the government's motion *in limine,* unless the defense brings out an inconsistent statement on this subject, or at least seeks to specifically undermine the claim that Mr. Hadden conducted breast exams at each appointment, there is no legal basis to introduce such bolstering testimony.  Victim-3 can testify herself as to the frequency of her breast exams and the reasons she never questioned their appropriateness.

Moreover, the statements the witness recounts were made by Victim-3 in 2013, 2014, 2019 and 2020, after Victim-3, a plaintiff in civil litigation against Mr. Hadden and Columbia,

had a motive to fabricate.[1]  As the government noted, ECF No. 178, at 24-25, Federal Rule of Evidence 801(d)(1)(B) was amended in 2014 to make clear that a prior statement may be introduced to rebut attacks on a witness other than recent fabrication.  Contrary to the government's assertion (*id.*), the Rules Committee made clear that this amendment did not eliminate the foundational requirement that the timing of the prior statement precede a motive to fabricate.  *Tome v. United States*, 513 U.S. 150 (1995).  "The amendment does not make any consistent statement admissible that was not admissible previously – the only difference is that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well."  Fed. R. Evid 801, Advisory Committee Notes to 2014 Amendment.  *See also United States v. Guerino,* 607 F. App'x 117, 118 (2d Cir. 2015) (stating timing requirement after 2014 amendment); *United States v. Mohamed,* No. 18-CR-603 (ARR), 2022 WL 15493545, at *8 (E.D.N.Y. Oct. 26, 2022) (same).

The government has also indicated it intends to call multiple witnesses to testify to hearsay statements from a patient who first contacted law enforcement in 2012 (Victim - 15), including (a) her boyfriend (Witness-3) at the time, who relayed her complaint in a 911 call, and (b) the police officer who spoke with her after the call and participated in processing Mr. Hadden's arrest.[2]  Notably, the government seeks to elicit Victim-15's hearsay statements in multiple other forms as well, specifically, by introducing the recorded 911 call from Witness-3, as well as texts between Victim-15 and another testifying patient, Victim-1, her friend.  The government is also seeking to introduce the defendant's state court guilty plea, which concerns this very same incident with Victim-15.

The introduction of multiple out-of-court statements raises the specter of the defendant in effect being tried by out-of-court statements rather than in-court testimony.  Even assuming, *arguendo*, the foundational requirements are met, the Court has "'discretion to exclude prior consistent statements that are cumulative accounts of an event.'" *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 558146, at *5 (S.D.N.Y. Feb. 24, 2022) (quoting 2014 Advisory Committee Notes).  It should do so here as a matter of fundamental fairness.

The patient will be able to give her account on the witness stand.  There is simply no basis for the government to call multiple witnesses to bolster her testimony.  At a minimum, the Court should reserve on this issue, as the Court did in *Ray*, to determine whether the prior statements have "'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'" *Id*. (quoting *United States v. Pierre*, 781 F.2d 329, 331 (2d Cir. 1986)).

---

[1] Civil litigation against Columbia and Mr. Hadden commenced in April 2013, *see* ECF No. 117, Ex. 68, and he was indicted by the New York County District Attorney in June 2014.  ECF No. 20.

[2] The government has not indicated it intends to introduce any post-arrest statements or evidence recovered from Mr. Hadden at the time of arrest, suggesting there would be no reason for the government to call a police witness other than to elicit hearsay, assuming the government agrees that the jury may not consider an arrest itself – particularly a voided arrest -- as evidence of guilt.

Finally, the government has included among its likely testifying witnesses a doctor (Witness-4) who began working at Columbia after Mr. Hadden had stopped working there in 2012 and provided care for approximately 10 of his prior patients.  Witness-4 advised the government that several unidentified patients confided in her as to "strange interactions" they had with Mr. Hadden.  One reported alleged discussions of sexual positions, another reported receiving a breast exam at each prenatal appointment, and a third stated that she had been sexually assaulted by Mr. Hadden.  Because Witness-4 cannot identify any of the patients who provided this information, her testimony could never qualify as a prior consistent statement; it is entirely unclear that the patients whom she is discussing will themselves testify.  Her testimony represents pure hearsay that should be excluded.

        Respectfully submitted,
        /s/
        Deirdre D. von Dornum
        Michael D. Weil
        Kathryn Wozencroft
        Federal Defenders of New York

cc:    Counsel of record (via ECF)
        Clerk of Court (via ECF)
        Mr. Robert Hadden