LAW OFFICES OF
MICHAEL S. ROSS
ONE GRAND CENTRAL PLACE
60 EAST 42ND STREET
FORTY-SEVENTH FLOOR
NEW YORK, NY 10165

TELEPHONE
(212) 505-4060
FACSIMILE
(212) 505-4054
E-MAIL
michaelross@rosslaw.org

December 30, 2022

**BY ECF**

Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

> Re:   *United States v. Robert Hadden*, 20 Cr. 468 (RMB);
>        Motion to Quash.

Dear Judge Berman:

### A.   INTRODUCTION.

On behalf of our client, Anthony T. DiPietro, Esq., we are respectfully submitting this letter motion to quash the December 1, 2022 subpoena *ad testificandum* (the "Subpoena") issued by defense counsel to Mr. DiPietro.  (A copy of the Subpoena is available at ECF Doc. 208.)

For the past decade Mr. DiPietro has been representing victims of Defendant Robert Hadden's sexual abuse in civil litigation against Defendant Hadden, Columbia University, New York Presbyterian Hospital ("NYPH"), and other medical entities.  Multiple civil suits were filed in Supreme Court, New York County, and one suit was removed to the Southern District of New York.  (*Hoechstetter v. Columbia University,* 19-cv-02978)  Through the efforts of the Hon. Katharine H. Parker, U.S.M.J., the multiple *Hoechstetter* plaintiffs together with over 140 other victims of Defendant Hadden mediated a settlement with Columbia and NYPH for 147 victims' claims.  All 147 victims are represented by Mr. DiPietro.

It appears that defense counsel intends to use the Subpoena at trial to question Mr. DiPietro about matters including any purported financial incentives of the victim-witnesses (i.e., their civil settlements) and their prior statements which might be inconsistent with their trial testimony.  Mr. DiPietro takes no position on defense counsel asking the witnesses themselves about whether they are motivated by financial incentives, but this letter objects to the Subpoena which seeks to invade the attorney-client privilege which protects from disclosure Mr. DiPietro's communications with his clients.  Specifically, as discussed below, a subpoena that seeks privileged and/or work-product protected information is not appropriate where there are other means of obtaining the relevant

LAW OFFICES OF
MICHAEL S. ROSS

Hon. Richard M. Berman
December 30, 2022
Page 2

information that do not intrude on the attorney-client relationship. More fundamentally, the Subpoena here seeks to intrude into attorney work-product and confidential attorney-client communications.

Accordingly, we respectfully ask that the Subpoena be quashed.

**B.     THE SUBPOENA SHOULD BE QUASHED.**

**1.     THE GOVERNING LEGAL PRINCIPLES.**

It is axiomatic that a defendant's subpoena *ad testificandum* is only appropriate when the presence of the witness is necessary for an adequate defense; the witness can offer relevant testimony; and the witness' testimony is not merely cumulative. *United States v. Gotti,* 784 F. Supp. 1011, 1012 (E.D.N.Y. 1992). Moreover, trial subpoenas are not intended as devices for fishing expeditions and certainly not where attorney-client privileged and work-product protected information is involved. Absent exceptional circumstances, an attorney cannot be compelled by subpoena to disclose such information. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

Here, the Subpoena should be quashed because it:  1) reflects an improper fishing expedition into Mr. DiPietro's attorney-client relationship with his clients, who are the victim-witnesses; 2) seeks cumulative testimony that can be obtained from other sources that is not necessary for a defense; and 3) fails to comply with F.R.Cr.P. 17(c)(3).

**2.     THE SUBPOENA SHOULD BE QUASHED BECAUSE IT REFLECTS AN IMPROPER FISHING EXPEDITION INTO MR. DIPIETRO'S ATTORNEY-CLIENT RELATIONSHIP WITH THE VICTIM-WITNESSES.**

A number of the prosecution victim-witnesses are Mr. DiPietro's clients and it is our understanding that defense counsel intend to ask Mr. DiPietro about their prior statements to him for purposes of possible impeachment. Defense counsel does not know what, if anything, was said to Mr. DiPietro, or said in his presence. In other words, defense counsel served a trial subpoena not to present relevant testimony in court, but rather, on a speculative basis, to uncover whether Mr. DiPietro has any relevant evidence to begin with. This is specifically the type of improper conduct prohibited by *United States v. Nixon,* 418 U.S. 683 (1974), and its progeny, discussed below. To the extent that defense counsel is seeking information about what the witness-victims told the prosecutors in Mr. DiPietro's presence, that very same information can be obtained by defense counsel subpoenaing the FBI Agents who would have similarly been in attendance – without running the risk of violating the attorney-client privilege that exists between Mr. DiPietro and his clients or the related work-product protections. *See In re Grand Jury Subpoena,* 282 F.3d 156, 161 (2d Cir. 2002) (information is not discoverable through a witness's attorney when that information can be obtained through other means such as other witnesses).

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
December 30, 2022
Page 3

        In *Nixon,* the Supreme Court adopted Judge Weinfeld's four-part test for determining the
validity of a defendant's subpoena under Rule 17(c).  The defendant has the burden of showing:
"(1) That the documents are evidentiary and relevant; (2) That they are not otherwise procurable
by the defendant reasonably in advance of trial by the exercise of due diligence; (3) That the
defendant cannot properly prepare for trial without such production and inspection in advance of
trial and the failure to obtain such inspection may tend unreasonably to delay the trial; (4) That the
application is made in good faith and is not intended as a general fishing expedition." *Nixon*, 418
U.S. at 699-700.  *Nixon* "provides the standard of review for both 'pre-trial subpoena[s]' seeking
admissible evidence and 'trial subpoenas for impeachment material'." *United States v. Avenatti*,
2020 U.S. Dist. LEXIS 17144, at *8 (S.D.N.Y. Jan. 30, 2020).  To meet his burden the defendant,
therefore, "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon,* 418
U.S. at 700.  That burden is not met here.

        As to the <u>first</u> factor, relevance, evidence is relevant if "it has the tendency to make a fact
more or less probable than it would be without the evidence."  FRE 401.  Mr. DiPietro has no
firsthand knowledge of the crimes alleged in the indictment, and the fact that he is the attorney for
some of the victims does not make it more or less probable that Defendant Hadden is guilty of
those crimes.  Assuming *arguendo* defense counsel wants to call Mr. DiPietro to show that a
victim's trial testimony is inconsistent with what she previously told Mr. DiPietro, relevance is
still absent:  defense counsel does not know what, if anything, the victims said to Mr. DiPietro or in
his presence, and cannot specify what is the purported contradiction.  It is even less likely that
defense counsel can establish that Mr. DiPietro is in possession of specific, non-privileged, non-
work product information that is relevant.

        As to the <u>second</u> factor, to the extent defense counsel seeks statements made by the victim-
witnesses to third parties in Mr. DiPietro's presence (for example, statements made by clients to
prosecutors during interviews at which Mr. DiPietro was present), defense counsel can question
Mr. DiPietro's clients within the normal bounds of cross-examination.  To the extent defense
counsel seeks information about statements made by the victim-witnesses to Mr. DiPietro, such
statements are protected by the attorney-client privilege (discussed below).

        As to the <u>third</u> factor, the defendant's ability to prepare for trial, defendants typically
prepare for trial without the benefit of being able to have assurances that the victims who will be
testifying will have their lawyers called as defense witnesses.

        As to the <u>fourth</u> factor, it is patently clear that defense counsel's Subpoena is intended to
conduct a prohibited fishing expedition.  Defense counsel does not know whether Mr. DiPietro is
aware of any specific statements made by the victim-witnesses, who have not yet testified.
Defense counsel therefore cannot know whether Mr. DiPietro is aware of any statements made by
the victim-witnesses that are inconsistent with the testimony they have not yet given.  This is far
different from a situation where a known prior inconsistent statement of the witness becomes
admissible against them on cross-examination.  What defense counsel seeks is the ability to
conduct an improper, open-ended, examination of Mr. DiPietro, the victim's attorney, about their
prior conversations.  Subpoenas, however, "are not tools of discovery in criminal cases." *United*

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
December 30, 2022
Page 4

*States v. Nektalov*, 2004 U.S. Dist. LEXIS 13127, at *5 (S.D.N.Y. 2004). Here, the Subpoena *ad testificandum* "merely hopes something useful will turn up." *United States v. Tucker*, 249 F.R.D. 58, 63 (S.D.N.Y. 2008) (internal quotation marks omitted).

More fundamentally, the examination sought by defense counsel is likely to elicit statements that include information that is subject to the attorney-client privilege, and it is well-settled that an attorney may not testify for the purpose of impeaching a current or former client, by using the client's confidences, absent exceptional circumstances that do not exist here.

The attorney-client privilege is one of the oldest recognized privileges for confidential communications and is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. *Swidler & Berlin*, 524 U.S. at 403. "The broad outlines of the attorney-client privilege are clear: '(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except [if] the protection [is] waived.'" *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997), quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1036 (2d Cir. 1983); *see* CPLR § 4503 (protecting privileged communications). Here, the protections afforded by the privilege have not been waived.

Likewise, information learned by Mr. DiPietro in preparing for litigation is covered by the attorney work product doctrine, and an attorney cannot be compelled by subpoena to disclose work product where there is no substantial need and where there are other means for obtaining the information. *In re Grand Jury Subpoena*, 282 F.3d at 161 ("The work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation. … For the attorney to be subpoenaed to testify to the observations made in the course of that preparation in order to help the putative adversary prove the offense as to which the attorney was providing representation would do substantial injury to the values that justify the work product doctrine.").

### 3.     THE SUBPOENA SEEKS CUMULATIVE TESTIMONY THAT IS NOT NECESSARY TO THE DEFENSE.

Defense counsel has indicated, in sum and substance, that they may seek testimony from Mr. DiPietro concerning the financial recovery by the victims in this case. We respectfully submit that any such testimony would be cumulative and unnecessary given that defense counsel may seek such testimony from the victims themselves. *Cf. Stauber v. City of New York*, 2004 U.S. Dist. LEXIS 7973, at *8 (E.D.N.Y. May 7, 2004) (finding deposition of plaintiff's counsel to be inappropriate where defendants could depose police officials regarding their conversations with plaintiff's counsel, and plaintiff's counsel's statements to police officials had a "tenuous relationship...to...the plaintiffs' claims or the City's defenses").

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
December 30, 2022
Page 5

Nor is the testimony of Mr. DiPietro necessary for an adequate defense in this case.  Mr. DiPietro has no first-hand knowledge of Defendant Hadden's abuse of the victim-witnesses, and cannot possibly provide relevant information to that effect.

### 4. THE SUBPOENA FAILS TO COMPLY WITH F.R.CR.P. 17(C)(3).

Pursuant to F.R.Cr.P. 17(c)(3), "[a]fter a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party *only by court order*.  Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object."  (Emphasis added.)  A crime victim has "[t]he Right to be treated with fairness and with respect for the victim's dignity and privacy" 18 U.S.C. § 3771(a)(8), and the victim's "lawful representative" may assert her rights, *id.* at § 3771(d)(1).

Here, the Subpoena seeks the testimony of Mr. DiPietro, who is the attorney to the multiple crime victims in this case.  Given that Mr. DiPietro represented the victims, the nature of his testimony (especially about any supposed inconsistent statements about the alleged sexual misconduct) would obviously constitute "personal" information and, separately, would constitute "confidential information."  Rule 1.6 of the New York Rules of Professional Conduct defines "confidential information" as "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential."  The word "personal" is defined by the Merriam-Webster Dictionary as "of, relating to, or affecting a particular person."[1]  The information sought by defense counsel's Subpoena falls squarely within the definition of "personal" and "confidential." Accordingly, we respectfully submit that defense counsel was required to comply with F.R.Cr.P. 17(c)(3) by obtaining a court order prior to issuing the Subpoena.  For this reason alone, the Subpoena should be quashed.

### C. CONCLUSION.

For the reasons set forth above, we respectfully submit that the Subpoena issued to Mr. DiPietro, who has represented the victims in this case for over a decade, should be quashed.[2]

---

[1] https://www.merriam-webster.com/dictionary/personal (last accessed: Dec. 28, 2022).

[2] Our firm received an e-mail yesterday afternoon from defense counsel which raised a question concerning whether there was a conflict in my firm's representation of Mr. DiPietro.  We have responded to defense counsel's e-mail advising defense counsel that, in our view, no conflict exists.  Should there be motion practice on this issue, we are prepared to respond.

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
December 30, 2022
Page 6

Respectfully submitted,


_____/s/_____
Michael S. Ross
Eugene Gormakh


cc:    All Counsel
       (By ECF)