

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 2, 2023

**BY ECF AND EMAIL**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>**United States v. Robert Hadden**</u>, S2 20 Cr. 468 (RMB)

Dear Judge Berman:

      Pursuant to the Court's Order of January 2, 2023, the Government respectfully submits the following supplemental motions regarding the defendant's exhibits and witnesses.[1]

      1.   <u>Overly Graphic Videos and Images</u>.  Consistent with the Court's ruling precluding the Government from introducing a photograph of a patient's extracted fibroids as "overly graphic," the Government moves to preclude Defense Exhibits C, D, E, G, and H—videos and documents depicting the examination of a live patient's vagina and breasts, as opposed to medical diagrams—as "overly graphic" and unfairly prejudicial under Federal Rule of Evidence 403.  (December 22, 2022 Tr. at 5).  These exhibits are also duplicative and irrelevant under Rules 403 and 401.

      2.   <u>2022 News Article</u>.  The Government moves to preclude Defense Exhibit A, a 2022 *New York Times* article about recent trends in the study of the clitoris, and any reference to it, as irrelevant and unduly prejudicial under Rules 401 and 403.

      3.   <u>Emails About Columbia University's November 2012 Chaperone Policy and Policy</u>.  The Government moves to preclude Defense Exhibits Q, R, S, and T—emails about Columbia's November 2012 chaperone policy and the policy itself—as irrelevant, misleading, and confusing under Rules 401 and 403 given that the Government does not plan to present evidence of the defendant's sexual abuse of patients as perpetrated after on or about June 29, 2012.

      4.   <u>Compensation and Billing Data</u>.  The Government moves to preclude Defense Exhibits M, N, O, and P—documents reflecting the defendant's compensation and billing data—as irrelevant, misleading, confusing, and unduly prejudicial under Rules 401 and 403.

---

[1] The Government attaches hereto as Exhibit 1 a zip file containing each of the Defense Exhibits discussed herein.  To the extent the defense supplements its exhibit and/or witness list, the Government respectfully reserves the right to supplement these motions if appropriate.

5. <u>Privileged Testimony of Counsel for Certain Victims</u>.  The Government seeks to preclude the testimony of Anthony DiPietro, Esq., counsel for certain victim-witnesses in this case, as duplicative, confusing, misleading, and unduly prejudicial under Rule 403 given that the defendant will have the opportunity to cross-examine each victim at trial and Mr. DiPietro's conversations with his clients are protected by attorney-client privilege.

As the parties have conferred and agree that they will not in their opening statements reference or show to the jury exhibits of information that will not be introduced into evidence at trial, or on which the Court has reserved decision, the Government respectfully submits this motion now so that the opening statements may proceed in an orderly manner.  *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *9 (S.D.N.Y. Jan. 18, 2018) (granting the Government's motion precluding the defendant from "making any reference to information in opening statements that will not be introduced in evidence").[2]

# ARGUMENT

**I.  The Court Should Preclude Images and Videos of Examinations of an Actual Patient's Vagina, Anus, and Breasts as Overly Graphic, Unduly Prejudicial, and Unnecessarily Cumulative**

**A.  Applicable Law**

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.  Accordingly, any evidence that does not bear on the defendant's guilt or innocence of the charges in the indictment should be excluded as irrelevant.  Rule 403 further states that the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

**B.  Discussion**

Defense Exhibits G and C are videos of Dr. Paula Hillard, a Professor of Obstetrics & Gynecology at Stanford Medical School, conducting vaginal, anal, and breast exams on a live female patient.  Defense Exhibit G is approximately 21 minutes long and Defense Exhibit C is

---

[2] The parties have conferred in order to narrow the scope of any possible disagreements and motions before the Court.  The defense has indicated that, consistent with the Court's ruling on "good acts", it does not intend to call any Columbia witnesses to testify about other good acts of the defendant, and further that it does not intend to call these witnesses to present general positive character or reputation evidence concerning the defendant.  The defense has also represented that it does not intend to ask any of these witnesses to testify as to any self-exculpatory statements by the defendant.  Finally, the defense has represented that it does not intend to offer into evidence a self-exculpatory voice message left by the defendant for Victim-15, unless Victim-15 testifies as to its content and misstates its content.  Based on these representations, the Government does not move herein to exclude any such statements or evidence.

approximately 8 minutes long.³ Defense Exhibits H and D include screenshots of the live vaginal and breast examinations depicted in Exhibits G and C, respectively, and contain detailed text explaining the examinations. Screenshots from Defense Exhibits G and C are attached hereto in Exhibit 2 to this motion. (Ex. 2). The Government—pursuant to a conversation with the defense in order to attempt to narrow any disputed issues—understands that the defense seeks to offer these exhibits through Dr. Robert Berg, who will testify that he approves of the content of these training materials, in order to explain to the jury how close a doctor is to a patient during breast and vaginal exams, among other things.

Defense Exhibits C, D, H, and G should be precluded under Rules 403 and 401. These exhibits are "overly graphic" and have the potential to unduly prejudice the jury. (December 22, 2022 Tr. at 5 (precluding photo of patient's fibroids as "overly graphic and therefore potentially unfairly prejudicial under Rule 403")). Moreover, the defense's expert, Dr. Robert Berg, will have the opportunity to describe OB/GYN exams with the use of appropriate medical diagrams. Indeed, both the defense and the Government plan to offer medical diagrams, such as the following, which serve the same purpose of educating the jury, including about the proximity between a doctor and patient during an exam, without unnecessarily graphic imagery.



5-3: A typical pelvic exam                                    Kathryn Born, MA

(DX I). Dr. Berg can sufficiently describe for the jury the proximity of doctors to patients for breast and vaginal exams and the manner by which doctors perform these exams. There is simply

---

³ According to Stanford Medical School's website, these videos, which were uploaded in or about 2017, are "age-restricted and only available on YouTube," which in turn requires users to sign in to "confirm your age" because the "video may be inappropriate for some users." *See* Defense Exhibit G, link available at https://stanfordmedicine25.stanford.edu/the25/PelvicExam.html, YouTube video available at https://www.youtube.com/watch?v=AllLe3qI7uc; Defense Exhibit C, link available at https://stanfordmedicine25.stanford.edu/the25/BreastExam.html; YouTube available at https://www.youtube.com/watch?v=pJ55UtP0_nA.

no need for the jury to watch videos of breast, vaginal, and anal exams conducted on a real individual, including the digital penetration of a real individual's vagina and anus by a real person. (*See* December 22, 2022, Tr. at 5).[4]

Defense Exhibits C, D, H, and G are also needlessly cumulative and have the potential to confuse and mislead the jury under Rule 403. They also seek to bolster Dr. Berg's credibility by introducing the expert opinion of a doctor other than Dr. Berg. In other words, these exhibits would effectively allow the defense to call two experts, Dr. Berg and Dr. Hillard, and impermissibly allow the defense to offer the hearsay testimony of a second, non-testifying expert who is not subject to cross-examination. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 549-50 (S.D.N.Y. 2004) (excluding expert opinions under Rules 702 and 403 as "cumulative and certain to waste time" where "[n]umerous portions of the opinions offered . . . merely recite facts, or endorse opinions, expressed in the deposition of [an expert]").

Finally, certain portions of Defense Exhibits C, D, H, and G are irrelevant under Rule 401 because they delve into details and medical conditions that are not relevant for the jury. For example, neither "yeast vulvovaginitis" nor "lichen sclerosus," as depicted in Defense Exhibit G, are conditions relevant to this case. (Ex. 1 (screenshots of DX G); *see also* DXs G, H at 6 (containing descriptions and graphic photographs of various "abnormal findings," such as "lichen sclerosis and "yeast vulvovaginitis"). The Government does not anticipate that its medical expert will discuss these conditions in connection with gynecological or obstetric best practices or standards of care.[5]

Accordingly, Defense Exhibits C, D, H, and G should be precluded as overly graphic and unfairly prejudicial, and because they have the potential to confuse and mislead the jury under Rule 403.

II. **The Court Should Preclude a 2022 Article on A Recent Study of the Clitoris and References to the Article as Irrelevant, Misleading, Confusing, and Unduly Prejudicial**

The defendant should be precluded from offering or referencing an October 2022 newspaper article on emerging trends in the study of the clitoris, in which individuals not testifying at this trial offer their thoughts on recent trends in urology. Specifically, Defense Exhibit A is a *New York Times* article that discusses, among other things: a vulval biopsy that a patient unrelated to this case and identified as "Gillian" in the article received in 2018 that impacted her ability to achieve orgasm; Gillian's experience in conversing (or being unable to converse) with doctors about her injury; the idea that "[i]f the vulva as a whole is an underappreciated city, the clitoris is a local roadside bar: little known, seldom considered, probably best avoided"; views of Dr. Rachel Rubin, a urologist and self-described "clitorologist"; a 2018 article in the Journal of Sexual Medicine that discussed the consequences of not examining the clitoris and concluded that doctors

---

[4] For the same reason, the Government does not seek to offer into evidence videos of an actual person rubbing or licking another person's vagina.

[5] Moreover, these materials appear to have been uploaded in or about 2017 and thus may reflect Dr. Hillard's view of best OB/GYN practices as of 2017. The parties have conferred and the defense is determining the date these materials were created.

should "routinely examine the clitoris," but noted that most providers "neither know how to examine nor feel comfortable examining the clitoris"; and recent efforts by Dr. Rubin and others to "champion the clitoris and female pleasure." (DX A).[6] The defense has indicated that it is unlikely that they will offer the article into evidence, but that they plan to ask Dr. Berg questions about the article and contemporary medical practices pertaining to the clitoris.

Defense Exhibit A and any reference or questions to it should be precluded as irrelevant hearsay and as misleading, confusing, and unduly prejudicial under Rules 801, 401, and 403. "Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the mattered asserted therein." *United States v. Buck*, No. 13 Cr. 282 (JSR), 2017 WL 5201447, at *2 (S.D.N.Y. Oct. 30, 2017) (citing, *e.g.*, Fed. R. Evid. 802). Here, Defense Exhibit A serves no permissible non-hearsay purpose. *See id.* (discussing circumstances where articles may be admissible not for their truth).

The article, moreover, is irrelevant because it was published in 2022. The defendant did not read the article while he was abusing patients from the 1990s up until and including 2012, nor could the article have informed his medical practice. *See, e.g.*, *United States v. Martoma*, 933 F. Supp. 2d 452, 455-57 (S.D.N.Y. 2014) (concluding that expert analysis of the actual performance of a stock "was not probative of the defendant's state of mind" and "would not assist the jury in determining whether the defendant himself" had certain beliefs at a specific time absent evidence that the defendant was aware of analyses of that type). To suggest otherwise would impermissibly mislead and confuse the jury under Rule 403. The article will also allow the defendant to offer the hearsay opinions of non-testifying doctors about current developments in medicine that are irrelevant to this case without the Court's approval. Moreover, allowing the defense to offer or reference the article is an end-run around Rule 702, which lays out the qualification of such experts, and would impermissibly allow the defense to offer the hearsay testimony of yet another non-testifying expert who is not subject to cross-examination. The article, and any references to it, are thus unduly prejudicial, irrelevant, misleading, and confusing, and should be precluded under Rules 401 and 403. *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."); *United States v. Fawwaz*, 694 F. App'x 847, 852-53 (2d Cir. 2017) (summary order) (citing *id.*).

### III. The Court Should Preclude Emails About Columbia University's Chaperone Policies from November 2012 and the Policies Themselves As Irrelevant, Misleading, and Unduly Prejudicial

At trial, the Government expects to offer evidence of Columbia University's chaperone policy as issued in 2007, and evidence of the defendant's sexual abuse of patients up until on or about June 29, 2012, the date on which the defendant sexually assaulted Victim-15. As a factual matter, the Government notes that the defendant was arrested by the New York City Police Department ("NYPD") on or about June 29, 2012, the arrest was subsequently voided, and Columbia University permitted the defendant to resume his clinical activities beginning on or

---

[6] "Half the World Has a Clitoris: Why Don't Doctors Study It?," The New York Times (Oct. 26, 2022), available at https://www.nytimes.com/2022/10/17/health/clitoris-sex-doctors-surgery.html (last visited January 1, 2023).

about July 3, 2012.  In a letter dated July 2, 2012 (the "July 2012 Letter"), Columbia wrote the following to the defendant:

> I write to inform you of the position of the University and New York Presbyterian Hospital with respect to the allegations against you currently being investigated by the New York City Police Department.  You must comply with all University and Hospital policies, and in particular, a chaperone must be in the room at all times when a patient is examined by you.  Provided you adhere to this practice, you may resume clinical activities beginning July 3, 2012.

(Ex. 3).  The defendant went on disability leave in or about early 2013.  The Government understands that after July 3, 2012, the defendant sexually abused at least one other patient, but the Government does not intend to call that victim to testify at trial.

Defense Exhibit S is an email dated November 16, 2012, to Columbia OB/GYN faculty, attaching Defense Exhibit R (Columbia's chaperone policy issued on November 15, 2012), and Defense Exhibit Q (a chaperone waiver form).  Defense Exhibit T includes an email dated November 18, 2012, responding to Defense Exhibit S, in which a Columbia employee asks when the new policy starts and expresses concerns regarding adhering to the policy.

Defense Exhibits S and T—statements made by Columbia employees within emails about Columbia's chaperone policies—are inadmissible hearsay under Rule 801.  Under the hearsay rule, the defendant cannot offer out-of-court statements of Columbia employees about the chaperone policy in place as of November 2012.  *See* Fed. R. Evid. 801.  In addition, Defense Exhibits Q, R, S, and T are irrelevant, misleading, confusing, and unduly prejudicial under Rules 401 and 403.  Columbia's chaperone policies as of November 2012 are irrelevant because the Government does not plan to offer evidence of the defendant's sexual abuse of patients after his sexual assault of Victim-15 on or about June 29, 2012.  It is thus of no moment what Columbia's chaperone policy was as of November 2012.  These documents should thus be excluded under Rules 801, 401, and 403.

IV. **The Defendant's Compensation and Earnings Documents Should Be Precluded as Irrelevant, Confusing, Misleading, and Unduly Prejudicial**

Defense Exhibit P is a letter dated June 14, 2012, outlining the defendant's compensation for the time period of July 1, 2012, to June 30, 2013, including discussion of "'Z' payments" from "clinical earnings per the Department Compensation Plan."  (DX P).  Defense Exhibits M, N, and O are spreadsheets generated by Columbia University reflecting the defendant's "dashboard" or clinical billing information as of July 2011, November 2011, and March 2012, respectively.

These exhibits, on their face, are confusing, and their relevance is not immediately apparent.  The defense has indicated that it does not presently plan to offer these exhibits, but that they may become relevant depending on the evidence offered at trial.  Without a proffer of relevance and a witness to explain these documents to the jury, however, these documents should be precluded as irrelevant, confusing, misleading, and unduly prejudicial under Rules 401 and 403.

### V. The Court Should Preclude the Testimony of Anthony DiPietro, Esq., Counsel for Certain Victims, as Duplicative, Misleading, Confusing, and Unduly Prejudicial

The defendant seeks to compel a lawyer representing victims of sex abuse to testify about advice he provided and conversations they had, both of which are clearly privileged. (Dkt. 208 at 1-2). The Court should preclude Mr. DiPietro's testimony under Rule 403 as duplicative, misleading, confusing to the jury, and unduly prejudicial. The defendant will have the opportunity to cross-examine each victim at trial, including by asking them about what they do and do not know or believe. Requiring an attorney to testify about privileged communications, moreover, is strongly disfavored by courts because such testimony degrades the attorney-client privilege at the expense of the attorney-client relationship—a relationship that is particularly important when a victim is seeking counsel because she was sexually abused or assaulted. For these reasons and those that follow, the Court should exclude the testimony of Mr. DiPietro at trial.[7]

#### A. Relevant Background

On December 30, 2022, Michael S. Ross, Esq., counsel for Mr. DiPietro, moved to quash a trial subpoena issued by the defense to Mr. DiPietro. (Dkt. 216 (the "Motion to Quash")).[8] Mr. DiPietro represented and/or represents many, but not all, victims of the defendant's sexual abuse, including in connection with civil settlement discussions with Columbia University relating to the defendant's abuse. Many of these civil matters have been resolved, including through either final or pending settlements. The Motion to Quash argues that the defense's subpoena: (1) "reflects an improper fishing expedition into Mr. DiPietro's attorney-client relationship with his clients, who are the victim-witnesses"; (2) "seeks cumulative testimony that can be obtained from other sources that is not necessary for a defense"; and (3) "fails to comply with" Federal Rule of Criminal Procedure 17(c)(3). (*Id.* at 2). The Government understands that the defense intends to ask Mr. DiPietro questions about "matters including the financial incentives of the victim-witnesses" and "any prior statements which his clients may have made which might be inconsistent with their trial testimony." (*Id.* at 1-2; Dkt. 208 at 1-2).[9]

---

[7] Moreover, to the extent the defense seeks to ask victims questions on cross-examination about privileged conversations, the Government asks that the defense move for permission to do so given the caution courts must exercise in protecting attorney-client privilege and the dangers presented by such testimony under Rule 403.

[8] The Government is unaware of any trial subpoenas issued by the defense to counsel for victims other than Mr. DiPietro.

[9] On December 23, 2022, the Government asked the defense for more information regarding their anticipated questioning of Mr. DiPietro to ascertain if there was any basis for seeking his testimony other than as summarized by counsel for Mr. DiPietro in his filings to the Court. The defense declined to provide additional information. The Government understands that any response to the Motion to Quash is due on January 5, 2022. To the extent the defense provides additional specificity as to the testimony they seek to elicit from Mr. DiPietro, the Government respectfully requests the opportunity to supplement its motion.

### B. Applicable Law

It is generally disfavored for a party at a trial to call an attorney as a witness against the attorney's client, because doing so intrudes on the attorney-client relationship. *Cf., e.g.*, 1 Att'y-Client Privilege in the U.S. § 3:24 (2021) ("Although attorneys are subject to subpoena just like any other witness, courts discourage the government from calling the attorney of a defendant, or of the target of a criminal investigation, because forcing an attorney to testify against his client comes at the direct expense of the attorney-client relationship. 'The serving of a subpoena will immediately drive a chilling wedge between the attorney/witness and his client.'"); *United States v. Maxwell*, 20 Cr. 330 (AJN) (Trial Tr. at 2298-2300) (excluding testimony of victim's counsel about privileged conversations with victims as irrelevant, duplicative, and unduly prejudicial) ("I still have to exercise caution in considering the ability of defense to call these witnesses, since they are attorneys for witnesses who testified, and the boundary to privileged communications can be easily crossed."); *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (holding that the defendant may not call Government counsel as a witness unless "required by a compelling and legitimate need"); *Edebali v. Bankers Standard Ins. Co.*, 14 Civ. 7095 (JS) (AKT), 2017 WL 3037408, at *9 (E.D.N.Y. July 17, 2017) ("[T]here is a presumption disfavoring attorney depositions which is based on the recognition that even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." (alterations and internal quotation marks omitted)); ABA Model Rule 3.7 cmt. (noting potential conflict of interest issues that arise if, for instance, "there is likely to be substantial conflict between the testimony of the client and that of the lawyer").

In *United States v. Maxwell*, 20 Cr. 330 (AJN), the defendant subpoenaed three attorneys who represented victims of the defendant's abuse and sought to elicit testimony at trial from victims' counsel about their privileged conversations with victims. There, the Honorable Alison J. Nathan excluded the testimony of the attorneys with one very narrow exception. (*Maxwell*, Trial Tr. at 2299).[10] Judge Nathan concluded that "the information the defense seeks to elicit from the three attorneys . . . is either not relevant under Rule 401, is duplicative of information elicited on cross-examination, and, therefore, outweighed by prejudice, or is only potentially marginally relevant to the limited inference of impeachment so as to be outweighed by 403 prejudice." (*Id.*).

### C. Discussion

The defendant seeks to call Mr. DiPietro as counsel for certain victims in this case in order to attack the credibility of his clients, including by asking Mr. DiPietro about the victims' alleged financial incentives and their prior privileged communications. The Court should exclude Mr.

---

[10] This limited exception pertained entirely to a single statement made by a victim's attorney to the Government. As to that statement, Judge Nathan indicated that she "intend[ed] to permit" "one question" by the defense to the victim's attorney, to which she had "suggested the parties stipulate," as she found that the "question does not elicit privileged information directly because it seeks only to know what [the attorney] told the government." (*Maxwell*, Trial Tr. at 2299) (permitting defense to ask the victim's attorney if he had told the Government that he had told the victim that cooperating with the Government and testifying in the criminal case would help her civil case)).

DiPietro's testimony from trial in its entirety because such testimony would be duplicative, confusing, and unduly prejudicial under Rule 403.

The defense will have ample opportunity to cross-examine victims as to their alleged financial incentives, including, for example, by asking victims whether they received or expect to receive a settlement from Columbia University in connection with the defendant's sex abuse. Each testifying victim is best positioned to answer questions about her own finances and any potential financial settlement. Testimony from a third party, let alone a victim's attorney, will be duplicative, confusing, and unfairly prejudicial.[11] Just as in *Maxwell*, "the information the defense seeks to elicit . . . is duplicative of information [to be] elicited on cross-examination, and therefore, outweighed by prejudice, or is only potentially marginally relevant to the limited inference of impeachment so as to be outweighed by 403 prejudice." (*Maxwell*, Trial Tr. at 2299).

The defense will also have ample opportunity to cross-examine victims with respect to their prior statements without violating attorney-client privilege. That is, the defense can cross-examine victims with respect to, among other things, any statements they made at or about the time of the defendant's abuse, statements made to local law enforcement and prosecutors in or about 2012 to 2016, statements made to federal law enforcement from in or about 2020 to the present, statements made to friends, family, or other medical professionals, statements made on their behalf in connection with civil litigation and settlement discussions, the absence of such statements, and the timing of any such statements. Testimony from Mr. DiPietro regarding victims' prior statements to him will thus also be duplicative, confusing, and prejudicial under Rule 403, and violative of attorney-client privilege. (*Maxwell*, Trial Tr. at 2299).

Finally, even if there were some marginal probative value to Mr. DiPietro's testimony on the above topics, it is substantially outweighed by the prejudice and jury confusion associated with calling a victim's attorney to the stand. *See* Fed. R. Evid. 403. Requiring a victim's lawyer to testify would have an immediate chilling effect on the victim's relationship with her attorney. It would also confuse and unfairly prejudice the jury by suggesting the existence and substance of certain conversations or that a victim's conversations with her lawyer were somehow inappropriate. Accordingly, the testimony of Mr. DiPietro should be excluded from trial.

---

[11] Any testimony from Mr. DiPietro about a victim's alleged financial incentives would also constitute inadmissible hearsay under Rules 801 and 802.

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's supplemental motions *in limine* in their entirety.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: s/ _____
　　Jane Kim
　　Paul M. Monteleoni
　　Lara Pomerantz
　　Assistant United States Attorneys
　　(212) 637-2038 / 2219 / 2343

cc:　Defense Counsel (By Email and ECF)