

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 4, 2023

**BY ECF AND EMAIL**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Robert Hadden</u>, S2 20 Cr. 468 (RMB)

Dear Judge Berman:

      The Government respectfully submits this letter in support of its motion to dismiss Jennifer Brown, Esq., of the Federal Defenders of New York (the "Federal Defenders") for cause, as a juror in the criminal trial of the defendant, who is represented by the Federal Defenders. As discussed in greater detail below, Ms. Brown's employment, her relationship with the defense, and her adversarial relationship with the Government creates both implied and inferred bias. *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2022 WL 986298, at *7 (S.D.N.Y. Apr. 1, 2022). For the reasons set forth below, Ms. Brown must be disqualified from the jury "as a matter of law," regardless of her *voir dire* responses and regardless of her actual impartiality or bias. *United States v. Torres*, 128 F.3d 38, 45 (2d Cir. 1997).

**I.**    **<u>Applicable Law</u>**

      A "touchstone" of a fair trial is an impartial jury. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). An impartial jury is one "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). During jury selection, "'[c]hallenges for cause are generally based on actual bias, implied bias, or inferable bias.'" *Maxwell*, 2022 WL 986298, at *7 (quoting *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002)).[1]

      Implied bias, or "bias presumed as a matter of law," results in "mandatory" disqualification. *Torres*, 128 F.3d at 45 (emphasis added). That is, when there is a relationship between a juror and the parties, the juror must be disqualified because the bias is "automatically presumed." *Id.* at 45; *see also Maxwell*, 2022 WL 986298, at *7 (citing *Greer*, 385 F.3d at 171-

---

[1] "[A]ctual bias" is "bias in fact" or "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Maxwell*, 2022 WL 986298, at *7; *Torres*, 128 F.3d at 43. A juror is found to be partial either because the juror "admits partiality" or because the Court finds actual partiality based upon the juror's responses during *voir dire*. *Torres*, 128 F.3d at 43. The Government does not argue that Ms. Brown should be struck based on actual bias.

172). Implied bias includes when the juror "is of kind to either party within the ninth degree" and "that [she] is . . . of the same society or corporation." *Torres*, 129 F.3d at 45 (quoting *Smith v. Phillips*, 455 U.S. 209, 232 (1982) (internal quotation marks omitted)); *see id.* at 45 & n.8 ("We, like most of the circuits, have repeatedly recognized the category of implied bias. And we have held that if a prospective juror falls within this category, that juror must be excused.") (internal citation omitted) (citing, *e.g.*, *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988); *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976); *Hunley v. Godinez*, 975 F.2d 316, 318-20 (7th Cir. 1992); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990); *Burton v. Johnson*, 948 F.2d 1150, 1158–59 (10th Cir. 1991)); *see id.* (citing state statutes).

In the New York state legal system, the inappropriateness of a person in Ms. Brown's position serving as a juror is recognized by statute. Under New York Criminal Procedure Law, for-cause disqualification of a juror is warranted when the juror

> is related within the sixth degree by consanguinity or affinity to the defendant, or to the person allegedly injured by the crime charged, or to a prospective witness at the trial, <u>or to counsel for the people or for the defendant</u> . . . or that [she] bears some other relationship to any such person of such nature that it is likely to preclude him from rendering an impartial verdict.

N.Y. Crim. P. L. § 270.20(1)(c) (emphasis added); *see also Torres*, 128 F.3d at 45 (discussing the "average [person] test" of what "would offer a possible temptation to the average [person] . . . which might lead him not to hold the balance nice, clear, and true between the State and the accused").

Implied bias "is attributed to a prospective juror <u>regardless of actual partiality</u>." *Torres*, 128 F.34 at 45 (emphasis added). Implied bias does not turn on a juror's answers during *voir dire* or a finding that the juror was in fact partial. *Id.* Rather, implied bias results when an "average person in the position of the juror" would be biased. *Id.* (citing *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir. 1968)). "[I]n determining whether a prospective juror is impliedly biased, "<u>[her] statements upon voir dire about [her] ability to be impartial are totally irrelevant</u>." *Id.* (quoting *Haynes*, 398 F.2d at 984) (alterations and quotations omitted). Thus, a finding of implied bias "does not rely on any questioning by the trial judge as to the prospective juror's assessment of [her] partiality." *Id.* And "even though a person 'may declare that he feels no prejudice in the case[,] . . . the law cautiously incapacitates him from serving on the jury because it suspects prejudice" because an average person in the same situation would feel bias. *Id.* at 45-46 (citing *Haynes*, 398 F.3d at 984).

Inferred bias occurs "'when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias.'" *Maxwell*, 2022 WL 986298, at *7 (quoting *Torres*, 128 F.3d at 47). The Court "is allowed to dismiss a juror on the ground of inferable bias only after having received responses from the juror that permit an inference that the juror in question would not be able to decide the matter objectively." *Torres*, 128 F.3d at 47. "In other words, the judge's determination must be grounded in facts developed in *voir dire*." *Id.* In cases of inferred bias, "once facts are elicited that permit a finding of inferable bias . . . the juror's statements as to [her] ability to be impartial become irrelevant." *Id.*

**II.     Discussion**

As a result of the unheard-of situation of a supervisor at the Federal Defenders being asked to render a verdict on the work of her colleagues in the same small organization, Ms. Brown's disqualification as a juror is "mandatory." *Id.* at 45. Disqualification is required here because Ms. Brown's relationship to both the defense and to the Government creates an "implied bias" or a "bias presumed as a matter of law." *Maxwell*, 2022 WL 986298, at *7. Ms. Brown's statements to the Court during *voir dire* are "totally irrelevant." *Torres*, 128 F.3d at 45. A finding of implied bias in this case is a matter of law, not of fact. *Id.* The Court's disqualification of Ms. Brown thus does not mean that the Court does not credit her statements. Rather, disqualification is required because the law automatically presumes bias from Ms. Brown's full-time employment with the criminal defense organization defending the defendant. *Id.*[2]

First, Ms. Brown is very much "of the same society or corporation" as defense counsel. *Id.* at 45. Ms. Brown is employed by the same organization—or effectively, the same criminal defense firm—as the defense team, which includes the attorneys representing the defendant in this criminal matter (Deirdre von Dornum, Esq., Michael Weill, Esq., and Kathryn Wozencroft, Esq.) and other members of their team (including Investigator Sarah Howard and Paralegal Caroline Kissick). Ms. Brown supervises all of the attorneys within the Federal Defenders who represent defendants in criminal matters adverse to the Government, and she herself defends cases brought by the Government. Although the Court has not inquired into her relationship with Hadden's defense counsel—who greeted her warmly when she entered the robing room, and, in remarks not reflected on the transcript, joked in her presence that she would be a good juror—there is every reason to believe that she has a close professional relationship and friendship with Hadden's entire defense team. Her relationship to both the defense and to the Government thus creates a bias that is presumed as a matter of law. *Id.*

Beyond the closeness of her professional connections to Hadden's defense team, Ms. Brown is in the extraordinary position of being supervised by and subordinate to the same individual who ultimately supervises Hadden's criminal defense team, and who in that role is duty-bound to zealously advocate for Hadden. Ms. Brown and all of these employees of the Federal Defenders referenced above are supervised by and subordinate to the Executive Director and Attorney-in-Chief, David Patton. The Government assumes that Mr. Patton's day-to-day involvement in Hadden's defense is substantially lower than that of his lead counsel Ms. von Dornum, but as ultimate supervisor of Hadden's criminal defense team, he no doubt feels obligated to support Hadden's courtroom lawyers in their zealous advocacy for their client.

This situation is greatly exacerbated by the small size of the Federal Defenders of New York organization and by Ms. Brown's prominent role in it. Although its Southern District and Eastern District branches have separate physical offices, they are both a part of the same organization, neither office has large attorney staffs, and the Government can only imagine that there is substantial contact between the offices as a practical matter (indeed, this very case

---

[2] Even assuming there was no implied bias—which there clearly is—the Court is permitted to dismiss Ms. Brown based on inferred bias because the fact of her employment relationship with defense counsel creates a "risk of partiality." *Maxwell*, 2022 WL 986298, at *7.

demonstrates that Eastern District attorneys sometimes handle Southern District matters).[3] This is thus not a situation where a sprawling organization provides a juror with a measure of insulation from improper influences.

Nor is Ms. Brown sharply removed in hierarchy from Mr. Patton. As the Attorney-in-Charge of the Southern District of New York trial unit, Ms. Brown directly supervises numerous cases adverse to Government attorneys (including members of the Government's trial team in this case).[4] Indeed, depending on developments in the Federal Defenders organization's other cases during the course of this trial, Ms. Brown might find herself in the astounding position of meeting with and reporting to Mr. Patton on various matters, including matters on which she is in an adverse position to Government attorneys, including members of the Government's trial team, while serving as a juror on a case defended by his organization.[5]

An "average person" in Ms. Brown's employment situation would be placed in an impossible position given that she is, quite literally, supervised by the same individual ultimately supervising Hadden's criminal defense, and her close colleagues in a small organization are actively litigating that defense. *Torres*, 129 F.3d at 45-46. Though the Government and the Court may assume that Ms. Brown has no actual bias, and the Government is confident that Mr. Patton would not consciously allow Ms. Brown's vote as a juror to affect his supervision of her or her job terms or career development, an "average person" in Ms. Brown's "same situation"— where she is aware that her vote as a juror may be directly adverse to the position of her colleagues and her ultimate supervisor—would clearly "feel bias." *Torres*, 128 F.3d at 45-46 (citing *Haynes*, 398 F.3d at 984). It is an understatement to say that an "average person in the position of the juror" would be influenced by the concern that their vote as juror could be directly adverse to their ultimate supervisor's interests or would cause friction with their colleagues. *Id*.

The defense's contention that Ms. Brown's relationship with defense counsel is akin to the relationship among prosecutors across different U.S. Attorney's Offices is misguided.[6] Unlike the Federal Defenders, the U.S. Attorney's Office for the Southern District of New York is led by U.S. Attorney Damian Williams, who was appointed by the U.S. President and confirmed by the U.S.

---

[3] The website for the Federal Defenders organization lists fewer than 25 individuals as attorneys in each office. *See* Federal Defenders of New York, Directory, Southern District of New York, https://www.federaldefendersny.org/sdny; Federal Defenders of New York, Directory, Eastern District of New York, https://www.federaldefendersny.org/edny.

[4] Ms. Brown has not yet been asked whether she has a personal relationship or friendship with any members of the defense team and how frequently she communicates with members of the defense team. Nor has Ms. Brown been asked how many cases adverse to the Government she has and is currently working on. Nor has Ms. Brown been asked about her personal views of the attorneys in this case, or her personal views regarding victims of violence and sexual assault.

[5] Similarly, Ms. von Dornum is the Attorney-in-Charge of the Federal Defenders for the Eastern District of New York, and though the Government assumes she does not have significant day-to-day supervision by Mr. Patton, she is also not removed by many layers of hierarchy from him either.

[6] The defense made this inapt comparison in an email submitted to the Court which the Government attaches hereto as Exhibit A for completeness of the record.

Senate. The U.S. Attorney in this District has no authority to supervise attorneys in the Eastern District of New York, and law enforcement confidentiality and custom as a practical matter create substantial separation between different U.S. Attorney's Offices. The ultimate common supervisor between an AUSA in one District and an AUSA in another is the Attorney General, who is quite plainly much farther removed in the organizational hierarchy from any AUSA than Mr. Patton is from either Ms. von Dornum or Ms. Brown.

Second, even beyond the untenable incentives faced by an "average juror" in Ms. Brown's position, one of the key objectives of seating a fair jury is to safeguard the jury from any improper outside information flow,[7] which is made unworkable by the fact that Ms. Brown and Hadden's defense team in fact work for the same organization. It is not uncommon, for example, for all-office emails to be sent during trials related to developments in trials or seeking legal or factual precedents, or for information to pass within organizations through more ordinary channels. Even assuming the defense team will take all diligent precautions against such spillage, the risk of this type of all-office email or water-cooler discussion making its way to a *sitting juror* is simply unacceptable.

Third, mandatory disqualification in situations of implied bias serves the salutary purposes not just of impartiality but also the appearance of impartiality. If Ms. Brown served as a juror, her employment situation would create a grave risk that the public would lack confidence in a verdict rendered by the jury. A verdict of acquittal, or a hung jury—even if justly rendered through faithful service by Ms. Brown—might be seen in the public as illegitimate, even an "inside job," given a juror's close association with, and subordination to, the ultimate supervisor of the defense team.

Finally, the Government notes to the Court that, while Ms. von Dornum mentioned in court that Federal Defenders attorneys have served as jurors on federal criminal trials, her subsequent email to the Court clarified that to the knowledge of Mr. Patton, no Federal Defender employee has ever been called for jury service on a case in which the defendant was represented by a Federal Defender. (Ex. A). This case should not be the first.

---

[7] For example, a principal concern of the Courts in considering post-verdict challenges to jury deliberations is preventing extraneous information from reaching the jury room. *See, e.g.*, *U.S. ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir. 1970) ("[W]hile the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra facts into the jury room.").

The implied bias inherent in Ms. Brown's adverse professional relationship with the Government, relationship with the defense counsel, and subordinate position to the ultimate supervisor of the defense team are extraordinary and mandate disqualification as a matter of law.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

by: s/ _____
    Jane Kim
    Paul M. Monteleoni
    Lara Pomerantz
    Assistant United States Attorneys
    (212) 637-2038 / 2219 / 2343

cc:    Defense Counsel (By Email and ECF)