LAW OFFICES OF
MICHAEL S. ROSS
ONE GRAND CENTRAL PLACE
60 EAST 42ND STREET
FORTY-SEVENTH FLOOR
NEW YORK, NY 10165

TELEPHONE
(212) 505-4060
FACSIMILE
(212) 505-4054
E-MAIL
michaelross@rosslaw.org

January 6, 2023

**BY ECF**

Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

      Re:    *United States v. Robert Hadden*, 20 Cr. 468 (RMB);
               Reply to Opposition to Motion to Quash.

Dear Judge Berman:

    **A.**    **INTRODUCTION.**

On behalf of our client, Anthony T. DiPietro, Esq., we are respectfully submitting this reply to Defendant Robert Hadden's January 3, 2023 opposition (ECF Doc. 220) (the "Opposition") to our motion to quash the December 1, 2022 subpoena *ad testificandum* (the "Subpoena") issued by defense counsel to Mr. DiPietro. We address below the arguments in the Opposition and demonstrate that they lack merit. Tellingly, the Opposition does not cite a single case to support its position. For the reasons set forth below and in our opening brief, we respectfully ask that the Subpoena be quashed.

    **B.**    **THE DEFENDANT'S REPLY LACKS MERIT.**

        **1.**    **INTRODUCTION.**

The Defendant argues that the Subpoena is "aimed at" non-privileged information "not **readily** available from other sources" (emphasis added), including: "(1) prior statements made by his clients that he subsequently reported to others, including the government and FBI, or to the press; (2) information regarding DiPietro's supposed coaching of witnesses; and (3) how the civil settlement amount is being determined for each witness to the extent this bears on the witnesses' motive to embroider or fabricate." (Opp., p. 6) Separately, the defense argues that it was not required to comply with F.R.Cr.P. 17(c)(3). As we demonstrate below, these arguments lack merit.

## 2. THE DEFENDANT CANNOT IMPEACH WITNESSES WITH MR. DIPIETRO'S CHARACTERIZATION OF THEIR PRIOR STATEMENTS.

*First,* the opposition to the motion to quash does not identify any "prior statements made by [DiPietro's] clients that he subsequently reported to others, including the government and FBI, or to the press." Defense counsel's failure to specify any of the statements it seeks "justif[ies] the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon.*" *United States v. Mendinueta-Ibarrro,* 956 F.Supp.2d 511, 513 (S.D.N.Y. 2013); *United States v. Shah*, 2022 U.S. Dist. LEXIS 78360, at *3 (S.D.N.Y. Apr. 29, 2022).

Further, any unspecified prior statements purportedly made by Mr. DiPietro to the government, the FBI and/or the press are all available from sources other than Mr. DiPietro. To the extent the Defendant has received discovery materials reflecting such statements, the Defendant may use those documents to impeach the victim-witnesses with any inconsistencies. However, as a matter of law, <u>the Defendant cannot impeach the victim-witnesses with Mr. DiPietro's characterization or interpretation of the victims' prior oral statements</u>. *See*, *e.g.*, *United States v. Seabrook*, 2017 U.S. Dist. LEXIS 175948, at *9 (S.D.N.Y. Oct. 23, 2017) ("A witness's prior statement may be offered to impeach that witness's credibility. … The rule requires that the statement is the witness's own; a third party's characterization of a witness's statement, on its own is insufficient. … Thus, Cooley's notes, documents, and memoranda cannot be admissible as they consist of a characterization of Rechnitz' [sic] statements and thus do not constitute impeachment material."); *United States v. Weissman*, 2002 U.S. Dist. LEXIS 24642, at *5 (S.D.N.Y. Dec. 24, 2002) ("Moreover, it is important to note that while a prior inconsistent statement of a witness may be admitted to impeach a witness's testimony, Kramer Levin – not the witnesses – prepared the interview notes. 'A third party's characterization of a witness's statement does not constitute a prior statement unless that witness subscribed to that characterization.'").

In *Weissman*, the Government moved[1] to quash a subpoena issued by the defendant to the Kramer Levin Naftalis & Frankel law firm. In granting the motion, the Court noted that "the *Nixon* standards prohibit the use of a Rule 17(c) subpoena as a fishing expedition":

> "The Defendant has not persuaded the Court that the statements made by the individuals named in the subpoena will be useful or necessary for impeachment. In both the declaration accompanying the subpoena and in an ex parte conference before the Court, defense counsel merely speculates that the materials may

---

[1] The Defendant asserts that the Government lacks standing to seek preclusion of Mr. DiPietro's testimony. (Opp., p. 8) As noted in *Weissman*, the Court can resolve the propriety of a Rule 17(c) subpoena on the Government's motion even if the Government lacks standing "because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." 2002 U.S. Dist. LEXIS 24642, at *2, n.1.

>constitute inconsistent statements of expected witnesses. By their own admission, defense counsel does not know what value the materials will have.
>
>Moreover, several cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes. … In response, Defendant argues that he needs to examine the materials to determine their evidentiary value. He asserts that the subpoena may have some evidentiary basis other than impeachment – such as to show bias, to show state of mind or as recorded recollection. Defendant's argument, however, fails because the *Nixon* standards prohibit the use of a Rule 17(c) subpoena as a fishing expedition. 'If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, the requirement of specificity will not have been met.'"

*Weissman*, 2002 U.S. Dist. LEXIS 24642, at *3-4 (internal citations omitted).

The same logic applies here, where the Defendant "merely speculates that the materials may constitute inconsistent statements of expected witnesses," likewise "does not know what value the materials will have," and does not even specify what those materials are. Accordingly, because the requirement of specificity under *United States v. Nixon,* 418 U.S. 683 (1974), has not been met, the Subpoena cannot be used for fishing and should be quashed.

### 3. THE DEFENDANT MAY NOT INQUIRE INTO MR. DIPIETRO'S CONVERSATIONS WITH HIS CLIENTS CONCERNING TRIAL PREPARATION MATTERS.

*Second*, with respect to any supposed "coaching," Mr. DiPietro was obviously required to prepare his clients, the victims in this case, for any testimony in connection with the civil matter. However, those conversations are protected by the attorney-client privilege and the work-product doctrine.

Addressing this issue, Judge Katherine B. Forrest has explained, for example, that "[i]t is expected that a witness will prepare for a deposition by discussing legal strategy and anticipated topics with his or her counsel," and "[o]pposing counsel is **of course not entitled** to know the entire substance of those communications" (but can only ask whether the witness' recollection had been refreshed with any specific document). *Estate of Jaquez v. City of New York*, 2014 U.S. Dist. LEXIS 148717, at *3 (S.D.N.Y. Oct. 10, 2014) (emphasis added). "Indeed deposition preparation may involve a combination of attorney-client privilege advice and work-product." *Id.* at *4. "The advice would relate to specific counseling; the work product would relate to the information and materials reflective of the attorney's mental processes and trial strategies." *Id.* Likewise, "[a]n attorney's general selection of materials to be covered during a preparation session are usually protected from an omnibus request for disclosure." *Id.*; *see Coleman v. City of New York*, 1999

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
January 6, 2023
Page 4

U.S. Dist. LEXIS 10405, at *5 (S.D.N.Y. July 8, 1999) ("the Corporation Counsel's discussion with non-adverse City employees about their deposition in a case in which the City (or City agency) is a defendant is protected by the City's attorney-client and/or work-product privilege").

Although the Defendant argues that he does not seek to intrude into the attorney-client privilege, the Defendant seeks to ask Mr. DiPietro questions about supposed statements made by Mr. DiPietro to his clients about the injuries suffered by other victims and his explanations "to them [about] how they could fit into federal theories of prosecution…." (Opp., p. 8)  Clearly, the Defendant is seeking to intrude into the attorney-client privilege.  Absent exceptional circumstances, an attorney cannot be compelled by subpoena to disclose such information.  *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  The Defendant's Opposition makes no effort to demonstrate any exceptional circumstances.

Without reference to any legal authority, defense counsel maintains that preventing the Defendant from calling Mr. DiPietro would violate "his right to impeach the government's witnesses, as guaranteed by the Confrontation Clause." (Opp., p. 9)  In *Swidler*, the Supreme Court left open the question of "whether exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the [attorney-client] privilege."  524 U.S. at 408 n.3.  However, defense counsel fails to identify any exceptional circumstances that exist in this case.  As *Nixon* makes clear, there is no right to serve subpoenas in criminal cases to conduct fishing expeditions for unspecified material in the hope that something will turn up.

One District Court concluded that to show exceptional circumstances a defendant "must demonstrate that the evidence is so valuable that to prohibit its admission would violate the defendant's constitutional right to present a defense." *United States v. Weisberg*, 2011 U.S. Dist. LEXIS 37221, at *15 (E.D.N.Y. Apr. 5, 2011).  That same court indicated that the determination can be made only after an *in camera* review of the privileged material.  *Id.*  Here, the defense has not specified any material for the Court to review.

In sum, there is absolutely no basis for the Defendant to question Mr. DiPietro about attorney-client privileged and work-product protected conversations with his clients, including (and especially) concerning any anticipated testimony by the victim-witnesses.  Tellingly, the Defendant does not cite any legal authority in support of his position.

### 4. Mr. DiPietro's Testimony Is Not Necessary To Explain The Civil Settlement, Which Can Be Explained By Any Other Lawyer Involved In That Case.

*Third*, the Defendant argues that Mr. DiPietro's testimony is necessary because "[o]nly DiPietro is in a position to explain to the jury how this sliding scale of financial incentives is set up, which bears directly on particular witnesses' motive to pad their testimony." (Opp., p. 8)  That is not so.

LAW OFFICES OF
MICHAEL S. ROSS

Hon. Richard M. Berman
January 6, 2023
Page 5

Mr. DiPietro's understanding of the financial incentives is not relevant in this case. Rather, to the extent that the Defendant seeks to establish some type of motive by the victim-witnesses to testify falsely, the Defendant can ask the victim-witnesses themselves to explain how much they stand to receive from the civil settlements. Moreover, multiple other attorneys involved in the civil case, including the Defendant's own civil counsel, Columbia University's civil counsel, and Columbia University's in-house counsel, are aware of the nature of the sliding scale and can also testify concerning that matter without intruding into the attorney-client privilege of the victim-witnesses.

Relatedly, the Defendant argues that "[a]s to particular award amounts, the defense can and will ask the client-patient-witnesses directly how much each believes she will receive but if a witness either answers falsely or refuses to answer, DiPietro's testimony will be necessary." (Opp., p. 8) This argument makes no sense. Mr. DiPietro cannot be called as a witness to impeach his own client by testifying that her **belief** is somehow incorrect because Mr. DiPietro is not a mind reader and does not know what his clients "believe." In any event, there are documents which fully embody the settlement agreements, and the Defendant can use those documents to impeach any inaccurate testimony concerning the settlements.

### 5. THE DEFENDANT FAILED TO COMPLY WITH F.R.CR.P. 17(C)(3).

*Finally*, the Defendant addresses the failure to comply with F.R.Cr.P. 17(c)(3) in a single sentence, arguing that the evidence sought by the Subpoena is not "confidential or personal information about a crime victim, so as to require a court order under Fed. R. Crim. Pro. 17(c), because it relates only to statements that DiPietro has already published and to statements that the victims themselves intend to publish at trial." (Opp., p. 8) We vehemently disagree, and there is no exception in F.R.Cr.P. 17(c)(3) to statements "already published" or statements which a victim "intends to publish at trial." The Defendant tellingly offers no legal authority for this *ipse dixit* statement.

For example, the Defendant seeks to ask Mr. DiPietro about statements to the victims that supposedly caused the victims to believe they had suffered additional abuse. (Opp., p. 8) Assuming such statements exist, they are clearly personal and confidential as defined in our prior December 30, 2022 letter brief (at p. 5). *See United States v. Maxwell*, 2021 U.S. Dist. LEXIS 80566, at *6 (S.D.N.Y. Apr. 27, 2021) (rejecting motion to authorize a subpoena pursuant to F.R.Cr.P. 17(c)(3) where the subpoena sought, *inter alia*, "contingency fee agreements or engagement letters between [the Boies Schiller Flexner LLP firm] and two of its clients who are alleged victims"). Accordingly, the Defendant was required to comply with F.R.Cr.P. 17(c)(3), and he plainly failed to do so.

Law Offices Of
Michael S. Ross

Hon. Richard M. Berman
January 6, 2023
Page 6

    **C.**    **CONCLUSION.**

    For the reasons set forth above and in our prior submission, we respectfully submit that the Subpoena issued to Mr. DiPietro, who has represented some of the victims in this case for over a decade, and continues to actively do so, should be quashed.

    Respectfully submitted,

    /s/
    Michael S. Ross
    Eugene Gormakh

cc:    All Counsel
       (By ECF)