Case 1:20-cr-00468-RMB   Document 231   Filed 01/11/23   Page 1 of 8



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 11, 2023

**BY ECF AND EMAIL**
The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Robert Hadden**, S2 20 Cr. 468 (RMB)

Dear Judge Berman:

      The Government respectfully submits this letter requesting that the Court (1) uphold its prior ruling by permitting the Government to present evidence of the defendant's other acts of sexual abuse and assault under Federal Rules of Evidence 404(b), 413, 401, and 403 (Pretrial Conf. Tr. at 8); and (2) uphold its prior ruling regarding the admission of portions of the defendant's guilty plea transcript (*id.* at 3), and instruct the jury to avoid nullification based on the defense's arguments (Trial Tr. at 43).

**I.**     **The Court Should Uphold Its Ruling Permitting Evidence of the Defendant's Other Acts of Sexual Abuse and Assault under Rules 404(b), 413, 401, and 403**

      On December 29, 2022, the Court granted the Government's motion to admit evidence of the defendant's other sexual assault and abuse crimes. (Pretrial Conf. Tr. at 8 ("The government's motion to admit evidence of defendant's other sexual assault and abuse is granted under Rule 413 and Rule 404(b).")). On the first day of trial two days ago, the defendant renewed his motion to preclude the Government from offering such evidence. (Trial Tr. at 149; *see also* Dkts. 228, 229 (parties January 9, 2022 filings). The Court has received and reviewed much briefing on this issue.

      **A.**     **Background**

      By way of background, on June 20, 2022, the Government notified the defense that it planned to present evidence of the defendant's other acts of sexual assault and abuse under Rules 413 and 404(b) by calling 25 non-statutory victims and at least two witnesses. On July 18, 2022, the Government moved to offer evidence of the defendant's other sexual assaults and abuse through 18 victim witnesses, two nurse witnesses, and certain outcry witnesses (excluding custodians). (Dkt. 173). On December 21, 2022, the Government significantly narrowed its "other acts" evidence to 9 victim witnesses, two nurse witnesses, and three outcry witnesses (excluding custodians). (Dkt. 202). The Government has thus far presented "other acts" evidence as to three victim witnesses and one nurse witness. The Government plans to present "other acts" evidence tomorrow as to three victim witnesses and one nurse witness. If permitted to call these witnesses,

the Government will have called six victim witnesses and two nurse witnesses under Rules 413 and 404(b).

### B. *United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017)

*United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017), is particularly instructive. There, the defendant was charged with enticing one minor victim under 18 U.S.C. § 2422(b), and the Second Circuit upheld the District Court's admission of portions of four videos showing his prior sexual assaults of two minor girls under Rule 413. *Id.* at 177. The Second Circuit concluded that the evidence was "highly relevant" to the charges "given the severity of the crimes charged, the similarity between Schaffer's acts in the videos and the acts alleged in the indictment, and the fact that Schaffer argued at trial that the government failed to prove his intent to engage [the victim] in illegal sex." *Id.* at 181. The Second Circuit held that while the evidence was prejudicial given its nature, that "prejudice was not unfair," particularly in light of the evidence's exceedingly probative value. *Id.*

The District Court in *Schaffer* explained:

> Schaffer's prior acts demonstrating his sexual interest in minor females are extremely relevant to the question of his intent here. This is particularly so because of the similarities between the conduct shown on the videos and Schaffer's alleged conduct with [Sierra]. The videos show a pattern of Schaffer's enticing girls into situations in which they are alone with him and making them try on swimsuits before forcing them to engage in sexual conduct. This pattern is highly probative of the question of his intent here.

*Id.* at 182. So too here.

The defendant, moreover, enticed victims under the auspices of medical care. Unlike in other enticement cases where a defendant's intent may be more clear, here, the defendant can argue that he did not have the requisite intent to sexually abuse the victims.

### C. The Evidence Is Critical to the Government's Case

The defendant's principal argument at trial is that he did not intend to sexually abuse patients at the time he induced them to travel. The defense has stated:

> We're not challenging that at the time of the abuse, he had the intent to abuse them. We're challenging whether, when he said, Come back in a year, he had some premeditated plan . . . . We're saying it happened opportunistically and impulsively.

(Trial Tr. at 44).[1] Evidence of the defendant's other acts of sexual abuse and assault remain critical to establish the defendant's ongoing intent to abuse the victims and to disprove the defense's claim that his acts of sexual abuse were impulsive rather than premeditated for the following reasons:

- The pervasiveness of the defendant's abuse of patients clearly goes to his ongoing interest and intent to use his position as an OB/GYN to sexually abuse patients. It shows that the defendant was thinking of his own sexual gratification during appointments with patients and when he was examining and touching their breasts and vaginas, and supports the inference that he had further acts of sexual abuse and assault in mind when he caused the statutory victims to travel across state lines by directing them to schedule follow-up appointments. Put differently, the defense assertion that the defendant acted "opportunistically and impulsively" would have more appeal if the defendant had engaged in merely a few isolated acts of abuse; the pattern of serial abuse refutes such a claim.

- The as-yet-uncalled victims and witness show that the defendant abused patients over his tenure as a physician in a way that the testimony to date does not fully reflect, and is key to proving the Government's case. Their testimony shows that he abused patients in the late 1980s/early 1990s, in or about 2004, in or about 2007, and from in or about 2008 to 2011. The timeline and escalation of the defendant's abuse across patients is highly probative of his intent, and again is critical to rebutting the defense argument that his acts of abuse were isolated or "opportunistic." Again, a pattern of conduct that proceeds over a course of years is far less likely to be "opportunistic" or "impulsive."

- The "other act" evidence establishes that the defendant employed certain means and methods across patients to sexually abuse them by, among other things, grooming patients to make them feel comfortable with him, creating opportunities to be alone with patients, escalating his abuse over time for certain patients, and exploiting victim vulnerabilities, including their lack of experience with OB/GYNs. That predatory behavior demonstrates premeditation.

With respect to the victims and witness the Government plans to call tomorrow, the Government expects they would testify, in sum and substance as follows:

- <u>Charlotte Brooks</u> (pseudonym): Ms. Brooks was a patient of the defendant from around 2005 to 2007. The defendant asked Ms. Brooks, for example, if she was able to achieve orgasm and if she had female sex partners. The defendant conducted a breast and vaginal exam outside the present of a nurse. During a vaginal exam, the defendant went under the sheet draped over Ms. Brooks's lap, and licked her vagina. Ms. Brooks is a particularly important witness because she is not a party to any civil lawsuits and she does not have a civil attorney. Based on the defense's pretrial briefing and questions on cross-examination, including of Sara Stein today, the Government anticipates that Ms. Brooks's testimony will

---

[1] As previously noted for the Court, the defense has proposed a legally unsound, alternative definition of "inducement" that will be the subject of the charge conference, among other things. (Dkt. 229 at 2 (quoting Dkt. 195 at 29) (Request to Charge)).

be important to rebut the defense's claims in summation about any victim's financial incentives or "coaching" by Mr. DiPietro.[2]  Ms. Brooks is flying to New York from out of state and she will be at the courthouse tomorrow at 8:45am to testify tomorrow.

- Gabriella Diaz (pseudonym):  Ms. Diaz was a patient of the defendant from around 2008 to 2011.  The defendant conducted breast exams at almost every appointment with Ms. Diaz when she was pregnant, including by fondling her breasts, squeezing and grabbing her breasts, tugging on her nipples, and tugging both nipples at the same time.  After abusing Ms. Diaz at several appointments, the defendant then touched her clitoris and licked her vagina.  Ms. Diaz has flown to New York from out of state and she will be at the courthouse tomorrow at 8:45am to testify tomorrow.

- Victim-12:  Victim-12 was a patient of the defendant from in or about 2004 to 2005.  The defendant groomed Victim-12 by asking her about her boyfriend, his penis size, her sex life, and how she achieved orgasm.  Outside the presence of a chaperone, the defendant touched Victim-12's clitoris, spread Victim-12's labia, pulling back the hood of her clitoris, and showed Victim-12 how to masturbate herself.[3]  Victim-12 is flying to New York from out of state, and she will be at the courthouse tomorrow at 8:45am to testify tomorrow.

- Witness-1:  Witness-1 was a nurse at Columbia.  After the defendant had finished examining a patient, Witness-1 left the exam room.  She went back into the exam room to get her stethoscope and found the defendant between a victim's legs apparently masturbating her with his fingers.  This occurred in or about the late 1980s or early 1990s.  Witenss-1's testimony is extremely probative in showing that the defendant abused patients over the tenure of his career and is critical evidence of his intent to induce patients to travel to be sexually abused, as well as to rebut the defense's claim that his sexual assaults were spontaneous.  Witness-1 has been prepared to testified all week, and she will be at the courthouse tomorrow at 8:45am to testify tomorrow.

The Government bears the burden of proving the defendant's intent to sexually abuse the statutory victims beyond a reasonable doubt.  The above evidence is critical to the Government's case.  It is not unduly prejudicial or misleading under Rule 403; in fact, to preclude the Government from offering such evidence would mislead the jury into thinking that the defendant's acts of sexual abuse were opportunistic and not part of his broader pattern of predatory conduct.

---

[2] The defense objected to Ms. Brooks's testimony on Monday noting that it had not yet received Ms. Brooks's medical records.  Such an objection is meritless, as the defense has had Ms. Brooks's medical records since Monday when the Government first received them and promptly produced them.  The total volume of records is approximately 74 pages, and the Government only anticipates offering evidence of the dates of Ms. Brooks's appointments with the defendant, in the form of 7 pages of records and a summary chart.

[3] The Government described Victim-12's anticipated testimony in its opening statement in reliance on the Court's ruling admitting her testimony.  (Trial Tr. at 37).

**II.     The Court Should Uphold Its Prior Ruling Regarding the Defendant's Guilty Plea, and Provide a Limiting Instruction to Prevent Jury Nullifcation**

    **A.     The Defendant's Request to Revisit the Court's Ruling on the Defendant's Plea Should be Denied**

The defendant provides no basis to reverse the Court's considered decision to admit certain portions of the plea transcript.  (12/22/2022 Tr. at 3-4).  The defendant's proffered additional line of the plea transcript is relevant only to promote jury nullification, would paint a misleading picture of events, and would saddle the parties and the Court with a minitrial concerning the internal knowledge of an entirely separate prosecuting body.

The Court, presented with motions *in limine* in which the parties disagreed upon which if any portions of the plea agreement should be admitted in evidence, made the considered decision to admit the basic essential facts of the defendant's plea and let the parties reach agreement if additional portions should be admitted on any conditions.  (*Id.*).  Developments since that ruling have shown the wisdom of that approach.  While the Government maintained its position articulated in its motion *in limine* filings (Dkt. 186 at 2-4),[4] the defense adopted a new strategy that mooted the previous disputes regarding which portions of the transcript to admit.  After previously asking to admit certain plea terms to show that his plea was coerced and his confession false, the defense has now admitted that his plea was uncoerced and his confession was truthful.

The defendant now wishes to admit a single term in his plea deal—a term that the defendant previously urged as evidence that his plea was false—to serve the opposite purpose, of allegedly showing that his plea was forthcoming and shows his acceptance of responsibility.  Yesterday in court, defense counsel asked on the record for the Court to reconsider its ruling and admit a sentence in his plea agreement providing the defendant coverage for similar crimes known to the New York County District Attorney's Office as of that date (the "coverage provision").  (*See* Tr. at 552 (seeking admission of sentence reading, "The People further agree that the defendant will not be prosecuted for any similar crimes which are known to the District Attorney's Office as of on or before February 22, 2016.")).[5]  The basis asserted by the defense for offering the coverage provision is to respond to alleged suggestions in questioning and in the Government's opening statement that the defendant's acceptance of responsibility in his plea was lacking.  (*See* Tr. at 552-53; *see id.* at 553:1-2 ("And that way it's clear, your Honor, he is not denying responsibility.")).

The defendant's claim that he has accepted responsibility because of the coverage provision is belied by the fact that the defendant <u>only admitted guilt</u> in the state plea as to sexually

---

[4] Shortly after the Court's ruling, the Government communicated to defense counsel that it would consent to the admission of the additional portions of the plea that were outlined in its motion papers under the terms set forth in those papers.  The defendant declined to agree to those terms.

[5] Although defense counsel made it appear that the Government had consented to the introduction of the coverage provision, in fact the Government only indicated a willingness to accept it under certain highly limited terms and conditions—conditions that the defendant, as noted above, rejected.  (*Compare* Tr. 552:17-21 *with* Dkt. 186 at 3 n.5).

abusing two victims on two specific dates. He did not accept responsibility for the rest of the seven counts of the state indictment or for any other acts of sexual abuse.

The asserted basis for the defendant's request to admit the coverage provision is simply nullification. Whether the defendant fully accepted responsibility or not in connection with his 2016 plea to state charges is no part of any element of, or defense to, the offenses charged in the S2 indictment. Instead, it is—precisely—the argument that the defendant "has already been punished or punished enough" (Pretrial Conf. Tr. 23), which is exactly what the Court has held that the defendant cannot do (*id.* at 23-24 (granting Government motion to preclude arguments sounding in jury nullification)). Thus, the defense does not even articulate a prima facie basis for reconsideration of the Court's ruling on the plea transcript.

Worse, actually admitting this evidence would paint an incredibly misleading impression and compel a minitrial. The coverage provision was one benefit among several that were received in exchange for the defendant's plea, and indeed, a number of them, such as the agreement to a nonincarceratory sentence for the defendant's assaults, directly undermine the defendant's arguments that he accepted responsibility. Indeed, presenting the coverage provision would leave the jury completely in the dark regarding which offenses were known to the New York County District Attorney's Office on December 22, 2016. It is hard to imagine a better case for exclusion under Rule 403 than evidence that would compel a minitrial about the internal knowledge of a separate prosecutor's office six years ago, all in order to advance an argument that sounds only in nullification and has no bearing on the elements of the charged offenses. The Court should adhere to its considered rulings admitting the indicated portions of the plea transcript (Pretrial Conf. Tr. 3-4), and forbidding arguments sounding in nullification (*id.* at 23-24).

### B. The Court Should Instruct the Jury that the Defendant's Acceptance of Responsibility in his State Case is Irrelevant

The defense opening statement sounded heavily in nullification. Defense counsel began by reading the defendant's guilty plea, ultimately asking the jury "So if Robert Hadden accepted responsibility for the sexual abuse seven years ago, why are we here? And why are you here?" (Trial Tr. at 43). Counsel then repeatedly described the charged offenses as "technical" (Tr. 43, 44, 46), and skirted the Court's ruling prohibiting reference to the #MeToo social movement by invoking a charged reference to so-called "cancel culture." (Tr. 48 (defense counsel suggesting prosecution was prompted by a belief that the defendant "deserve[d] to be canceled and condemned")). According to the defense, "this is a case that tests our criminal justice system." (*Id.*). These themes have nothing to do with whether the evidence proves the elements of the offense, but sound instead purely in nullification.

Given these attempts to emphasize the defendant's supposed acceptance of responsibility, and particularly in light of the defense's attempts to offer the coverage provision to highlight that supposed acceptance, it would be appropriate for the Court to instruct the jury that that issue is simply irrelevant. Such an instruction would not only adhere to the Court's ruling on arguments

sounding in jury nullification, it would also—by instructing the jury that any lack of acceptance of responsibility is irrelevant—dispel any arguable prejudice the defense complains of.[6]

An appropriate instruction directing the jury to disregard the issue of acceptance of responsibility would properly focus them on their task of determining whether the Government has proved the elements of the offense beyond a reasonable doubt. Specifically, the Government respectfully requests that the Court instruct the jury as follows:

> You have heard evidence regarding the defendant's guilty plea in New York state court. I instruct you that the issue of the defendant's acceptance of responsibility or lack of acceptance of responsibility is irrelevant to your task as jurors. Your task, as I will instruct you further at the close of the evidence, is to determine whether the Government has proven the elements of the offenses charged in the indictment beyond a reasonable doubt. Whether you believe the defendant accepted responsibility or did not accept responsibility when he pled guilty in New York state court has no bearing on that question.

The Government respectfully submits that this instruction is balanced, warranted by law, and appropriate to dispel the defendant's suggestion that he has been punished enough in light of his plea, as well as any arguable prejudice that the defendant complains of from any suggestion that he did not fully accept responsibility.

---

[6] The Government conferred with the defense, which indicated it opposed an instruction along these lines.

## CONCLUSION

For the foregoing reasons, the Court should (1) uphold its prior ruling by permitting the Government to present evidence of the defendant's other acts of sexual abuse and assault; and (2) uphold its prior ruling regarding the admission of portions of the defendant's guilty plea transcript, and instruct the jury to avoid nullification based on the defense's arguments.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: s/_____
Jane Kim
Paul M. Monteleoni
Lara Pomerantz
Assistant United States Attorneys
(212) 637-2038 / 2219 / 2343

cc:    Defense Counsel (By Email and ECF)