*United States v. Hadden*,
S2 20 Cr. 468 (RMB)

# EXHIBIT D

**(Defendant's Sworn Declaration to the Court,
dated January 4, 2021)**

**EXHIBITS TO THE GOVERNMENT'S SUBMISSION
SEEKING THE DEFENDANT'S POST-CONVICTION
DETENTION PENDING SENTENCING**

**Filed: January 28, 2023**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                          :
UNITED STATES OF AMERICA,                 :         20 Crim. 468 (RMB)
                                          :         DECLARATION OF
DEFENDANT                                 :
                                          :         ROBERT HADDEN
      -v-                                 :
                                          :
ROBERT HADDEN,                            :
                                          :
      Defendant.                          :
                                          :
------------------------------------------------------x

ROBERT HADDEN, declares the following under penalty of perjury pursuant to 28 U.S.C. §1746:

1. I am the defendant charged in the above entitled matter. I make this declaration in further support of my previous application for Appointment of Counsel. I have personal knowledge of the information contained in this declaration.

2. On September 9, 2020 at approximately 6:30 a.m., I was arrested at my home in New Jersey by Federal Authorities. I was brought to the United States Courthouse for the Southern District of New York and informed that I had been indicted. Prior to that time, I had no knowledge of any Federal investigation of me.

3. After my arrest, I informed courthouse staff that Isabelle Kirshner had represented me in my prior case in a New York State proceeding. I believe she was notified of my arrest by the courthouse personnel.

4. Later that day, I was arraigned before Magistrate Judge Robert W. Lehrberger. The arraignment was conducted by telephone and Ms. Kirshner and Wayne Gosnell, another attorney at Clayman & Rosenberg LLP who represented me in my prior case, participated in the arraignment. Mr. Gosnell participated in the interview with Pre-Trial Services earlier in the day and I was able to speak with Ms. Kirshner about the bail proceeding earlier, but I did not speak with Mr. Gosnell or Ms. Kirshner about my retaining them to represent me in this case at that time. We did discuss, and I agreed to, Ms. Kirshner and Mr. Gosnell appearing on my behalf solely to handle my arraignment and issues that arose from my arraignment subject to approval by the court.

5. Consistent with the limited purpose for which I authorized Ms. Kirshner and Mr. Gosnell to appear on my behalf, Ms. Kirshner informed Magistrate Judge Lehrberg that Clayman & Rosenberg LLP was appearing in the limited capacity of dealing with my arraignment and bail issues. To my understanding, the court agreed to that limited scope engagement when it was presented to them. To date, I have not retained Clayman & Rosenberg LLP to represent me in connection with this matter and I do not intend to do so.

6. I was released on bail after my arraignment, but there were a number of steps that needed

to be taken to assure that the bail issues were properly addressed. A lien needed to be placed on my home, sureties were interviewed and documents were signed and submitted in order to secure the bond. At my request, those matters were addressed by Mr. Gosnell and Ms. Kirshner in the weeks that followed my release from custody. During that time period, I had general discussions with Clayman & Rosenberg LLP regarding the possibility of my retaining them.

7. On September 17, 2020, the Court held a telephone conference at which time Ms. Kirshner reiterated with my knowledge and approval that her firm had not been retained to represent me and that they were only appearing in the limited capacity that was approved at my arraignment. The Court also agreed to the limited scope of their representation of me. Ms. Kirshner also informed the Court that the issue of representation would be resolved within the next few weeks.

8. Over the course of the next few weeks, I had a number of conversations with Ms. Kirshner and other members of her firm about retaining Clayman & Rosenberg LLP to represent me. It became clear to me that given the scope of the case, the anticipated volume of the evidence, the length of the trial and the necessary out-of-pocket expenditures, I would not be able to afford to retain them to represent me in connection with this case and I informed them as such.

9. After informing them of my decision and generally discussing my financial situation, Ms. Kirshner and Mr. Gosnell suggested that I submit a form seeking appointment of counsel from the CJA panel. Mr. Gosnell emailed me a form, which I completed and signed on October 15, 2020. I returned that form to Mr. Gosnell, which I understood would be submitted to the Court on my behalf.

10. At the next Court conference, the Court rejected my application for appointment of counsel and directed that I submit a more comprehensive financial affidavit, detailing my finances for the last three years. As directed by the Court, and at a cost of $5,000, I retained an accountant who completed the requested financial forms (the "Koenig financial statement"). Those forms were submitted to the Court on December 4, 2020.

11. Between December 4, 2020 and the next court conference on December 23, 2020, I do not believe the court posed any questions regarding the Koenig financial statement or any documents contained therein.

12. On December 23, 2020, the Court rejected my application for appointment of counsel and stated in its oral ruling and in a later written decision the basis for this decision. Many of the Court's conclusions appear to be based on inaccurate assumptions and require clarification.

13. The Court pointed out that I indicated that I have $145,000 in cash. That amount is now approximately $130,000 and represents all of my total liquid assets.

14. The Court stated that my financial records include recent cash transfers totaling a quarter of a million dollars from me to my wife and daughter. This requires clarification.

15. In 2019, I gave my daughter a gift of $100,000.00 to assist her in purchasing a home. I did not make this gift in order to be eligible for court-appointed counsel. This gift was made well before I was aware of this investigation. I cannot recover the gift and do not have access to the $100,000 I gave to my daughter.

16. At the time that the Koenig financial statement was prepared, I had approximately $145,000 in liquid assets. This sum also appears on my CJA Form 23 that was submitted in October 2020. After my arrest, the bank where I had the funds, Valley Bank, notified me that they were closing my account. Thereafter, I transferred the same funds to Bank of America. Soon thereafter, Bank of America closed my account. I then transferred the

same funds to an account my wife alone maintained at USAA Federal Savings Bank. There was no intent to hide the funds or transfer them to third parties; I was simply unable to maintain an account because of the publicity attendant to this arrest and ultimately transferred the funds to my wife. We use these funds for our living expenses. As the Koenig financial statement makes clear, I still have access to these funds. To reiterate: these fund transfers represent the same asset of approximately $145,000 that I initially disclosed and do not represent additional funds.

17. The Court also noted that I disclaimed my half of my father's estate. This was done in May 2020, prior to my having any knowledge of this case. My portion of my father's estate will be divided between my daughter and my son. The estate has not been settled and the proceeds will only be distributed when two homes, one in Florida and one in Long Island, are sold. There is no way to predict when those properties will be sold; the current state of the real estate market is not favorable. In any event, the proceeds of those sales will go to my children.

18. My daughter has refused to speak with me since my arrest in this matter. My son is 30 years old and seriously disabled. He requires constant care for his personal needs. His portion of my father's estate will be overseen by my wife, who is his sole legal guardian.

19. As stated above, the decision to transfer my inheritance to my children preceded my arrest in this case and the proceeds of that estate have not been distributed. I have no legal right to any proceeds from my father's estate. Nor do I have any expectation that my daughter or my son (through his legal guardian) will provide any of those proceeds—which they do not currently possess—for my legal defense.

20. I have no other family members or friends who I can look to for assistance in retaining counsel.

21. In the Court's December 23, 2020 decision, at page 12, paragraph 6, Your Honor indicated that there were deficiencies in the statements provided to the Court. I will try to address them. I understand that tax returns were illegible. I am attaching the returns in question as Exhibit A (2018 Return) and Exhibit B (2019 Return).

22. I have been collecting disability payments since 2012 through policies I have with Northwestern Mutual. The payments have been approved by the insurance provider, and will cease when I turn 65 years old.

23. The Bank of America account ending in "3603" was a checking account Mr. Hadden held jointly with his wife. A copy of one of the statements is contained on page 69 of the financial statement. This account was closed by Bank of America as a result of this case and the money was transferred to Mr. Hadden's wife's USAA account (see paragraph 16 above)

24. The account ending in "1285" is a custodial account for my son. My wife is the custodian of that account.

25. Currently, we maintain a health insurance policy through Columbia Presbyterian which provides coverage to my wife and me. My son is covered by Medicaid. We have been informed that the cost of our policy will increase to $3074.00 per month as of Jan. 1, 2021.

26. In 2016, my mother in law died. My wife's inheritance was $10,000, which was reflected on our 2017 tax return, as estate of Margaret M. Those funds were my wife's and were depleted shortly after receipt which is why they are no longer reflected on our monthly cash flow statement.

27. The home in which I reside is jointly owned by my wife and me. A lien was placed on the home in order to secure the bond. It is the only home that we own and regardless of whether we could sell it or not, we would still require a place to live.

28. Finally, in reviewing the Court's December 23 Decision & Order, I discovered an error in the Koenig financial statement regarding my individual whole life insurance policy amounts. In calculating the "cash surrender value" of the policies, there is a mathematical error. I asked Northwestern Mutual to provide me with an updated summary of the policies, a copy of which is attached as Exhibit C. As is clear from the document, the "cash surrender value" of the policies is $39,214.14. My wife is the beneficiary of all of these policies.

29. Given that I have few liquid assets and that what I do have is not close to what Clayman & Rosenberg LLP has asked as a retainer in this matter (which does not include anticipated out of pocket costs such as an investigator or experts) I do not wish them to represent me in this matter.

30. Given the Court's December 23 Decision & Order, I have also made inquiries of a number of other lawyers in an attempt to hire private counsel. Given the scope and complexity of the allegations against me, the expected length of a trial, the necessity to hire investigators and experts, and the anticipated work required to defend me in this case, I have been unable to find any attorney who will agree to represent me with the limited assets I actually have access to. This is partially due to the fact that the approximately $145,000 in liquid assets is being used to ensure that the mortgage on my house is timely paid, among other bills. If I were to use all or most of that money to pay for an attorney it would still be insufficient for counsel to properly litigate this case *and* it would result in my family losing their home.

31. I am prepared to contribute, to the extent that I am able, personal funds to supplement the cost of counsel or other expenditures that are necessary for my defense so long as this does not result in my family being unable to afford the necessities of life. I have discussed a number of proposals with potential attorneys but they would require court approval. For example, I would be agreeable to using a portion of my assets (determined by the Court) to hire private counsel who is also on the CJA Panel and if their work exceeds the amount I provided them then the remaining fees and expenses could be paid under the court-appointed counsel plan. This would allow my counsel to remain in place throughout this case and hopefully allow me to provide for necessary expenditures for my family.

32. I respectfully request that the Court reconsider its decision to deny me appointed counsel. I am aware that I am facing extremely serious charges that could potentially result in life imprisonment. Appointed counsel with appropriate resources is my only hope for effective assistance of counsel.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 4, 2021.

*[signature]*
Robert Hadden