# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

June 1, 2023

**BY EMAIL**

Ashley Geiser
United States Probation Officer
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Robert Hadden**
             **20 Cr. 468 (RMB)**

Dear Officer Geiser:

      We write to reply to the government's response to the defense objections to the first draft of the PSR, and to respond briefly to the government's objections to the draft PSR.  In those objections, the government did not object in any way to the PSR's calculation of the Guidelines' total offense level of 24.  However, yesterday, in responding to the defense objections, the government for the first time seeks the application of the fraud enhancement and asserts that Mr. Hadden's total offense level should be 28, rather than 24, as calculated in the PSR.  *Gov't Resp. to Def. PSR Objs.*, at 1, 12.  Our opposition to that enhancement is discussed below, but we note here both the untimeliness of the government's objection and the fact that it appears to be made solely in response to our objections to the Guidelines calculation in the draft PSR.

      Because of the short timeline for us to reply to the government's lengthy response to our objections, we do not address every point below or provide every authority for our position.  We focus here on particular issues but in doing so please note that we are not waiving any of our initial objections set forth in our May 23, 2023, letter.

**Reply to Gov't Response to Our Objections to the Draft PSR**

**Relevant Conduct (PSR Paragraphs 2, 4, 5, 7, 22, 45-71)**: Much of the government's response to our objections turns on its claim that all allegations of sexual abuse by Mr. Hadden constitute "relevant conduct" to the counts of conviction.  They do not.

      As an initial matter, the government states that it agrees with Probation's conclusion that all known abuse constitutes "relevant conduct" under U.S.S.G. § 1B1.3. But that's not what the PSR concludes.  It -- properly under the case law, the Guidelines' definition, and the grouping

1

rules -- does <u>not</u> find that abuse of anyone other than the four statutory victims constitutes "relevant conduct." Instead, in a subsection entitled "Additional Offense Behavior," PSR at p. 11, the PSR describes the other allegations of abuse, without finding that they are "relevant conduct" under the Guidelines. In our initial objections, the defense had requested that these other allegations be placed in the "Other Criminal Conduct" section rather than the Offense Conduct section because they are <u>not</u> considered "relevant conduct" to the Mann Act convictions under the Guidelines.

Our position is correct. As the Second Circuit has made clear, "relevant conduct" is a technical term under the Guidelines, and has a definition very different from (a) that used in ordinary conversation or (b) the conduct that may be considered under the broader purview of the Section 3553(a) factors. *United States v. Wernick*, 691 F.3d 108, 110 (2d Cir. 2012).

The government's arguments that the other allegations of abuse meet the Guidelines' definition rest on a flawed premise. The government first sets out the "relevant conduct" definitions of U.S.S.G. §§ 1B1.3, subsections (a)(1)(A), (a)(3), and (a)(4). Critically, it omits the definition included in subsection (a)(2). Having implicitly disclaimed reliance on subsection (a)(2), the government then turns around and extensively discusses, quotes, and applies Application Note 5, which, by its explicit terms, <u>only</u> applies to subsection (a)(2). The government entirely fails to explain or justify, with any legal authority, why it believes that Application Note 5 -- and, thus subsection (a)(2) -- applies.

Undoubtedly, the reason for this is that the government has no way to justify its reliance on Application Note 5 and, thus, subsection (a)(2). As the defense pointed out in its initial objections, the Guideline itself states that subsection (a)(2) applies only to offenses that are grouped under § 3D1.2(d). Mann Act offenses are specifically excluded from grouping under § 3D1.2(d). *See United States v. Cade*, 452 F. App'x 47, 48 (2d Cir. 2011) (interpreting identical provision of § 2G1.3: "multiple counts . . . are not to be grouped together under § 3D1.2"); *United States v. Weiner*, 518 F. App'x 358, 364 (6th Cir. 2013) (district court erred in using § 1B1.3(a)(2) definition of "relevant conduct" in case involving § 2G1.3). Thus, even if the defendant did engage in a "scheme" or "course of conduct," it does not alter the analysis that this definition does not apply to Mann Act conduct. Similarly, any putative "modus operandi" is irrelevant – this term appears only in Application Note 5 which, as discussed, is legally inapplicable to the counts of conviction.

The cases cited by the government support the defense view. The other offenses deemed "relevant conduct" in *Ahders* were abuse of two other children <u>at the same time and in the same place, one of them together with the charged victim, and as part of the same production of child pornography</u> as the abuse of the charged victim. *United States v. Ahders*, 622 F.3d 115, 119-120 (2d Cir. 2010). The defendant in *Ahders* manufactured child pornography of the children touching each other. *Id*. That is a far cry from the situation here, where each victim had no idea that the defendant had abused anyone else. The fact that abuse of other patients also occurred in an ob/gyn setting (across two decades and numerous locations) is not "at the same time," as *Wernick* makes clear, and does not turn a distinct act of sexual abuse into "relevant conduct" under the Guidelines' definition. Indeed, *Wernick* made clear the sort of behavior that might

bring other episodes of sexual abuse within the definition of § 1B1.3, noting "[t]he government has not offered any evidence that Wernick, for example, simultaneously engaged in sexual activities with teenagers [the additional victims] and young children, or that he was able to use the fact of his pursuit of sex with children to persuade the teenagers to have sex with him." *Wernick*, 691 F.3d at 116.

Furthermore, the government cites no authority for its theory that the defendant's other abusive conduct qualifies as being "in preparation" for the counts of convictions because he "honed" his tactics over time, a claim that would essentially make all similar crimes relevant conduct, contrary to the definition in § 1B1.3. Any criminal presumably gains knowledge and skill with experience. Yet prior or subsequent crimes that occur on different occasions with different victims, regardless of their similarity, are generally not deemed relevant conduct. *Wernick* emphasizes this in its discussion of a bank robber who is planning to rob one bank, but who then opportunistically robs a different bank. This is not relevant conduct. *Id.* at 115 ("Suppose a bank robber spends months executing an elaborate scheme to rob Bank A, but opportunistically robs Bank B on a particular day during that period. Without more—for example, proof that robbing Bank B was done as practice ("in preparation for") for the robbery of Bank A—the crimes would be treated separately as unrelated acts.")

Finally, it is not clear why the government relies on U.S.S.G. § 1B1.3(a)(3) and (a)(4). Subsection (a)(3) applies when the offense "includes creating a risk or danger of harm as a specific offense characteristic." The offense of conviction does not. And subsection (a)(4) defines relevant conduct as "any other information specified in the applicable guideline." Guideline 2G1.1 does not specify any other such information.

In short, the government has jumbled together and mixed up the various definitions of "relevant conduct" found in § 1B1.3, and asks the Probation Department to apply them in a scattershot way. However, as the defense has made clear, the only definitions relevant to this case are those in §§ (a)(1)(A) and (a)(2). Neither allows the allegations of the other abused patients to be considered relevant conduct. Moreover, the Second Circuit law the government relies on supports the defense view: *Wernick* controls this case, not *Adhers*.

**PSR Paragraph 16:** The government opposes the defense's request that the PSR be edited to remove "including minors" from the Offense Conduct portion of the PSR. But, as set forth in our initial objections and above in the discussion of "relevant conduct", the "offense conduct" in this case is solely the crimes of conviction, none of which concerned a minor. The allegations regarding sexual abuse of two minors are not "relevant conduct" to the "offense conduct" under the Guidelines definition and thus should not be included in the Offense Conduct section.

**PSR Paragraph 23:** Our language was not imprecise. As set forth in our original objections, the only "victims" for purposes of the Guidelines analysis are those in the counts of conviction. This paragraph concerns the "Offense Conduct," not other criminal conduct, so Charlotte Brooks, Gabriella Diaz, Anna Moore, Laurie Kanyok, and Isabella Hernandez should either not be mentioned or it should be made clear they are not victims for purposes of the Guidelines or the

CVRA. This too stems from the government's misreading of what constitutes "relevant conduct" under the Guidelines.

**PSR Paragraph 33:** The government misunderstands our objection.  We objected to the statement that Mr. Hadden conducted "vaginal exams *without any medical reason*" "at almost every appointment."  Our objection was to the idea that there was no medical reason for her to ever have a vaginal exam.  We were not contesting that there were instances in which she was sexually abused during a vaginal exam.  But a vaginal exam can both be conducted for a legitimate medical reason – an annual exam, for example – and sexual abuse can occur during it.  Similarly, medical care can be provided and, at the same appointment, abuse can occur.  (That is where the abuse of trust comes in.)

**PSR Paragraph 72:** We are confused by the government's request to move the last two sentences of this paragraph to the end of Paragraph 16, which describes the "Offense Conduct".  The substance of these two sentences is already contained in Paragraphs 16, 20 and 22.  Accordingly these two sentences should simply be omitted.

**PSR Paragraph 73:** We have no objection to the government's suggestion that the third sentence (the substance of which has already been repeated several times in the report) be deleted.  The last sentence of the paragraph does not pertain to the Offense Conduct of which Mr. Hadden was convicted at trial and thus, for the reasons set forth above, regarding Paragraph 16, and in our original objections, should not be included here at all.

**PSR Paragraph 117 (Acceptance of Responsibility):**  The government really wants Mr. Hadden to be pure evil.  When he pleads guilty, it doesn't count.  When he goes to trial and challenges only the interstate commerce element, he is demonized.

- In connection with the state case, Mr. Hadden pleaded guilty to sexually assaulting two victims <u>as part of a plea agreement with the Manhattan DA's office that encompassed all victims then known to them.</u>  *See* Attached Plea Agreement and Email from Manhattan DA's Office.  In connection with this very PSR, what we have disputed is what information should be included <u>as Offense Conduct</u>. That's a technical question under the Guidelines and does not go to Mr. Hadden's acceptance of responsibility for sexual abuse.
- Mr. Hadden stopped practicing medicine voluntarily in 2012, long before the state guilty plea.
- We don't know what it means that the government put "enrolled" in therapy in air quotes.  But, again, if Mr. Hadden had not gone to therapy for a decade, no doubt the government would have said that showed his failure to work on his issues. When he does go, they somehow fault him for that.  He went to therapy voluntarily, not at any mandate or as part of any agreement, and he went consistently, for a 10-year period.
- The defendant does not dispute the sexual abuse by trying to draw a legal distinction between "victims" for purpose of this sentencing on these federal crimes and other people who were abused by him. That distinction is an important one under the Guidelines.

- It is mind boggling that the government would write that Mr. Hadden's agreement to a wide range of protections for the victim witnesses is unpersuasive because it believes we would have lost any challenges to those protections. Our agreements went far beyond what any court has granted, including our voluntarily agreeing not to cross-examine the witnesses on topics that went to their credibility but might embarrass them. We did that because it was important to Mr. Hadden to not denigrate these witnesses but solely to challenge the legal element of "inducement" across state lines under the Mann Act.

**Vulnerable Victim Enhancements (PSR Paragraphs 82-83, 89-90, 96-97, 103-104):** Again, the government's argument that the vulnerable victim enhancements should apply relies on the idea that all the alleged sexual abuse is "relevant conduct" under the Guidelines. But it is not. U.S.S.G. § 3A1.1, App. Note 2, defines a vulnerable victim as including relevant conduct under §1B1.3. As discussed above, § 1B1.3 expressly excludes from the definition of relevant conduct any offenses that don't group under § 3D1.2(d). So the only potential vulnerable victims are the four victims of the offenses of conviction. None of the four were minors or had any unusual mental or physical vulnerability <u>apart from being in a doctor-patient relationship, which is already encompassed by the abuse of trust enhancement.</u> The government notes that Ms. Stein and Ms. Anderson had very limited experiences with OB/GYNs before the defendant. However, Ms. Stein had previously seen an OB/GYN in the same practice as Mr. Hadden and Ms. Anderson was a nurse working at Columbia. Again, it is clear that the doctor-patient relationship shielded a lot of Mr. Hadden's behavior, but that is not because the women were particularly vulnerable. They were strong, smart, independent people who were abused by their doctor. Moreover, as discussed in our initial objections, pregnancy alone does not render a woman vulnerable, and there was no indication of selection of pregnant victims in particular. Applying the vulnerable victim enhancement in this circumstance would represent double-counting.

**Victim Statements (PSR Paragraph 75):** The government's argument for inclusion of victim impact statements from patients who were not induced across state lines relies on the same argument that every allegation or instance of sexual abuse is relevant conduct. As discussed above, it is not, under the Guidelines' own terms. We ask that Probation make clear which statements are from victims of the offenses of conviction and which are from other women.

**Defendant's Ability to Pay a Fine (PSR Paragraph 165):** The government controverts no fact set forth by the defense in our objections as to why the defendant does not actually have the ability to pay a fine.

**Government Seeks To Apply the Fraud Enhancement**: For the first time, the government asserts that Mr. Hadden's offense level should be increased by four levels under U.S.S.G. § 2G1.1(b)(1) because "the offense involved fraud." Once again, the government relies on the doctor-patient relationship, which is already accounted for in the abuse of trust enhancement, to try to further increase Mr. Hadden's Guidelines. It cites as authority only a single out of Circuit case in which the Tenth Circuit noted in passing that the fraud enhancement had been applied by the sentencing court, but in that case the enhancement was not the subject of the appeal so there

is no holding relating to its application. *See United States v. Scott*, 529 F.3d 1290, 1294-95 (10th Cir. 2008).  We know of no case in this Circuit in which this enhancement has been applied outside the context of sex trafficking by fraud or coercion.  Using a trusted relationship to gain access is not the same as defrauding patients, and is appropriately taken account of by the abuse of trust enhancement, which is already included in the PSR's calculation.  This enhancement is not applicable here.


**Response to Gov't Objections to the Draft PSR**

Paragraph 20, second to last and last lines: The trial evidence did not pertain to "numerous" victims' vaginas, so the government's request should be rejected by Probation.  Again, this paragraph is about the Offense Conduct proven at trial, not other criminal conduct.

Paragraph 22, current first line, paragraphs 72 and 83, and all other references to 236 victims: The government asks Probation to change "at least 236" to "at least approximately 245" with respect to the number of victims who have come forward to report sexual abuse by Mr. Hadden. The defense has not been provided with these reports of abuse and, without them, has no way of verifying how many victims have come forward.

Paragraph 75 (before what is now subparagraph (a)): the Government's request that Probation include its preferred quotes from the bail hearing transcript should be rejected.  The Government can select its quotes for its sentencing submission; it is not the Government's role to pick and choose which victim impact statements to quote in the PSR.   Moreover, among the victim impact statements the Government asks Probation to include in the PSR is one from Jessica Sell Chambers, who was not a witness at trial.  Thus, for the reasons set forth in our May 23, 2023, Objections to the PSR, her victim impact statement should not be included in the PSR, or it should be made clear that she was not one of the victims in the counts of conviction.

Paragraph 156: The Government's request that the phrase "For the entirety of his career … Hadden was employed as an obstetrician and gynecologist" should be modified by "between 1987 and August 8, 2012" (rather than, as currently stated, "between 1991 and August 8, 2012") should be rejected.  A residency is not employment as an obstetrician and gynecologist.  He was hired by Columbia as an OB/GYN in 1991 so the current language in the PSR is accurate.

Thank you for your attention to this matter.

Respectfully,

/s/

Deirdre D. von Dornum
Michael D. Weil
Kathryn Wozencroft