# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

July 20, 2023

By ECF and E-Mail
Honorable Richard M. Berman
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10001

    Re:    *United States v. Robert Hadden*, 20 Cr. 468 (RMB)

Dear Judge Berman,

    We write in response to the government's July 19, 2023, letter accusing us of trying to delay sentencing and asking the Court to make certain rulings in advance of Monday's sentencing. *See* ECF 313. We have just received the Court's Order (ECF 314) confirming the sentencing will go forward on July 24, 2023, and declining a *Fatico* hearing. While we acknowledge the Court's ruling and that your Honor requires no further filings, we respectfully submit this letter to make the record clear as to certain allegations and requests by the government.

    *First,* we have not sought an adjournment of Monday's sentencing. We very much want to proceed to sentencing. Mr. Hadden is jailed, and jailed at one of the worst federal facilities in the country, where he (along with the other 1500 detainees) is currently locked down 23 hours each day because of severe understaffing and where he has faced targeted threats and extortion because of the notoriety of his case. In addition, we plan to appeal the convictions (based, *inter alia*, on the government's unprecedented interpretation of what constitutes inducement under the Mann Act) and wish to proceed to that appeal as soon as possible. We have no motive to delay.

    *Second*, we must also effectively represent Mr. Hadden. Accordingly, for more than two months, we have made our reliability concerns clear, and have repeatedly asked the Court to rely only on the offenses of conviction in sentencing Mr. Hadden. Our record of filings speaks volumes: this is not a new, surprise delay tactic. Nor is it a revolutionary idea: Mr. Hadden should be sentenced based on what he was convicted of. If the Court does so, no *Fatico* is needed, as we have

repeatedly stated. ECF 309. The government has asked the Court to rely on hundreds of allegations outside the trial testimony in setting sentence, but has also maintained that it believes the Court can upwardly vary based solely on the trial evidence. ECF 312, ECF 313.

If the Court intends to rely on extra-trial offense conduct, we have asserted throughout that a *Fatico* hearing is needed. ECF 309. And given that the government is asking for a sentence that is **20 years** greater than the Guidelines range calculated by Probation, at any such *Fatico*, Mr. Hadden's rights to due process and confrontation would have to be carefully protected. That is our job and our constitutional obligation. It is not a delay tactic or an effort to scare or silence witnesses.

To be perfectly clear in response to the government's claims, the defense has repeatedly requested a *Fatico* hearing and has never abandoned that request or wavered from it. However, because the Court had not ordered a *Fatico* evidentiary hearing in response to our requests that it do so, we did not understand that one would occur on July 24, 2023, and, consistent with this Court's orders, issued as recently as yesterday, July 19, 2023, we understood that it would be a sentencing. That is why we wrote to the government expressing our surprise when it indicated it thought that there would be a *Fatico* hearing on Monday and why we then immediately wrote to the Court to inquire how to proceed. *See* ECF 313-1.

We also want to make clear for the record that there are serious credibility and legal issues as to the extra-trial allegations the government has asked the Court to rely on. There are significant financial motivations to embellish that must be explored if the Court were to rely on extra-trial allegations; many of these allegations were made after patients heard each others' stories and/or spoke with a civil lawyer who was pro-actively suggesting that certain abuse happened to them; and as to some of the allegations, there are reliability issues or issues of whether what was described constituted abuse at all. We have flagged these concerns in detail in our filings, and before the Court may rely on such extra-trial allegations, we argue that these issues would have to be explored through cross-examination and the presentation of defense witnesses and evidence. Papers would be insufficient.

For example, it is our understanding that as to each of the "Five Victims" (none of whom testified at trial) whom the government has asked this Court to sentence Mr. Hadden based on, as well as almost every person who has submitted a victim impact statement, they are participants in civil suits against Columbia University, which the University has agreed to settle for varying amounts beginning in the hundreds of thousands, based on a sliding scale of the severity of the abuse alleged. The settlement agreement pertaining to four of the Five Victims and many of the people who provided victim impact statements was produced to the

defense in discovery by the government, and is attached here under seal as Ex. A. It gives an unprecedented level of motivation to embellish, whether consciously or not, what happened to these patients. *See, e.g., Bellamy v. City of New York*, 914 F.3d 727, 762 (2d Cir. 2019) (recognizing that the higher the financial incentive, the greater the "potential for witness bias"). The financial involvement of civil lawyer Anthony DiPietro as to each of these Five Victims (and many of the people who submitted victim impact statements) also provides him with a motive to suggest to them additional abuse and encourage them to make additional allegations.[1] We have not received from the government, as to any of the Five Victims, the actual settlement amount or the specific allegations made by each in the civil suits, despite this being heartland *Giglio* material. Moreover, this type of motive to embellish cannot be confronted by cross-examining a witness recounting out-of-court hearsay (here, the case agent suggested by the government). The actual witness needs to be asked about it. *Cf. United States v. Guang*, 511 F.3d 110, 122 (2d Cir. 2007) (hearing not necessary where, *inter alia*, district court could assess demeanor of actual witnesses upon which sentencing enhancement was based).

Bias is uniquely important in assessing credibility. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984) (citing E. CLEARY, MCCORMICK ON EVIDENCE § 40, p. 89 (3d ed.1984)). Thus, though nowhere enshrined in the Federal Rules of Evidence, the Supreme Court in *Abel* held that the drafters could not have intended to exclude evidence of bias. *Id.* Unlike other forms of impeachment, a litigant is

---

[1] As we have briefed in various contexts during trial and the pre-sentencing process, based on materials produced by the government, the lead plaintiffs' lawyer, Mr. DiPietro, was involved in the U.S. Attorney's Office investigation of Mr. Hadden from the start, apparently functioning, quite unusually, as a quasi-case agent beginning in early 2020. Emails between DiPietro and various Assistant United States Attorneys and notes of conversations between DiPietro and various Assistant United States Attorneys show DiPietro: developing theories of culpability; locating potential victims who fit those theories of culpability; reviewing medical records and other discovery in order to identify factual patterns that support the federal prosecution; providing records and evidence to the federal prosecutors that was subsequently disclosed as discovery in this case; doing initial interviews of potential federal victims and sharing information about those interviews with the federal prosecutors; preparing victims to testify at Mr. Hadden's trial; reporting to federal prosecutors on certain victims' reluctance to testify at trial and his efforts to persuade them to do so; and soliciting victim impact statements for the detention hearing and sentencing. Such involvement by counsel for plaintiffs makes this case unique. Put simply: the worse the allegations of each plaintiff, the more money Mr. DiPietro receives.

permitted to introduce extrinsic proof related to bias and is not bound by a witness's answers on cross-examination. *United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979). Though the Confrontation Clause may not apply in this proceeding directly, it surely is relevant that the Supreme Court has held that it violates the Sixth Amendment to preclude cross examination about a "prototypical form of bias." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

A financial motivation is a classic form of bias. "A claim for money damages does create a financial incentive to be untruthful." *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 125 (2d Cir. 2005). "Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered. Personal motives must be factored in when assessing a witness' credibility. *United States v. Int'l Bus. Machines Corp.,* 84 F.R.D. 651, 652 (S.D.N.Y. 1979). "Pecuniary interest may be shown to prove bias," including the amount of money at issue, "because the jury may reasonably believe that the willingness of a witness to lie or shade testimony would be affected, not only by whether the results may benefit him, but also by how much." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999). Disallowing cross examination about a witnesses' financial interest in case has been held to be error where the court relies on that witness's testimony. *See e.g. United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (finding error in court's decision to preclude questioning about witness's movie deal; "the market value of a story that ends in acquittal is unlikely to be the same as the market value of a story that ends in conviction."). Accordingly, if the Court intends to rely on non-trial victim impact statements in any way in setting sentence, the defense would have to be permitted to explore this potential bias at a *Fatico* hearing. Again, a ruling on the parties' filings alone is insufficient because they do not prove the reliability of the disputed statements and allegations.

In addition, the government's claim that Victim-40's statements have been consistent and corroborated and, thus, demonstrate reliability, is simply incorrect. ECF 312 at 16-20. She has given widely varying narratives of what happened to her that have changed significantly over time, growing more serious. When interviewed by the Manhattan DA's office on two separate occasions in 2013, she stated that Mr. Hadden had undressed her, spun her around and touched her buttocks and hips, talking to her about whether she would need a C-section. *See* Notes of Meetings with Manhattan DA's office, attached as Ex. B (under seal). She then filed a civil lawsuit, represented by Anthony DiPietro. Subsequently, she claimed under oath that Mr. Hadden not only spun her around undressed but also penetrated her vagina with his fingers, a significantly more serious claim of abuse. *See* State Grand Jury Testimony, attached as Ex. C (under seal). Victim-40 has made many statements in public fora, including on news channels and as part of political campaigns. We have received a number of her prior statements from the government, but have not received the statements she made in the civil suit nor the amount of financial settlement she received. Moreover, this is the witness whom we

4

understand was not credited by the Manhattan DA's office.  For this Court to base any part of Mr. Hadden's sentence on her allegations without a direct cross-examination of this witness based on full discovery would violate his due process rights to sentencing only on reliable information.   We also require the ability, if the Court were to rely on her allegations, to subpoena witnesses from Columbia University, who we believe will testify that on the day of Victim-40's claimed abuse, a chaperone was present with Mr. Hadden at all times.  Those witnesses have their own lawyers and getting them to Court – unlike the government's ability to bring their own case agent – is no small matter and would likely require this Court's intervention. We stress, again, that we have raised these concerns about Victim-40 repeatedly, that the government's written filings in response have not dispelled them, and that the defense requires the opportunity to meaningfully contest the allegations through cross-examination and the presentation of additional evidence, were the Court to rely on them in setting sentence.

   Moreover, as to Minor-Victim 3, there is no record whatsoever that she was ever a patient of Mr. Hadden's.  She came forward only in 2021 after hearing a news story, and she reached out -- not to law enforcement -- but to Anthony DiPietro and filed a financial claim.  There is no reliable basis to find she was ever Mr. Hadden's patient, let alone that he abused her.

   As to Minor-Victim 1, her primary allegations of abuse are that Mr. Hadden had her turn over in various positions so that he could examine her herpes outbreak, and that he, during a vaginal examination at a separate appointment, touched her "G-spot."  We would, if the Court indicated it intended to rely on her allegations, call an expert to testify that it is appropriate – needed – to examine the lesions of a primary herpes outbreak, wherever those lesions are located, and that there is no physiological "G-spot" – with which the government's expert also agrees, according to his own 3500 materials.

   Similarly, with respect to the description by trial witness Ms. Lozada of what she observed Mr. Hadden's practice to be in lubricating patients' labia prior to checking dilation in the Labor & Delivery room, we do not dispute what she observed.  We do, however, strenuously deny that this constituted abuse rather than an accepted medical practice, as we made clear at trial.  The government asks the Court to consider, based on this description, an additional 30-144 episodes of abuse by Mr. Hadden.  We did not call an expert at trial to dispute Ms. Lozada's characterization of this practice as abuse because this practice in the Labor & Delivery Room was not a subject of any of the counts of conviction.  But, were the Court to indicate it would consider these instances to have been abusive, we would call an expert to testify that the difference between a doctor rubbing their fingers once up and down the labia to lubricate (which the government's expert testified at trial was an accepted practice) versus two or three times to lubricate additionally is not abuse.  That Mr. Hadden conducted this same lubrication of the labia to every

5

patient in front of a labor and delivery room full of other staff and family members further supports that inference. We have made this factual dispute clear since trial, through PSR objections and in our sentencing filings. The government's request that the Court conclude this is abuse and rely on it at sentencing without permitting the defense to prevent contrary expert evidence would violate Due Process.

Accordingly, we appreciate the Court's decision to proceed with sentencing on Monday – for the victims and for Mr. Hadden and his family – but wished to make clear our Due Process concerns in response to the government's last filing; why we believe an evidentiary hearing is necessary to resolve disputed issues of fact if the Court relies on non-trial victim statements in sentencing; and how we would have proceeded at a *Fatico* hearing had the Court had ordered one.

Respectfully Submitted,

/s/
Deirdre D. von Dornum
Michael D. Weil
Kathryn Wozencroft
Attorneys for Robert Hadden

Cc:   Counsel of Record
      U.S. Probation Officer Ashley Geiser